Freeburg Law, LLC
Alex Freeburg, Bar No. 7-5182
Rachel Berkness, Bar No. 7-5966
PO Box 3442
Jackson, WY 83001
*Attorneys for Artemis Langford*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JAYLYN WESTENBROEK, HANNAH, HOLTMEIER, ALLISON COGHAN, GRACE CHOATE, MADELINE RAMAR, and MEGAN KOSAR, on behalf of themselves and derivatively on behalf of KAPPA KAPPA GAMMA FRATERNITY, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Civil Action No.: 23-CV-00051-ABJ |
| | ) | |
| KAPPA KAPPA GAMMA FRATERNITY, an Ohio non-profit corporation, as a Nominal Defendant and as a Direct Defendant; MARY PAT ROONEY, President of the Fraternity Council of KAPPA KAPPA GAMMA FRATERNITY, in her official capacity, KAPPA KAPPA GAMMA BUILDING CO., a Wyoming non-profit corporation, and ARTEMIS LANGFORD, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ARTEMIS LANGFORD'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS WITH PREJUDICE

### Introduction

Plaintiffs believe they have brought a case that "presents, for what appears to be

the first time, the question whether the word 'woman' includes a [transgender woman].'"

[ECF 2 at 2]. Plaintiffs are wrong. Instead, they bring college gossip before this Court and rehash stale boogeyman stories used to vilify the LGBTQ+ community for ages.[1] Rumors such as these are not new and are not unique to Ms. Langford.[2] Plaintiffs simply follow an old playbook.

But these square peg tales being spread about Ms. Langford on campus do not fit into the round holes of a breach of contract or shareholder action fit for decision by this Court. Plaintiffs admittedly fail to state a claim against Ms. Langford and admittedly seek no relief from her. Yet they have filed a rambling complaint resembling a press release which they have used to gain national media attention and to fundraise. Plaintiffs' Amended Complaint warrants dismissal with prejudice.

## Procedural Posture

On March 27, 2023, seven unnamed plaintiffs brought the instant action against Kappa Kappa Gamma Fraternity, President of Kappa Kappa Gamma Fraternity Mary Pat Rooney, Kappa Kappa Gamma Building Co., (the "Kappa Defendants") and Artemis Langford, who was originally sued under a pseudonym. [ECF 1]. Plaintiffs selected only parties who would allow them to air their grievances on the federal stage. [ECF 6 at 10]. Plaintiffs also decided that, despite Plaintiffs and Ms. Langford all moving from different

---

[1] *See Brief of the Organization of American Historians as Amicus Curiae*, *Obergefell v. Hodges*, 576 U.S. 644, 661 (2015) (cited by majority) (Kennedy, J.).

[2] Ms. Langford appreciates that the realities of this stage of litigation do not allow her to contest the allegations against her. In light of the public outcry Plaintiffs have promoted, she hopes more will draw upon their common sense in parsing Plaintiffs' stories.

states to attend school at the University of Wyoming, only Ms. Langford might be treated as a Wyoming citizen for diversity purposes. [ECF 6 at 7-9].

Thereafter, Plaintiffs moved to proceed anonymously. [ECF 2 at 3-4]. This Court denied that request, finding that "Plaintiffs may not levy serious accusations without standing behind them." [ECF 3 at 9].

Plaintiffs then renewed their anonymity request, citing a reaction to a speech in California, a meme, and two mass shootings committed by unrelated transgender actors. [ECF 4-1]. In their renewed request, Plaintiffs questioned whether this Court had likened their concerns to "the sexual assault victim who 'asked for it.'" [ECF 4-1 at 4]. This Court, again, denied Plaintiffs' request and ordered them to include Plaintiffs' names in an amended complaint. [ECF 5]. Plaintiffs filed their Amended Complaint, which uses Ms. Langford's real name despite this Court never requiring such disclosure. [ECF 6].

In addition to the reasons set forth by the Kappa Defendants for dismissal, Ms. Langford now moves to dismiss because the Amended Complaint fails to state a claim against and seeks no relief from her. She further moves to dismiss for failure to comply with Federal Rule of Civil Procedure 8.

## Argument

### Plaintiffs' Amended Complaint should be dismissed against Ms. Langford because it fails to state a claim against her.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss one or more claims if the pleading fails to state a claim upon which relief can be granted. [Fed. R. Civ. Proc. 12(b)(6)]. Here, Plaintiffs raise four claims, none of which are asserted against Ms. Langford. [ECF 6 at 65-69]. Plaintiffs' Amended Complaint fails to state a claim against Ms. Langford and should be dismissed as to her.

**Plaintiffs lack standing to sue Ms. Langford, entitling her to dismissal.**

Federal courts are not "publicly funded forums for the ventilation of public grievances." *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 875 (10th Cir. 1992) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 759 (1983)). To gain an audience in federal court, a litigant is required to "have 'standing' to challenge the actions ought to be adjudicated in the lawsuit." *Ash Creek Min. Co. v. Lujan*, No. C90-218, 1991 WL 352745, at *2 (D. Wyo. Mar. 8, 1991), aff'd, 969 F.2d 868 (10th Cir. 1992). "[T]o have standing, a plaintiff must **seek** an acceptable Article III remedy." *California v. Texas*, 141 S.Ct. 2104, 2116 (2021) (internal citation and punctuation omitted). "Remedies, however, ordinarily operate with respect to specific parties." *Id.* at 2115 (internal citation and punctuation omitted). "In the absence of any specific party, [legal remedies] do not simply operate on legal rules in the abstract." *Id.* (internal citation and punctuation omitted).

Here, Plaintiffs admit that they "do not seek damages or other relief from [Ms.] Langford." [ECF 6 at 2]. They instead merely name her in this action because they believe she is "likely . . . a required party" under Rule 19. [ECF 6 at 2]. But "Rule 19 is the tool of the defendant." *Shaw v. AAA Engineering & Drafting, Inc.*, 138 Fed. Appx. 62, 66 (10th Cir. 2005) (citing *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 669 (6th Cir.2004). "[I]t does not provide a joinder mechanism for plaintiffs." *Id.*

Because Plaintiffs seek no relief from Ms. Langford, they lack standing to name her as a defendant. Ms. Langford is entitled to dismissal.

//

//

//

**Plaintiffs' Amended Complaint violates Rule 8, which provides additional and independent grounds for dismissal.**

Plaintiffs fling dehumanizing mud throughout their Amended Complaint which has nothing to do with their legal claims but which they nonetheless use to bully Ms. Langford on the national stage. This, alone, warrants dismissal.

Rule 8 of the Federal Rules of Civil Procedure requires that each allegation in a complaint "be simple, concise, and direct." [Fed. R. Civ. Proc. 8(d)(1)]. A complaint violates Rule 8 if it is of "unnecessary length" or "bur[ies] [] material allegations in a morass of irrelevancies." *Baker v. City of Loveland*, 686 Fed.Appx. 619, 620 (10th Cir. 2017). Further, a party violates this rule by filing "[s]omething labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (internal citation omitted). Failure to comply with Rule 8, alone, warrants dismissal. *Id.; see also Ausherman v. Stump*, 643 F.2d 715, 716-17 (10th Cir. 1981) (finding that a sixty-three-page complaint, with nine pages of attachments and a table of contents, violates Rule 8); *Vicom v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (criticizing district court for declining to dismiss a 119-page fraud complaint with prejudice for violations of Rule 8); *Plymale v. Freeman*, 930 F.2d 919 at *1-2 (6th Cir. 1991) (affirming dismissal of 199-page complaint with prejudice for violating Rule 8); *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) (affirming dismissal with prejudice of a fifty-three-page complaint that "mixe[d] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way.").

For example, in *Baker*, the Tenth Circuit affirmed dismissal of a complaint that was "42 single-spaced pages," that contained "unnecessary legal arguments and detail"

and "lack[ed] clarity about what each defendant allegedly did to incur liability." 686 Fed.Appx. at 620. There, the complaint included "numerous . . . unnecessary and irrelevant allegations" including "reference to a bar complaint against one of the defendants" as well as legal arguments about the statute of limitations, summary judgment, strict scrutiny, probable cause, and "the unreliability of the sense of smell." *Id.* Despite certain proper allegations "[b]uried" within the complaint, the Tenth Circuit found that the district court was within its discretion to order wholesale dismissal rather than striking immaterial portions. *Id.* at 621-22.

Additionally, in *Mann*, the Tenth Circuit affirmed dismissal of a 99-page, single-spaced complaint. 477 F.3d at 1147-48. There, the plaintiff had "made her complaint unintelligible by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Id.* at 1148 (internal citation omitted). In its order affirming dismissal, the Tenth Circuit remarked that by the time the plaintiff requested specific relief, "not even the most attentive of readers could figure out who did what to whom." *Id.* As a result, it did not matter whether the lower court dismissed because it believed the plaintiff pleaded no cognizable claims or because it "could not separate the wheat from the chaff." *Id.*

Here, Plaintiffs make no attempt to plead a cause of action until page 65 of their 72-page Amended Complaint. [ECF 6 at 65-69]. By the time they get there, they incorporate very few of their factual allegations into their causes of action. [ECF 6 at 65-69]. The pleading then goes on to incorporate an additional 81 pages of "Attachments" filed with their original Complaint, making their total filing 153 pages. [ECF 1 at 72-153; ECF 6 at 2-5, 13, 17, 21-37, 40-43, 45, 53-54, 58, 61, 63-64]. It contains a Table of Contents that itself spans two pages. [ECF 6 at 10-11]. Included in the muddle of irrelevant allegations are philosophical arguments over what it means to be a woman [ECF 6 at 2,

6

4-5, 12-13, 15-16, 19, 48-49, 67], insulting jabs at Ms. Langford's physical appearance [ECF 6 at 49-51, 69], allegations from wholly unrelated lawsuits [ECF 6 at 17-19], song lyrics [ECF 6 at 14], Ms. Langford's alleged GPA [ECF 6 at 58], and a reference to Ms. Langford singing a Christmas carol at a party [ECF 6 at 60]. Although they characterize "trans women are women" as a political slogan, their pleading asks Defendants to admit or deny the truth of whether "[a] woman is an adult human female." [ECF 6 at 2, 19]. And although they believe their case requires this Court to decide "whether the word 'woman' includes a man 'who identifies as a woman,'" their pleading concedes that "governmental distinctions between men and women are inherently suspect." [ECF 6 at 2, 16] (emphasis omitted).

A litigant may not file a complaint that should more appropriately be labeled a press release, but that is precisely what has been done here. Plaintiffs' Amended Complaint rambles on for 65 pages with details Plaintiffs overwhelmingly did not see fit to incorporate into any causes of action. Dismissal is appropriate.

**Dismissal with prejudice is warranted.**

A complaint may be dismissed **with prejudice** for failure to comply with Rule 8. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158 (10th Cir. 2007). This remedy is called "the death penalty of pleading punishments" and is guided by the "*Ehrenhaus* factors." *Id*. at 1162. These factors include:

> (1) The degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) culpability of the litigant; (4) whether the court warned the litigant in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

The *Ehrenhaus* factors "do not represent a rigid test," and "not all the factors" must be considered or satisfied. *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1323. Nor need they be given equal weight. *Procter & Gamble Co. v. Haugen*, 472 F.3d 727, 738 (10th Cir. 2005). Further, this Court may consider the conduct of both the litigants and their counsel in determining whether dismissal with prejudice is warranted. *Davis v. Miller*, 571 F.3d 1058, 1061 (10th Cir. 2009).

**1. Ms. Langford has suffered overwhelming prejudice as a result of Plaintiffs' failure to comply with Rule 8.**

The first factor is "the degree of actual prejudice to the defendant." *Id*. at 1162. For any litigant, the Tenth Circuit "has long recognized that defendants are prejudiced by having to respond to pleadings" that are "wordy and unwieldy." *Nasious*, 492 F.3d at 1162. This burden has alone been sufficient to weigh this factor in favor of dismissal with prejudice. *Id*. But in Ms. Langford's case, she also finds herself facing nationwide ridicule that is encouraged and participated in by Plaintiffs and their counsel.

By way of a few examples, since the Amended Complaint was filed, Plaintiffs and their counsel participated in an interview on *The Megyn Kelly Show* in which a picture of Ms. Langford was displayed and Ms. Kelly remarked that she "appears to be . . . a pervert, who is also not that smart, [and] also has very little regulation on how one approaches one's health and fitness." *Left's Trans Ideology Religion, and Men in Women's Spaces, with Sen. Josh Hawley & KKG Sisters Suing*, available at https://www.youtube.com/watch?v=51wAdkZEUC8 (last visited June 20, 2023). On *The Ingraham Angle*, Plaintiffs and their counsel participated in an interview in which video of Ms. Langford was played for viewers. *KKG Sorority Sister Says Women's Spaces are Being Invaded*, https://www.foxnews.com/video/6327795988112 (last visited June 20,

2023). Ms. Ingraham then laughed while a quote from the Amended Complaint displayed on the screen showing Ms. Langford's purported GPA. *Id.* Plaintiffs' counsel referred to Ms. Langford, who is just as much a Kappa Kappa Gamma sorority sister as Plaintiffs, as a "stranger" who Plaintiffs "have to come home [to] every night." *Id.* In an interview on Fox News, a picture of Ms. Langford was placed prominently on the screen while Caitlyn Jenner remarked that, "if you look at those pictures . . . he is a perverted, sexually deviant male." *Caitlyn Jenner: 'He is a Perverted, Sexually-Deviant Male*,' https://www.foxnews.com/video/6327700664112 (last visited June 20, 2023). Jenner then put out a call to action to "the entire country . . . to get behind these [Plaintiffs] because there is strength in numbers." *Id.*

Ms. Langford will spare this Court reference to the countless hateful comments that have stemmed from this lawsuit which call for a mob to kill her.

Additionally, Plaintiffs repeatedly and deliberately use male pronouns as a verbal barb by which to jab Ms. Langford. [3] This is not a trivial matter. Studies show that "misgendering is associated with significantly increased feelings of hopelessness, apathy, depressive symptomology, and suicidal ideation." Chan Tov McNamarah, *Misgendering*, 109 Calif. L. Rev., Dec. 2021, at 341; *see also Turner v. Ralkey*, No. 3:20-CV-05472-TL-DWC, 2023 WL 401931, at *4 (W.D. Wash. Jan. 25, 2023) (citing medical testimony that "misgendering transgender people can be degrading, humiliating, invalidating, and

---

[3] Although misgendering affirmatively communicates "a rejection of the referent's gender," "ungendering," or assymetric use of gender-neutral language to describe transgender individuals is similarly dehumanizing and offensive. Chan Tov McNamarah, *Misgendering*, 109 Calif. L. Rev., Dec. 2021, at 147-152.

mentally devastating."). In the prison context, "constant[] misgender[ing]" of transgender inmates and pervasive use of gender-based insults "rises to the level of a constitutional violation." *Tay v. Dennison*, 457 F.Supp.3d 657, 683 (S.D. Ill. 2020) (compiling cases and awarding a preliminary injunction). In criminal trials, "overt, malicious, and calculat[ed]" misgendering violates an accused's constitutional right to a fair trial and may result in reversal of a criminal conviction. *People v. Zarazua*, 85 Cal.App.5th 639, 646-47 (2022) (finding, also, that even inadvertent misgendering constitutes prosecutorial misconduct). Even a judge's "refus[al] to use [a litigant's] preferred pronoun" has been called "disrespectful and inappropriate." *Matter of R.E.*, 142 N.E. 3d 1045, 1054 (Ind. Ct. App. 2020). Further, misgendering breaks with the Tenth Circuit and the United States Supreme Court's practice. *See Qz'etax v. Ortiz*, 170 F.App'x 551, 553 (10th Cir. 2006) (agreeing to use "**proper** female pronouns" to refer to male-to-female transgender litigant) (emphasis added); *see also Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S.Ct. 1731 (2020) (using female pronouns to describe male-to-female transgender litigant) (Gorsuch, J.).

In other contexts, behavior like Plaintiffs' has been unequivocally deemed unlawful and discriminatory. It far surpasses the standard for prejudice here.

## 2. Plaintiffs have interfered with the judicial process by using this Court as a soapbox.

The "amount of interference with the judicial process" also weighs in favor of dismissal with prejudice. *Nasious*, 492 F.3d at 1162. In *Nasious*, the Tenth Circuit found that a *pro-se* inmate's 63-page complaint with eleven causes of action satisfied this factor due to the burden imposed on the court to decipher the rambling and incomprehensible pleading. *Id*. at 1162-63. Here, Plaintiffs' Amended Complaint totals 153 pages and it does

not even state a claim against nor seek relief from Ms. Langford. [ECF 1 at 72-153; ECF 6]. Plaintiffs have already burdened this Court twice by seeking extraordinary relief while professing fear for their safety. [ECF 3; ECF 5]. Once that relief was denied, they participated in multiple nationwide televised interviews.

Plaintiffs should not be permitted to further use the courts in this manner.

**3. Plaintiffs' culpability supports dismissal with prejudice.**

In weighing dismissal with prejudice, this Court may review the culpability of both Plaintiffs and their counsel. Dismissal with prejudice is not unjust merely because certain conduct was engaged in by counsel, because a litigant may voluntarily choose her attorney and cannot "avoid the consequences of the acts or omissions of this freely selected agent." *Gripe v. City of Enid, Okl.*, 312 Fed.R.Serv.3d 1184, 1189 (10th Cir. 2002) (citing *Link v. Wabash R.R, Co.*, 370 U.S. 626, 633-34 (1962)).

**A. *Plaintiffs and their counsel have used this Court to bully Ms. Langford.***

The Amended Complaint takes several opportunities to criticize Ms. Langford's looks, including commenting on her height, weight, and clothing. [ECF 6 at 49-50, 69]. On *The Megyn Kelly Show*, Plaintiffs' counsel admitted that Ms. Langford's looks do not matter "at all" to Plaintiffs' claims. *Left's Trans Ideology Religion, and Men in Women's Spaces, with Sen. Josh Hawley & KKG Sisters Suing*, available at https://www.youtube.com/watch?v=51wAdkZEUC8 (last visited June 20, 2023). Plaintiffs' counsel then jeered: "You can put lipstick on a pig, that doesn't make it a lady." *Id*. This insult drew laughter from Plaintiffs. *Id*.

//

//

### *B. Plaintiffs' filings contain misstatements of fact.*

Originally, Plaintiffs alleged that Ms. Langford was planning on moving into the sorority house next year. [ECF 1 at 38 ("Plaintiffs have requested to live away from the sorority house next year to avoid being forced to live with Mr. Smith.")]. But prior to filing, Ms. Langford had already been granted an exemption from living in the house. [Attached hereto as Exhibit A is a true and accurate copy of the email sent from Kappa Kappa Gamma Chapter Services Department to Gamma Omicron Chapter Members and Advisers on April 7, 2023]. Plaintiff Holtmeier was the Housing Director at the time and appears to have signed the original Complaint as "Jane Doe I." [ECF 1 at 70].

Plaintiffs do not adequately correct this falsehood in their Amended Complaint. Prior to amending, Kappa Kappa Gamma made clear to Plaintiffs and their counsel that Ms. Langford had been granted an exemption from living at the house for the entire 2023-24 academic year **at her own request**. [Exhibit A; Attached hereto as Exhibit B is a true and accurate copy of the email sent from counsel for the Kappa Defendants to Plaintiffs' counsel on April 7, 2023]. Plaintiffs now allege that Ms. Langford has "been given permission to live outside the sorority house . . . **because of unspecified security concerns**." [ECF 6 at 38 (emphasis supplied)]. This characterization is erroneous. They then suggest that Ms. Langford might move into the house spring semester, which is contrary to the express guidance from Kappa Kappa Gamma. [ECF 6 at 38].

### *C. Plaintiffs and their counsel are using this Court to gain recognition and to fundraise.*

Although Plaintiffs do not use most of their allegations to support their causes of action, they appear happy to use those allegations to fundraise. As of the time of this filing, Plaintiffs have raised $47,531.00 of a $250,000 goal for "legal and supporting costs

related to this case." Wyoming Women Need Our Support, https://www.givesendgo.com/GoWomen (last visited June 20, 2023). On their page, Plaintiffs specifically reference their case "in Wyoming Federal Court" seeking "to defend their right to a woman-only experience at the Kappa Kappa Gamma chapter at the University of Wyoming." *Id*. Plaintiffs also suggest that "[t]his is not a battle that these young women initiated." *Id*. As the case gets more press coverage, Plaintiffs update their fundraiser page with new links to articles and television appearances. *Id*.

Additionally, Megyn Kelly encouraged viewers to donate to Plaintiffs' legal fund during the interview participated in by Plaintiffs and their counsel. And Plaintiffs' counsel is also a member of an organization that posted an article about this case, including a link to the fundraiser. Independent Women's Network's Cassie Craven: We Can't Erase Women, https://iwnetwork.com/independent-womens-networks-cassie-craven-we-cant-erase-women/ (last visited June 20, 2023).

Plaintiffs' counsel also professes a belief that Plaintiffs "perfectly have the test case" for the courts to create a legal definition for the word, "woman." *Left's Trans Ideology Religion, and Men in Women's Spaces, with Sen. Josh Hawley & KKG Sisters Suing*, available at https://www.youtube.com/watch?v=51wAdkZEUC8 (last visited June 20, 2023). Against the backdrop of the horrible, dehumanizing impact of this case on Ms. Langford, Plaintiffs' counsel boasts that "the nice thing about this lawsuit is it's really the first one in the country . . . that will take up the issue of what is a woman." *Id*.

**4.** **Plaintiffs are represented by counsel and are thereby on notice of the requirements of Rule 8.**

Despite the wording in the initial *Ehrenhaus* opinion, the notice factor does not require advanced notice of the potential for dismissal. *Ecclesiastes 9:10-11-12, Inc. v.*

*LMC Holding Co.*, 497 F.3d 1135. 1149 (10th Cir. 2007). It instead asks whether the litigant fully "understand[s] what recitations are legally essential and which are superfluous" as well as "what judges and lawyers mean when speaking of a short and plain statement consistent with Rule 8." *Nasious*, 492 F.3d at 1163. Here, Plaintiffs are represented by competent counsel who are expected to know what it means to plead "a short and plain statement consistent with Rule 8." *Id.*

Further, this Court has recently dismissed another case filed by one of Plaintiffs' attorneys for failure to comply with Rule 8 after finding that the complaint was "overly long, confused, repetitive, argumentative, and generic in its allegations." [Order on Motions to Dismiss Nos. 9, 11, 13, 15, 23, 26, 24, 44, and 45, at 7, *Smith v. Gordon, et. al.*, No. 21-CV-201-F].

Here, the conduct is targeted at a human being and is far more egregious, unwarranted, and cruel than in *Smith*. It appears unlikely that the problems with Plaintiffs' allegations stem from lack of notice.

**5. No effective lesser sanction than dismissal with prejudice exists.**

Finally, this Court must weigh "the efficacy of lesser sanctions." *Nasious*, 492 F.3d at 1162. An effective sanction should "correct the behavior" of the litigant. *Davis v. Miller*, 571 F.3d 1058, 1064 (10th Cir. 2009) (citing lower court's order).

Dismissal with prejudice "should be used as a weapon of last, rather than first, resort" because "dismissal with prejudice defeats altogether a litigant's right to access to the courts." *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.6 (10th Cir. 1988) (internal citation omitted). However, that right "is neither absolute nor unconditional" and "there is **no** constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Triparti v.* Beaman, 878 F2d 351, 353 (10th Cir. 1989) (emphasis added).

14

Additionally, "[t]he right of [] defendants to be free from [] costly and harassing litigation" as well as "the rights of litigants awaiting their turns to have other matters resolved must [also] be considered" in determining whether dismissal with prejudice is appropriate. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 776 (7th Cir. 1994) (internal citation omitted).

Here, no lesser sanction exists to remedy the harm to Ms. Langford. Allowing Plaintiffs repleader to seek relief against Ms. Langford or to craft new causes of action against her would compound the harm already caused. If the death penalty of pleading punishments were ever warranted for failure to comply with Rule 8, it is warranted here.

## Conclusion

Ms. Langford exemplifies the best of what a Wyoming woman is. Yet she has been dragged before this Court to defend herself against claims which do not require any party to name her personally or to wield repackaged versions of the same vicious rumors that have been used to vilify the transgender community for ages. Kappa Kappa Gamma openly accepted transgender members before any Plaintiff chose to join the sorority, yet they now ask this Court to take away Ms. Langford's seat at the table.

Plaintiffs' Amended Complaint is an abuse of this process and should be dismissed with prejudice.


Dated _____06/20/2023_____.        ___/s/ Rachel Berkness_____
                                          Rachel M. Berkness, Bar No. 7-5966
                                          Freeburg Law, LLC
                                          Box 3442
                                          Jackson, WY 83001

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 20th day of June 2023.

Cassie Craven (#7-5664)  
LONGHORN LAW LLC  
109 East 17th Street, Suite 223  
Cheyenne, WY 82001  
Telephone: (307) 823-3062  
E-Mail: ccraven.law@gmail.com  

☒ CM/ECF  
☐ U.S. Mail  
☐ Fax  
☐ Email  

John G. Knepper (#7-4608)  
LAW OFFICE OF JOHN G. KNEPPER, LLC  
P.O. Box 1512  
Cheyenne, WY 82003  
Telephone: (307) 632-2842  
E-Mail: john@knepperllc.com  

☒ CM/ECF  
☐ U.S. Mail  
☐ Fax  
☐ Email  

Natalie M. McLaughlin (Pro Hac Vice)  
Brian W. Dressel (Pro Hac Vice)  
VORYS, SATER, SEYMOUR AND  
PEASE, LLP  
52 East Gay Street  
Columbus, OH 43215  
Telephone:   (614) 464-5452  
Email: nmmclaughlin@vorys.com  
bwdressel@vorys.com  

☒ CM/ECF  
☐ U.S. Mail  
☐ Fax  
☐ Email  

Scott P. Klosterman (#6-3081)  
WILLIAMS, PORTER, DAY & NEVILLE, P.C.  
159 North Wolcott, Suite 400  
P.O. Box 10700  
Casper, WY 82602-3902  
Telephone:   (307) 265-0700  
E-Mail: sklosterman@wpdn.net  

☒ CM/ECF  
☐ U.S. Mail  
☐ Fax  
☐ Email  

/s/ Rachel Berkness  
Rachel Berkness