# UNITED STATES DISTRICT COURT
# DISTRICT OF WYOMING

JAYLYN WESTENBROEK, et al., on )
behalf of themselves and derivatively on )
behalf of KAPPA KAPPA GAMMA )
FRATERNITY, )
  )
     Plaintiffs, )     CASE NO. 2:23-cv-00051-ABJ
  )
       v. )
  )
KAPPA KAPPA GAMMA FRATERNITY, )
et al., )
  )
     Defendants. )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO ARTEMIS LANGFORD'S MOTION TO DISMISS

Langford makes two legal arguments to support his motion to dismiss.[1] The Plaintiffs chose not to seek monetary damages from Langford directly in the initial Complaint, although his conduct as alleged would support claims under Wyoming law. So, Langford argues that because Plaintiffs do not seek damages from him directly, that he should be dismissed from the suit entirely. This is not required under Tenth Circuit precedent, which allows Plaintiffs to join Langford in the Complaint without alleging a cause of action. Langford's second response is that this Court should dismiss the Complaint with prejudice because the allegations are too numerous and detailed. The Rules of Civil Procedure do not operate as yet one more tool to silence these young women about

---

[1] This Court requires courtesy and civility, treating every participant with "professionalism, fairness and due consideration." L. R. Civ. P. 84.1. Arguments about the use of male and female pronouns, however, are not disputes about courtesy. They reflect the "struggle over the social control of language in a crucial debate about the nature and foundation, or indeed real existence, of the sexes." *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 785 n.12 (9th Cir. 2022) (quoting *Meriwether v. Hartop*, 992 F.3d 492, 508 (6th Cir. 2021)). Plaintiffs are confident that Langford can be shown respect without "compel[ling] the use of particular pronouns at the invitation of litigants" which other courts have concluded raise "delicate questions about judicial impartiality." *United States v. Varner*, 948 F.3d 250, 256 (5th Cir. 2020) (citations omitted).

their experiences with Langford and the basis of their claims and damages. Langford understands exactly what is alleged in this Verified Complaint, and Plaintiffs' response is the same as it was to national Sorority officials when they were told to keep quiet about what was happening to them: No.

In response to the first argument, Langford was named as a Defendant because he is likely a required party under Rule 19(a)(1)(B). Doc. 6 at 2 n.2. Some individuals "must be joined as a party" because the person has an "interest relating to the subject of the action" and the court's ruling "may" as a practical matter "impede the person's ability to protect the interest" or leave another defendant subject to a substantial risk of "inconsistent obligations." Fed. R. Civ. P. 19(a)(1). While these required parties are usually joined by the Defendant, the Tenth Circuit does not require this approach. Plaintiffs can name third-party defendants in the initial Complaint even when *no* cause of action is available, let alone asserted. *Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988) *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). The Plaintiffs have acted as the Tenth Circuit permits, and there is no basis to dismiss Langford even though Plaintiffs have not alleged a cause of action against him in the initial Complaint.

Langford's second argument is that the Complaint says too much; the allegations are not sufficiently "simple, concise and direct." Fed. R. Civ. P. 8(d). Langford then argues that this detail provides a basis to dismiss the lawsuit entirely, because Plaintiffs and their attorneys filed the Complaint to "bully" Langford with a "press release" rather than to seek judicial relief. Doc. 23 at 5, 7. The Plaintiffs have not violated Rule 8, and a dismissal with prejudice would be an abuse of this Court's discretion. To the extent the Complaint includes significant information, this reflects the complexity of the underlying issues. Indeed, the strictures of Rule 8 must take into account the

requirements of Fed. R. Civ. P. 23.1 which require specificity in pleading. Finally, the appropriate remedy for Langford's claimed Rule 8 violation is to identify the missing information and permit Plaintiffs to amend their Complaint, not a dismissal with prejudice.

### Standard of Review

At this early stage of litigation, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023).

Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully but the complaint does not need to establish that the defendant probably acted unlawfully. *Mckinney v. Granite Peak Fabrication, LLC*, No. 19-CV-00266-ABJ, 2020 WL 10356870, at *2 (D. Wyo. Mar. 13, 2020) (citing *Iqbal*). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Clinton*, 63 F.4th at 1276 (punctuation omitted). There is a "low bar for surviving a motion

to dismiss," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.*

## I.     The Tenth Circuit Does Not Require a Plaintiff to Identify A Cause of Action against a Party whose Joinder is Required by Rule 19(a).

As the Plaintiffs noted in their Complaint, Doc. 6 at 2 n.2, Langford is named as a defendant because he is likely a required party to this litigation. Langford is a member of Kappa Kappa Gamma. Doc. 6 at ¶ 1. Langford is a biological male. Doc. 6 at ¶ 1; ¶121. Plaintiffs assert his membership violates the Sorority's bylaws and ask that this Court void the membership altogether. Plaintiffs also assert that Langford's behavior, since becoming a member and gaining access to the single-sex home where they live, has harmed them.

Rule 19 provides that Langford "must be joined as a party" if he has an "interest relating to the subject of the action" such that "disposing of the action in [Langford's] absence *may* "impair or impede" his "ability to protect the interest" or leave Kappa Kappa Gamma "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Rule 19(a)(1).

Normally, Rule 19 joinder is contested as a motion made by a defendant. Fed. R. Civ. P. 12(b)(7). The Tenth Circuit has held, however, that a Plaintiff can lawfully anticipate joinder, naming a required party as a Defendant. *Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988) *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

In *Hodel*, the Sierra Club sued to enjoin the improvement of a road on federal land. *Id.* at 1073. The Sierra Club alleged that the Department of the Interior, which controlled the land, failed to adequately account for the environmental damage that would be caused by the road's expansion. *Id.* The federal government's only action, however, was to grant a permit. The cause of action at

issue was the Administrative Procedure Act, which is a cause of action only against the United States. *Id.* at 1076-77. The Sierra Club also sued the county officials who would actually rebuild the road, however, given that the county "by its unrestrained actions, could defeat the objectives sought in the suit against the agency." *Id.* at 1077.

The Tenth Circuit concluded the county was a required party under Rule 19. *Id.* Because Rule 19 required joinder, it was "of no moment that the County formally has been aligned as a defendant rather than a third-party defendant." *Id.* at 1078. "Substantively, the relief sought and the defenses raised are identical; no party has been prejudiced; and neither the County nor [the federal government] has raised an objection to the misalignment." *Id.* The county's joinder would not deprive the court of subject matter jurisdiction, "despite Sierra Club's alleged lack of a right of action against the County." *Id.* at 1077. In the formal alignment of the parties, the county was denoted as a defendant, but substantively it was a third-party defendant who could have been impleaded by the federal agency. *Id.*

As the District Court in Connecticut noted, this approach to joinder "is consistent with Supreme Court precedent":

> In *Teamsters*, the Supreme Court vacated an injunction against a union because it was not liable for any discrimination; nevertheless, the Court explained that the "union will properly remain in this litigation as a defendant [under Rule 19(a)] so that full relief may be awarded the victims of the employer's ... discrimination." *Intl. Broth. of Teamsters v. U.S.*, 431 U.S. 324, 356 n.43 (1977). The Supreme Court reaffirmed this principle a few years later in *General Building Contractors*, explaining that while the imposition of "injunctive relief against a party found not to have violated any substantive right" is not permitted, "[that was] not to say that [such a party] ... might not, upon an appropriate evidentiary showing, be retained in the lawsuit and even subjected to such minor and ancillary provisions of an injunctive order as the District Court might find necessary to grant complete relief to [plaintiffs] from the discrimination they suffered at the hands of the [remaining defendant]." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982). In her concurrence, Justice O'Connor emphasized this point, observing that "it is entirely possible that full relief cannot be granted without subjecting the [employers, who were found not to have engaged in illegal discrimination] to some

incidental or ancillary provisions of the court's injunctive order [against the union defendants]" and "the Court in *Teamsters* cited Rule 19(a)(1) of the Federal Rules of Civil Procedure, which requires a district court to join a person as a party if 'in his absence complete relief cannot be accorded among those already parties.' " *Id.* at 405 & n.3 (O'Connor, J., concurring).

*Pennsylvania Higher Educ. Assistance Agency v. Perez*, 416 F. Supp. 3d 75, 92-93 (D. Conn. 2019).

Without acknowledging the Tenth Circuit precedent, Langford points to an unreported decision and asserts that Rule 19 is not a "joinder mechanism for plaintiffs." Doc. 23 at 4 (quoting *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 66 (10th Cir. 2005)). *Shaw*, an unreported case, cannot alter Tenth Circuit precedent. Tenth Circuit Rule 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). Nor does *Shaw* have persuasive value here as that case is significantly different. In *Shaw*, the Plaintiff had already prevailed both at trial and on appeal in her initial *qui tam* action. *Id.* at 65. Then, in post-judgment proceedings, Shaw sought to pierce the corporate veil to hold additional employees—who had never been parties of the first case—personally liable for payment of her attorney fees for collection of the earlier judgment. *Id.* at 66. Shaw sought to either amend her judgment under Rule 60 or join additional parties under Rule 19. The Court rejected Shaw's use of Rule 19 and recharacterized her motion as a request to add or drop parties pursuant to Rule 21. *Id.* The panel did not provide its analysis, although the panel cited a Sixth Circuit case that, when quoted fully, supports Plaintiffs' position here. The Tenth Circuit panel cited *Glancy v. Taubman Centers, Inc.*, for the proposition that the Complaint is the mechanism for Plaintiffs to add required parties: "Rule 19 is the tool of the defendant, *as the plaintiff has the power to choose which parties it wishes to sue and generally has ample freedom to amend its complaint to add a party.*" *Shaw*, 138 F. App'x at 66 (quoting 373 F.3d 656, 669 (6th Cir.2004) (emphasis added).

Langford's joinder must not eliminate subject matter jurisdiction, but it does not. Whether Langford is a citizen of Wyoming, Utah, or Washington State—a question that Langford's motion to dismiss does not answer—this Court would retain complete diversity. Nor does the lack of monetary damages sought against Langford diminish the value of the relief sought by Plaintiffs. The amount in controversy includes not only monetary damages, but it also includes the value of the declaratory and injunctive relief. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006).

In multiple plaintiff cases, claims may be aggregated to meet the amount in controversy requirement when they "unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). This is true for the claim brought by the Plaintiffs here. In their derivative action, they seek their common right to insist that the corporation adhere to its bylaws in Wyoming and beyond. Finally, even if the value of the injunction to each Plaintiff were not aggregated, they seek far more than value of the actual housing costs paid to Kappa Kappa Gamma. Plaintiffs seek compensation and an injunction to preserve the single-sex living environment they were promised as well as the lifetime benefits of sorority membership that Kappa Kappa Gamma has destroyed. Doc. 6 at ¶ 154; n.1.

Langford briefly suggests in his motion that Plaintiffs lack standing to pursue their claims, but he does not develop this argument. To establish standing, the Plaintiffs must show that (1) they have suffered an actual or threatened injury which is (2) fairly traceable to Langford's unlawful conduct and (3) will likely be redressed by a favorable decision. *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 150 (2010). Standing analysis is not an evaluation of causes of action. The analysis focuses on the injury suffered by the Plaintiffs and whether this Court *could* provide a remedy. In this case, Plaintiffs allege that they are injured by Kappa Kappa Gamma's admission

of Langford as a member. They seek invalidation of his membership, which was approved by Defendant Rooney and the remaining leadership of the Sorority in violation of the corporation's bylaws, standing rules, and policies. And this Court has the authority to enjoin the Sorority's behavior. The addition of Langford to ensure that any judgment against Kappa is enforceable does not eliminate subject matter jurisdiction.

## II.     The Court should not dismiss the Complaint as a violation of Rule 8(d).

Langford's second argument invokes the requirement in Rule 8 that each allegation in a Complaint be "simple, concise and direct." Fed. R. Civ. P 8(d). Langford does not identify specific passages that violate Rule 8. Rather, Langford argues that the entire Complaint should be seen as a "press release" rather than an attempt to seek relief from this Court. Doc. 23 at 5.

Langford points to three characteristics of the Complaint which he believes violate the rules. First, the Complaint is too long. Doc. 23 at 5-6. Second, the Complaint includes a "muddle of irrelevant allegations" such as a reference to Langford's physical size and some of his other behavior. *Id.* at 6-7. Third, Langford's argument that the Complaint is a "press release" appears to reflect an argument that the Complaint has been filed for an improper purpose. *E.g.*, Doc. 23 at 5 ("Plaintiffs fling dehumanizing mud throughout their Amended Complaint.").

Respectfully, Langford's argument seems to reflect anger at the allegations made about his conduct, not ambiguity about the claims made by Plaintiffs.

### A.     Standard of Review.

The pleading standard under Rule 8 does not require "detailed factual allegations," but a Plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff cannot provide only conclusions. *Id.* at 678-79. In addition, Plaintiffs are also subject to heightened pleading standards

based on their derivative claim. *See* Fed. R. Civ. P. 23.1 (must "state with particularity" any effort to obtain relief from corporate leadership prior to filing suit or the reasons for failing to make such an effort.).

Rule 8 is not a page limit. The purpose of the rule is "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." *Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Assn. of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989). Improper complaints are those which "consist of several pages of rambling, disjointed factual allegations, seemingly unrelated conclusory assertions of constitutional violations, and an exhaustive recital of statutes and administrative rules, which shed no light on the exact nature of [the Plaintiff's] claims." *Bishop v. Romer*, 172 F.3d 62 (10th Cir. 1999) (unpublished).

In a lengthy opinion, the Ninth Circuit has noted that, under Rule 8, a district court should look at whether the complaint is confusing. The analysis is not whether the complaint may have "set out more factual detail than necessary." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1129 (9th Cir. 2008). Where a complaint is "logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor" the complaint does not violate Rule 8. *Id.* The underlying question is whether a defendant will have "difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Id.*

## B.    The Complaint does not violate Rule 8.

A motion to dismiss based on Rule 8 should include more than a comparison of page counts in various cases. The moving party should "attempt to identify particular allegations as immaterial

or unnecessary," "assert that the complaint fails to set forth cognizable causes of action" or that "the legal theories are incoherent" or that the defendant "cannot tell which causes of action are alleged against which Defendants." *Hearns*, 530 F.3d at 1130.

Instead, Langford objects that the complaint provides too much factual detail. But this detail is relevant. As one example, consider Langford's objection that references to his physical size are "insulting jabs." Doc. 23 at 7. Allegations about Langford's size are not a comment on his physical fitness. These facts, in part, demonstrate the extent to which Langford's claim of womanhood obscures the actual interactions taking place. A transgender man (a female) does not suddenly become stronger, or taller, or more muscular because of a gender transition. Biological males have little to fear from women who declare that they are now transgender men. Conversely, biological males like Langford do not become smaller or weaker just because they claim to be a woman.

Langford is an individual with physical size unusual for men and unheard of for women. According to the Census Bureau in the 2000s—a time when arguments about whether one is a "man" or "woman" did not affect data collection—fewer than 1% of women in the United States were 6'2" or taller. Only 6% of all men (5.9%) were. U.S. Census Bureau, *Cumulative Percent Distribution of Population by Height and Sex: 2007 to 2008*, available at tinyurl.com/4c6jdn9j. For weight, only about 5% of men weighed more than 260 pounds. *Id.* Plaintiffs are living the reality of Langford's biological, sex-based differences. When a 6'2" person who weighs 260 pounds and has benefited from male puberty sits in a sorority dining room—staring and scowling at the young women who filed a complaint with this Court—that moment is not just a disagreement among "us" girls. That angry glare is a threat, a threat made possible by that man's superior size and strength.

C.        **Dismissal with prejudice is inappropriate.**

A district court has ample remedial authority to relieve a defendant of the burden of responding to a complaint with excessive detail. One option would be a motion to strike. A judge could also excuse a defendant from answering certain paragraphs. *Hearns*, 530 F.3d at 1132. Dismissal with prejudice is a harsh remedy. The district court "should first consider less drastic alternatives." *Id. See also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) ("We have instructed district courts to give a plaintiff the opportunity to clarify the claims and remedy the deficiencies in the complaint.").

In several places, Langford's Motion to Dismiss moves beyond the Complaint to attempt attacks upon the credibility and ethics of Plaintiffs and their counsel. Langford asserts that the Complaint's allegations are so horrendous that "common sense" indicates they must be hateful lies. Doc. 23 at 2 n.2. The allegations are dismissed as "gossip" from some unidentified "playbook" for bigots. *Id.* at 2.

Consider, however, that the federal rules require this Complaint, unlike many others, be "verified." Fed. R. Civ. P. 23.1(b). Plaintiffs have had to personally swear to the truth of the factual allegations made therein. Langford's behavior is relevant. It may be shocking, but that is because the actual behavior is shocking.

Much of the argument for dismissal reflects the way that public debate proceeds on transgender issues. Langford's brief is filled with untruthful, misleading attacks on the motives and actions of the Plaintiffs and their counsel. *See* Doc. 23. For example, Langford attacks the conduct of the Plaintiffs' attorneys on the basis of a Complaint that neither of them filed. Doc. 23 at ¶ 4; *See also Smith v. Gordon*, et. al., No. 21-CV-201-F. Langford inaccurately asserts that prior

to filing this Complaint, a housing exemption for him was already granted.[2] Langford takes issue with comments from Caitlyn Jenner and Megyn Kelly, as though Plaintiffs control what media personalities say. Counsel for Langford first entered press in this matter to publicly attack the veracity of the Plaintiffs.[3] Langford personally entered the press after receiving promise of initiation to tout his status as the first transgender accepted. This news was picked up on the national stage at that time, prior to this suit being filed. Nonetheless, much of Langford's briefing is nothing more than irrelevant diatribe that is inapplicable to a motion to dismiss and seeks to serve as his own press release to cloud the judgment of the public and this Court in an effort to cast these young, victimized women as villains in a story Langford wrote.

## Conclusion

It is unclear why—when a large man pushes his way into an all-female space—the women who object are the bullies. Plaintiffs have denied dozens of national and international press requests, but they want their voices heard by this Court to prevent their victimization from occurring to other women who may be afraid to stand up for themselves. They are labeled attention seeking liars, an old playbook from our history when women call out the men who force themselves upon them and their privacy. But, the times have changed. Women no longer must be silent victims to men who attempt to play by their own set of rules.

---

[2] See Doc. 23 at 12. The Court should note that Exhibit A of Langford's Motion to Dismiss in support of this accusation is an email dated April 7th while this Complaint was filed March 27th. Langford's timeline is inaccurate by the Court's record. Furthermore, any reprieve from housing requirements is exclusively in Langford's control. He has full access to the house, can come and go as he pleases, and could seek relief from his own request at any time.

[3] "'The allegations in the complaint are horrendous and baseless and Ms. Langford looks forward to letting the public know the full story when that time comes,' said Rachel Berkness, Artemis Lanford's attorney from Freeburg Law, on behalf of Langford." Plaintiffs' Anonymity Stripped in Lawsuit Against Transgender Student and KKG. Branding Iron, April 20, 2023. Accessed at http://www.uwbrandingiron.com/2023/04/20/plaintiffs-anonymity-stripped-in-lawsuit-against-transgender-student-and-kkg/.

Langford would have this Court believe that the Plaintiffs are dehumanizers when they have merely exposed what he has done in their home. Langford's motion is an attempt to portray himself as a victim when in fact he is the man who has harmed these young women who have done no more than demand the safe space they were promised for their college experience. Some Plaintiffs have been sexually assaulted in their past, and they are suffering real physical and emotional damages as a result of Langford's terror in their home, the monetary damage of which is extensive special damages far above the jurisdictional threshold required in a case of this nature. Some women can't go to their home at all. Some witnesses have experienced such adverse health reactions that they dropped the sorority altogether. Some moved away to be a part of another college. Langford is not the victim.[4] Furthermore, society is not the arbiter of corporate illegalities, this Court is. This matter should be properly heard before this Court and the Defendant's Motion to Dismiss should be wholly denied.

Respectfully submitted,

/s/ Cassie Craven_____          /s/ John Knepper_____
Cassie Craven, 7-5664                John Knepper
Longhorn Law Limited Liability Company   Law Office of John G. Knepper, LLC
109 E. 17th St. Suite 11             P.O. Box 1512
Cheyenne, Wyoming 82001              Cheyenne, Wyoming 82003
307-823-3062                         307-632-2842
cassie@longhornlawllc.com            John@KnepperLLC.com

Dated this 5th day of July, 2023.

---

[4] If this Court concludes Langford is not a required party, then Plaintiffs have no objection to his dismissal. Doc. 6 at 2 n.2. Similarly, if Langford stipulates that he is not a required party, Plaintiffs would support his dismissal. Langford's Motion to Dismiss does not make either suggestion, so Plaintiffs have no basis to conclude Langford would consent to such a dismissal.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 5th day of July, a copy of the foregoing pleading, was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system.  Parties may access this filing through the Court's system.

Respectfully submitted,

/s/ Cassie Craven_____    /s/ John Knepper_____
Cassie Craven, 7-5664     John Knepper
Longhorn Law Limited Liability Company Law Office of John G. Knepper, LLC
109 E. 17th St. Suite 11     P.O. Box 1512
Cheyenne, Wyoming 82001    Cheyenne, Wyoming 82003
307-823-3062       307-632-2842
cassie@longhornlawllc.com    John@KnepperLLC.com