Freeburg Law, LLC
Alex Freeburg, Bar No. 7-5182
Rachel Berkness, Bar No. 7-5966
PO Box 3442
Jackson, WY 83001
*Attorneys for Artemis Langford*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JAYLYN WESTENBROEK, HANNAH, HOLTMEIER, ALLISON COGHAN, GRACE CHOATE, MADELINE RAMAR, and MEGAN KOSAR, on behalf of themselves and derivatively on behalf of KAPPA KAPPA GAMMA FRATERNITY, <br><br> Plaintiffs, <br><br> v. <br><br> KAPPA KAPPA GAMMA FRATERNITY, an Ohio non-profit corporation, as a Nominal Defendant and as a Direct Defendant; MARY PAT ROONEY, President of the Fraternity Council of KAPPA KAPPA GAMMA FRATERNITY, in her official capacity, KAPPA KAPPA GAMMA BUILDING CO., a Wyoming non-profit corporation, and ARTEMIS LANGFORD, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) Civil Action No.: 23-CV-00051-ABJ ) ) ) ) ) ) ) ) ) ) ) ) |

**ARTEMIS LANGFORD'S REPLY IN SUPPORT OF
MOTION TO DISMISS WITH PREJUDICE**

**COMES NOW,** Defendant Artemis Langford, by and through her undersigned attorney, Rachel Berkness of Freeburg Law, LLC, and hereby submits this *Reply in Support of Artemis Langford's Motion to Dismiss with Prejudice* as follows:

**INTRODUCTION**

In response to Ms. Langford's Motion to Dismiss, Plaintiffs minimize, dodge, and deflect. They locate a single case which, while not on point, they contend supports suing in anticipation of Rule 19 joinder. They then largely ignore their burden to establish standing and double down on their vilification of Ms. Langford. They insist that such allegations are relevant without actually connecting the dots between those allegations and their claims. But overall, they defend their allegations as having been sworn to under penalty of perjury.

What Plaintiffs do not inform this Court of is that the person who initially spread what is perhaps the most vicious rumor about Ms. Langford – that she became visibly aroused while watching Plaintiff Megan Kosar's back as she changed her shirt – has since admitted that she had actually repeated a drunken story that she did not believe to be true. When Ms. Kosar learned of this, she replied, "D-mn that s-cks . . . [b]ut still Artemis is creepy in other ways at least."

Such flippant attitudes have no place before this Court. Nor do hunches based on strained interpretations of otherwise unremarkable behavior, which are more evident of confirmation bias than a reflection on Ms. Langford.[1] Without any excuse as to why they should appear in a case alleging breach of contract and a shareholder derivative claim, Plaintiffs portray Ms. Langford as

---

[1] The campaign to remove Ms. Langford from the sorority started the day after she accepted her bid to join and had nothing to do with the allegations of misconduct Plaintiffs would later compile. [Attached hereto as Exhibit A is a true and accurate copy of an email, apparently authored by Plaintiff Holtmeier's mother, which predicts that there would be "issues" and "ramifications" of a "TRANSGENDER" woman's acceptance]; *see e.g.* [ECF 6 at 61 (faulting Ms. Langford for writing in a notebook); ECF 6 at 50 (faulting Ms. Langford for sitting in a chair); ECF 6 at 60 (faulting Ms. Langford for singing *God Rest Ye Merry Gentlemen*); ECF 6 at 59 (faulting Ms. Langford for a falling asleep on a couch)].


a student attending a co-ed university with the opportunity to live in a co-ed dormitory who nonetheless devises an elaborate scheme to join a women's student organization just to be near them in common areas. Then they publicly joke at Ms. Langford's expense: "If I knew it was that easy to get into a sorority house, I would have put on a skirt a long time ago."[2]

Plaintiffs' allegations against Ms. Langford should be dismissed with prejudice.

## ARGUMENT

**The possibility that Ms. Langford might later be impleaded does not relieve Plaintiffs of compliance with the Rules of Civil Procedure.**

Plaintiffs admit to failing to state a claim against Ms. Langford but suggest that suing her in anticipation of her later joinder is supported by the Tenth Circuit. [ECF 25 at 4-5].

In support of this argument, Plaintiffs stretch the rationale in *Sierra Club v. Hodel*, a case which does not involve Rule 12(b)(6) or standing. 848 F.2d 1068, 1073 (10th Cir. 1988). There, although the Tenth Circuit found that naming a certain party as a defendant was a "misalignment" because no private right of action existed, the same party could otherwise have been impleaded as a third-party defendant. *Id*. at 1077-78. Given there was standing to sue that party, "the relief sought" was "identical" to the relief sought had the party been brought in as a third-party defendant, no party had objected below, and "no party ha[d] been prejudiced," the Tenth Circuit concluded that the "misalignment" was "of no moment." *Id*.

*Sierra Club* does not stand for the proposition that such "misalignment" is proper practice, and its rationale certainly does not extend to cases in which no cause of action is asserted, no standing exists, and the defendant objects.

---

[2] *Left's Trans Ideology Religion, and Men in Women's Spaces, with Sen. Josh Hawley and KKG Sisters Suing*, available at https://www.youtube.com/watch?v=51wAdkZEUC8 (last visited July 12, 2023).

Further, while Plaintiffs are correct that they are generally the master of the complaint and may choose which parties to sue, Rule 19 is not the tool to do so. *Shaw v. AAG Eng'g & Drafting Inc.*, 138 Fed.Appx. 62, 66 (10th Cir. 2005); *see also Birmingham v. Experian Information Solutions, Inc.*, 633 F.3d 1006, 1021 (10th Cir. 2001) (citing James Wm. Moore, Moore's Federal Practice § 19.02 (3d ed. 2010) (Rule 19 "reflect[s] a policy decision that [in certain circumstances] other interests – primarily the protection of other parties and absentees – outweigh the interests in plaintiff autonomy [in structuring the litigation].") (brackets in original). In fact, Rule 19 may not even be used as "a means by which a plaintiff can join a truly liable defendant if he has mistakenly sued innocent parties." *Birmingham*, 633 F.3d at 1021. Plaintiffs' power to pursue an action against named parties remains constrained by Rule 12(b)(6), and they have failed to state a claim against Ms. Langford.

**Ms. Langford should be dismissed from this suit because Plaintiffs have not met their burden to establish standing to sue her.**

The reason Plaintiffs lack standing to sue Ms. Langford is simple: they seek no redress from her. This flaw is fatal. *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 926 (10th Cir. 2005). Yet Plaintiffs largely ignore this, seemingly placing the burden on Ms. Langford to develop the argument more fully. [ECF 25 at 7]. They then briefly refer to the relief they seek against Kappa Kappa Gamma and appear to suggest, without authority, that standing analysis differs when an individual could have been joined as a third-party defendant. [ECF 25 at 7-8].

But when standing is challenged, the court must "presume" lack of jurisdiction "unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal citation omitted). And "standing is not dispensed in gross." *Lewis v. Casey*, 5148 U.S. 343, 358, n.6, 116 S.Ct.2174, 135 L.Ed.2d 606 (1996). Instead, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). Further, standing is not merely a question of "whether this Court **could** provide a remedy," as Plaintiffs contend, but it instead "depends on the plaintiff's showing" of "a

4

**likelihood** that the injury would be redressed by a favorable decision." *Protocols, LLC*, 549 F.3d at 1298 (10th Cir. 2008) (emphasis added).

Plaintiffs appear not to appreciate the gravity of a standing challenge and make little effort to meet their burden. Whether they allege a redressable injury against other defendants is immaterial. Plaintiffs raise no redressable causes of action against Ms. Langford, requiring dismissal in her favor.

**Plaintiffs' Amended Complaint should be dismissed with prejudice, not because it "says too much," but because it needlessly slanders a young, transgender woman to gain publicity and collect donations in violation of Rule 8.**

Violating Rule 8 may serve as independent grounds for dismissal, and the *Ehrenhaus* factors govern whether such dismissal should be made with prejudice. *Ehrenhaus v. Reynolds*, 965 F.2d 916-921 (10th Cir. 1992). Plaintiffs do not address the *Ehrenhaus* factors in their Opposition. Instead, they Ms. Langford's position and the relevant law.

1. **The allegations against Ms. Langford need not satisfy a higher pleading standard.**

Plaintiffs' first defense can be quickly disposed of. Plaintiffs suggest that they are "subject to heightened pleading standards based on their derivative claim." [ECF 25 at 9]. But Federal Rule of Civil Procedure 23. 1 only requires that a derivative action state with particularity: "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and, if necessary, from the shareholders or members; and (b) the reasons for not obtaining the action or not making the effort." Ms. Langford does not take issue with Plaintiffs' pleading of those elements because the derivative causes of action are not brought against her. She takes issue with the extensive and unnecessary attacks against her personally.

2. **Rule 8 establishes not just a floor, but a ceiling.**

The heart of Ms. Langford's dismissal argument based on Rule 8 is that Plaintiffs needlessly slander her with what are amongst the most stigmatizing allegations imaginable. Yet

5

Plaintiffs whittle Ms. Langford's argument down to nothing more than a criticism that they say "too much." [ECF 25 at 2, 10]. They then attempt to knock down this straw man by claiming, without authority, that "Rule 8 is not a page limit." [ECF 25 at 9].

But the Tenth Circuit finds that "Rule 8(a) establishes a ceiling . . . and **not** a floor." *Toevs v. Reid*, 267 F. App'x 817, 818-19 (2008) (emphasis added); *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *2–3 (10th Cir. Jan. 3, 2007); *see also New Home Appliance Center, Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957) (finding that a concise statement of facts "upon which relief can be granted" is "all that is permissible"). Other federal courts within this circuit agree. *See e.g. U.S. ex rel. Brathwaite v. Kansas*, No. CV 19-2265-KHV, 2020 WL 837431, at *1 (D. Kan. Feb. 20, 2020); *Barlean v. Oklahoma Cnty. Crim. Just. Auth.*, No. CIV-23-00488-JD, 2023 WL 3938473, at *1 (W.D. Okla. June 9, 2023); *McCracken-Phillips v. Phillips*, No. 08-CV-02408MSKMJW, 2009 WL 1966293, at *3 (D. Colo. July 7, 2009); *Silver v. Sachs*, No. CIV-08-0041 RHS/DJS, 2008 WL 11319710, at *4 (D.N.M. June 16, 2008); *but see Low v. Chu*, No. 09-CV-0505-CVE-PJC, 2009 WL 4582312, at *2 (N.D. Okla. Dec. 1, 2009) ("Rule 8(a)(2) is both a floor and a ceiling."). The Tenth Circuit also makes clear that Rule 8 is not just about notice; a pleading may be dismissed when it contains lengthy, unnecessary, and convoluted allegations that bury its material claims. *Baker v. City of Loveland*, 686 F. App'x. 619, 620 (10th Cir. 2017).

Plaintiffs essentially argue that Ms. Langford knows she is being sued for having been voted into a sorority as a transgender woman. But, beyond that, she is left unable to decipher what the allegations against her have to do with Plaintiffs' causes of action against unrelated defendants. For example, Plaintiffs go to significant lengths to compare Ms. Langford's alleged physical size to others. But they do not close the loop as to how that relates to their claims. Is there a provision in Plaintiffs' housing contracts that governs the size and shape of sorority sisters? Is there a Kappa bylaw that does? Is Ms. Langford being accused of unlawful conduct related to her body or her clothing or something else? Plaintiffs leave these questions unanswered.

3.  **Dismissal with prejudice is warranted.**

Whether to dismiss with prejudice is governed by the factors set forth in *Ehrenhaus*, which Plaintiffs do not address. 965 F.2d at 916-921. However, some of their arguments nevertheless implicate the culpability factor and whether lesser sanctions are available. But first, Plaintiffs raise several arguments that are not anticipated by *Ehrenhaus*.

A.  ***The Ehrenhaus analysis does not excuse culpable conduct so long as the party at fault points the finger at their opponent.***

Rather than address the *Ehrenhaus* factors, Plaintiffs devote much of their response to shifting blame to Ms. Langford. For example, they claim Ms. Langford faults their counsel for "a Complaint that neither of them filed," referring to *Smith v. Gordon, et. al* ., No. 21-CV-201-F. [ECF 25 at 11]. While Plaintiffs' counsel disclaim responsibility for that pleading today, shortly after it was filed, Plaintiffs' counsel re-posted a Fox News interview featuring the *Smith* plaintiff and indicating that she was "one of [her] favorite clients ever." [Attached hereto as Exhibit B is a true and accurate copy of a post by Plaintiffs' counsel in reference to the *Smith* plaintiff, dated November 10, 2021]. And like this case, the plaintiff in *Smith* raised funds for her legal fees through the Christian crowdfunding website: GiveSendGo. *Stand With Grace*, https://www.givesendgo.com/stand4grace?fbclid=IwAR1908Zos9JX lo5f5ks8qbv3R0QBacaET 8SFdSjk-JAbCKIfPO Nw_Rsy2-I (last visited July 12, 2023). While it cannot be known what role, if any, Plaintiffs' counsel played in drafting that pleading, the existence of the order faulting Plaintiffs' counsel's previous client for the same conduct as Plaintiffs here is relevant to notice.

Plaintiffs also fault Ms. Langford for "inaccurately assert[ing] that prior to filing this Complaint, a housing exemption . . . was already granted." [ECF 25 at 12]. Plaintiffs' argument focuses on the date of the email exhibit, not the content of the exhibit itself. [ECF 25 at 12]. The exhibit states that "**prior to the litigation**" Ms. Langford had "petitioned to be released from the live-in requirement" and that "petition was approved and granted." (emphasis added) [Exh. A to ECF 23]. It appears Plaintiff Holtmeier, the Housing Director at the time, signed the original

7

Complaint containing inaccurate allegations as to Ms. Langford's living situation without investigating their veracity. Plaintiffs do not defend their allegation that Ms. Langford was granted this exemption due to "unspecified security concerns" or their baseless implication that Ms. Langford's exemption will only last a single semester.

Finally, although also never anticipated by *Ehrenhaus*, Plaintiffs rationalize their statements on nationwide media by pointing the finger at Ms. Langford for initially making a single-sentence statement defending her reputation to her student newspaper via counsel. [ECF 25 at 12, n. 3]. They also take aim at her for initially expressing happiness in her student newspaper that she had been voted into Kappa Kappa Gamma. [ECF 25 at 12].

These arguments are not supported by authority in opposing dismissal with prejudice. They should not be considered.

### B. *Plaintiffs' culpability merits dismissal with prejudice.*

In moving to dismiss, Ms. Langford provided a single, easily demonstrable example of the inaccuracies in Plaintiffs' allegations. [ECF 23 at 12]. She did this not to litigate the merits, but as relevant to the culpability factor in *Ehrenhaus*. In response, Plaintiffs show that they don't know where to draw the line. They introduce the theme that they are forced to make shocking allegations only "because the actual behavior is shocking." [ECF 25 at 11]. They then go further and suggest that Ms. Langford is reigning "terror in their home." ][ECF 25 at 13]. They remind this Court that their allegations are unique in that they are verified. [ECF 25 at 2, 11].

Plaintiffs' reliance upon their verification page does not save their claims from dismissal with prejudice under *Ehrenhaus*. Perhaps the most heinous of the allegations against Ms. Langford, and the one gaining Plaintiffs the most media attention, is the story in which they accuse Ms. Langford of having an erection while watching Plaintiff Megan Kosar change her shirt, facing away. [ECF 1 at 59; ECF 6 at 60]. Plaintiffs paint a picture in which Ms. Langford "stood silently in the corner of the room near the door while other pledges changed." [ECF 6 at 60].

8

Ms. Kosar then "faced away from the others and removed her shirt" after which she "discovered Langford staring at her." *Id.* Plaintiffs initially asserted that "[a]fter the morning activities, other Kappa members informed [Ms. Kosar] that while watching her, [Langford] had become sexually aroused." [ECF 1 at 59]. This allegation was verified on March 22, 2023. [ECF 1 at 70-71].

But the source of this sworn allegation appears to be a game of telephone after one sorority sister told a drunken story to another, who repeated the story to Plaintiff Kosar, and which Plaintiff Kosar found fit to bring before this Court. [Attached hereto as Exhibit C are communications between Kappa Kappa Gamma members related to the Kosar story]. In fact, after Plaintiffs first filed their Complaint, the second sister admitted to a friend that she was actually an eyewitness to the incident but had been keeping a "secret" that "had been weighing her down for months." *Id.* The eyewitness stated that she is "pretty much 100% positive it did not happen" and that "[Plaintiff Kosar] lied about [Ms. Langford] getting [an erection]." *Id.* She told Ms. Kosar this, but was reluctant to come forward further based on the chance the sister telling the drunken story had actually seen something different than she had. *Id.*

What's most troubling is that this eyewitness told Plaintiff Kosar prior to the Amended Complaint being filed that she had "watched [Ms. Langford] the whole time" and that Ms. Langford was actually just "standing in the doorway for like 2 seconds" during that incident. *Id.* She told Ms. Kosar unequivocally that Ms. Langford "didn't get [an erection]." *Id.* She admitted that when she initially repeated the story to Plaintiff Kosar, she did not believe the person initially telling it "was being serious" and that she "was drunk" at the time. *Id.* Rather than responding with relief to the news that she had not been the victim of voyeurism, Plaintiff Kosar responded, "D-mn that s-cks." *Id.* Then, apparently adopting a "no harm, no foul" attitude, followed up with: "But still Artemis is creepy in other ways at least." *Id.* A subtle change to this allegation in the Amended Complaint appears to be an attempt to salvage it without reducing the sting to Ms. Langford. [ECF 1 at 59; ECF 6 at 60].

9

Plaintiffs may not resort to their verification page when they have made false accusations. There is no right of access to the courts to prosecute a frivolous or malicious action. Plaintiffs are culpable for the unnecessary harm they have caused Ms. Langford and their allegations against her should be dismissed with prejudice.

## C. No lesser sanction is appropriate.

As a last gasp, Plaintiffs suggest that striking irrelevant portions of their Amended Complaint is a less drastic option available to this Court. [ECF 25 at 12]. Ms. Langford struggles to understand how this remedy is possible at all, absent her dismissal with prejudice. Plaintiffs could have alleged that their contracts promised an "all-woman sorority," a transgender woman was accepted, and they believe the Kappa Defendants are therefore in breach. Yet they chose to allege "with particularity" a host of harmful allegations against a college student that they would use to gain nationwide attention and collect donations online. Dismissal with prejudice is the only appropriate sanction to ensure this conduct does not recur.

## CONCLUSION

The allegations against Ms. Langford have nothing to do with her. They were borne out of a hypothesis in search of evidence and pieced together using drunken party stories. Ms. Langford is not a victim; she is a target. As soon as she heard the rumblings, she could have resigned from the sorority she was so proud to be voted into and stop all of this from happening. But some things are not for sale. She now asks this Court to dismiss the allegations against her with prejudice.

Dated _____07/12/2023_____.        ___/s/ Rachel Berkness_____
                                         Rachel M. Berkness, Bar No. 7-5966
                                         Freeburg Law, LLC
                                         Box 3442
                                         Jackson, WY 83001

**CERTIFICATE OF SERVICE**

    The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 12th day of July 2023.

| | | |
|---|---|---|
| Cassie Craven (#7-5664)<br>LONGHORN LAW LLC<br>109 East 17th Street, Suite 223<br>Cheyenne, WY 82001<br>Telephone: (307) 823-3062<br>E-Mail: ccraven.law@gmail.com | ☒<br>☐<br>☐<br>☐ | CM/ECF<br>U.S. Mail<br>Fax<br>Email |
| John G. Knepper (#7-4608)<br>LAW OFFICE OF JOHN G. KNEPPER, LLC<br>P.O. Box 1512<br>Cheyenne, WY 82003<br>Telephone: (307) 632-2842<br>E-Mail: john@knepperllc.com | ☒<br>☐<br>☐<br>☐ | CM/ECF<br>U.S. Mail<br>Fax<br>Email |
| Natalie M. McLaughlin (Pro Hac Vice)<br>Brian W. Dressel (Pro Hac Vice)<br>VORYS, SATER, SEYMOUR AND PEASE, LLP<br>52 East Gay Street<br>Columbus, OH 43215<br>Telephone:  (614) 464-5452<br>Email: nmmclaughlin@vorys.com<br>bwdressel@vorys.com | ☒<br>☐<br>☐<br>☐ | CM/ECF<br>U.S. Mail<br>Fax<br>Email |
| Scott P. Klosterman (#6-3081)<br>WILLIAMS, PORTER, DAY & NEVILLE, P.C.<br>159 North Wolcott, Suite 400<br>P.O. Box 10700<br>Casper, WY 82602-3902<br>Telephone:  (307) 265-0700<br>E-Mail: sklosterman@wpdn.net | ☒<br>☐<br>☐<br>☐ | CM/ECF<br>U.S. Mail<br>Fax<br>Email |

                                          /s/ Rachel Berkness
                                            Rachel Berkness