| | |
|---|---|
| Stuart R. Day (#6-3081) | Natalie M. McLaughlin (*Pro Hac Vice*) |
| WILLIAMS, PORTER, DAY & NEVILLE, P.C. | Brian W. Dressel (*Pro Hac Vice*) |
| 159 North Wolcott, Suite 400 | VORYS, SATER, SEYMOUR AND PEASE, LLP |
| P.O. Box 10700 | 52 East Gay Street |
| Casper, WY 82602-3902 | Columbus, OH 43215 |
| Telephone:  (307) 265-0700 | Telephone:  (614) 464-5452 |
| Facsimile:  (307) 266-2306 | Email:  nmmclaughlin@vorys.com |
| E-Mail:  sday@wpdn.net | bwdressel@vorys.com |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| JAYLYN WESTENBROEK, HANNAH, HOLTMEIER, ALLISON COGHAN, GRACE CHOATE, MADELINE RAMAR, and MEGAN KOSAR, on behalf of themselves and derivatively on behalf of KAPPA KAPPA GAMMA FRATERNITY, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 23-CV-00051-ABJ |
| KAPPA KAPPA GAMMA FRATERNITY, an Ohio non-profit corporation, as a Nominal Defendant and as a Direct Defendant; MARY PAT ROONEY, President of the Fraternity Council of KAPPA KAPPA GAMMA FRATERNITY, in her official capacity, KAPPA KAPPA GAMMA BUILDING CO., a Wyoming non-profit corporation, and ARTEMIS LANGFORD, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS KAPPA KAPPA GAMMA FRATERNITY, MARY PAT ROONEY, AND KAPPA KAPPA GAMMA BUILDING CO.'S MOTION FOR COURT TO SET A DEADLINE FOR PLAINTIFFS TO AMEND COMPLAINT OR ELSE HAVE DISMISSAL CONVERTED TO DISMISSAL WITH PREJUDICE**

## I.   INTRODUCTION

Defendants file this Motion for Court to Set Deadline for Plaintiffs to Amend Complaint or Else Have Dismissal Converted to Dismissal with Prejudice. This lawsuit was filed almost two years ago. After the Court dismissed Plaintiffs' claims on the merits but without prejudice on August 25, 2023, Plaintiffs appealed. On June 12, 2024, the Tenth Circuit granted Defendants' motion to dismiss Plaintiffs' appeal for lack of appellate jurisdiction. On July 5, 2024, the Tenth Circuit issued its mandate and transferred jurisdiction over the case to this Court. (ECF No. 39.)

In almost eight months since jurisdiction transferred back to this Court, Plaintiffs have taken no action to either attempt to amend their Amended Complaint or finalize the Court's Order so they can perfect an appeal. This has allowed the matter to remain pending without definitive preclusive effect while another case asserts derivative claims based on the same core issue of whether Kappa may admit transgender women consistent with its bylaws, Ohio law, and the First Amendment. *See Levang, et al. v. Kappa Kappa Gamma Fraternity, et al.*, Southern District of Ohio Case No. 2:24-cv-316-MHW-KAJ and District of Wyoming Case No. 2:24-cv-267-ABJ ("Second Case"). Indeed, the Ohio federal court found that the shareholder derivative claims in the Second Case "are ***identical*** to the Westenbroek Derivative Claim." (*See* Second Case, Order Transferring Case, p. 15, attached as Ex. A (emphasis added).)

Requiring Plaintiffs to either amend their Amended Complaint by a set deadline or have their claims dismissed with prejudice is within this Court's authority. Issuing such an order would move the case towards its resolution instead of keeping the parties in limbo for the duration of the statute of limitations on Plaintiffs' claims. Moreover, this relief would not prejudice Plaintiffs, especially given that Plaintiffs have repeatedly represented that there is ***nothing*** they can do to amend their complaint to plead around the merits issues in this Court's dismissal order.

For the reasons that follow below, Defendants therefore request that the Court issue an order requiring Plaintiffs to file a Second Amended Complaint within 21 days and providing that if they do not do so within that timeframe, the Court's August 25, 2023 Order will automatically convert to a dismissal with prejudice.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs filed this lawsuit on March 27, 2023. On June 20, 2023, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint, asking the Court to dismiss all of Plaintiffs' claims with prejudice. The Court granted the Motion on August 25, 2023, but noted that Defendants had not advanced an argument that amendment of the Amended Complaint was futile, and therefore, declined to dismiss the Amended Complaint with prejudice. On September 25, 2023, Plaintiffs appealed the Court's decision to the Tenth Circuit.

On October 9, 2023, Defendants moved the Tenth Circuit to dismiss Plaintiffs' appeal on the grounds that this Court's dismissal without prejudice was not a final appealable order. In their Response to the Motion to Dismiss the Appeal, Plaintiffs contended:

> ***Plaintiffs cannot cure the defects the district court believed present in the First Amended Complaint through an amendment***; the opinion below makes this plain. The district court correctly observed that the "gravamen of Plaintiffs' lawsuit" is whether the term "woman," as used in Kappa's governing documents, includes male-born individuals. Order at 26 (ROA 39). In ruling against Plaintiffs, the court concluded that "Plaintiffs cannot point the Court to the bylaw that defines 'woman' the way they wish." Order at 31 (ROA 44) (emphasis added). This is true—no superfluous bylaw defining "woman" exists, and no reiterations of the complaint could create it. The district court also ruled that Defendants' decision to admit male-born members was "speech which th[e] Court may not impinge." Order at 30 (ROA 43). These conclusions guided every aspect of the court's order. See id. at 38 (ROA 51) (relying on analysis from this section of the opinion). In addition, despite Plaintiffs' allegations that admission of a male-born student into the sorority injured them personally and distinctly, the district court held that "any" injury caused by that admission "inured to all KKG [Kappa] members alike" and that the student's "behavior at the UW chapter house has no bearing on Plaintiffs' legal claims." Order at 39, 40 n.68 (ROA 52, 53). ***None of those rulings identifies a defect Plaintiffs could cure with an amendment***."

(Appellants' Response to Motion to Dismiss Appeal, pp. 5-6, attached as Ex. B (emphasis added).)

Concerning the Court's suggestion in footnote 67 of its dismissal Order that Plaintiffs may seek to amend their Amended Complaint, Plaintiffs stated:

> [The District Court's] footnote [67] does not suggest—indeed, based on the district court's legal analysis, *could not suggest*—any amendment that could bring Plaintiffs' case to life. Nor does the footnote guarantee that Plaintiffs would be permitted to amend if they sought to engage in that *futile endeavor*. On the contrary, the district court merely discussed what might happen "if" plaintiffs were allowed to amend. As the rest of the order makes clear, however, *no amendment could cure the legal grounds for dismissal on which the district court relied*.

(*Id.*, p. 9 (citations omitted) (emphasis added).)

In their Appellate Brief, Plaintiffs' position that there was no way to cure the legal grounds for dismissal through an amendment to their complaint remained unchanged. They represented:

> *Plaintiffs cannot cure the defects the district court believed present in the First Amended Complaint through an amendment* because the district court's decision was based on "a matter going to the merits of appellant's complaint itself rather than a procedural problem which amendment of a complaint might rectify."

(Brief of Appellants, pp. 13-14, attached as Ex. C (citations omitted).)

At oral argument, Plaintiffs' counsel informed the panel that the *only* reason that this Court had stated it would not dismiss this case with prejudice was because Defendants had failed to argue futility, and therefore, it was never considered.

> **Ms. Mailman:** But here, the only reason the District Court said that they – that he wasn't going to grant this with prejudice is because the Defendants didn't argue that amended would be futile. So he didn't even consider it. He didn't say that you could re-file. He just said there isn't futility even alleged here, so I'm just not even going to consider it. It was not a basis for the decision.

(Second Case, Plaintiffs' Notice of Filing Transcript, pp. 8, attached as Ex. D.)

Plaintiffs' counsel's position that there was no way to cure the legal grounds for dismissal through an amendment to their Amended Complaint also remained unchanged:

> **Ms. Mailman:** [T]he problem here, and this goes to the practical consideration of is it on the merits, is that all of these contract claims, every single one of the claims, boils down to whether there's been a certain promise made in the bylaws, and whether that promise was broken. And so, we lose here, then in a sense, ***there'd be no way to get around that determination.***

(*Id.*, p. 9 (emphasis added).)

> **Hon Richard Federico:** What about counts one and four though? You have been granted leave to amend those as well. Understand you'd argue to say there's nothing we can do to amend those claims to potentially make them viable, consistent with the District Court orders. Or are you disclaiming any rights you may have to amendment?
>
> **Ms. Mailman:** Well, we haven't been given a right to amend that. We've been – the claim has been dismissed, admittedly without prejudice.
>
> **Hon. Richard Federico:** Without prejudice, and Footnote 67 at the District Court order is pretty clear that if you want to amend, here are the guidelines that the District Court is offering to you. A lifeline in how to do this.
>
> **Ms. Mailman:** Right, and so we could write it better. I agree. We could follow that footnote and write it better. The problem is, ***we couldn't write it to get around the determination on the merits.*** So, we could write it cleaner and prettier and nicer. Just not to fix the problem that exists here. And so, that's what I really want to address, is what is that merits determination that we really can't get around? And here, the District Court, instead of assessing the elements of a breach of fiduciary duty claim, said that he was unable to review that claim because of non – inner – noninterference principles.

(*Id*, p. 11 (emphasis added).)

The Court of Appeals ultimately disagreed with Plaintiffs. On June 12, 2024, it held that because this Court's dismissal was without prejudice and indicated Plaintiffs could amend, it was not a final order. Thus, the Court of Appeals granted Defendants' motion and dismissed the appeal for lack of jurisdiction. *See Westenbroek v. Kappa Kappa Gamma Fraternity*, 2024 U.S. Dist. LEXIS 14237 (10th Cir. June 12, 2025). The Court of Appeals stated, however, "[i]n the district court, Appellants may stand on their existing complaint and seek a dismissal with prejudice so that they may perfect an appeal, or they may amend the complaint and pursue further proceedings in

-5-

the district court." *Id.* at *8. On July 5, 2024, the Tenth Circuit issued its' mandate and transferred jurisdiction over the case back to this Court. (ECF No. 39.)

Following the Tenth Circuit's decision dismissing the appeal for lack of jurisdiction, lead appellate counsel for Plaintiffs made the following public statement:

> We disagree the court lacked appellate jurisdiction. As we explained in our brief, appellate courts consider district court decisions that go to the merits of the case, which the Wyoming decision certainly did. Women deserve the camaraderie and safety of sororities, but unfortunately, it also appears they first need courts brave enough to say so.

*See* Tenth Circuit Dodges Ruling in Sorority Case Argued by Independent Women's Law Center, https://www.iwf.org/2024/06/12/tenth-circuit-dodges-ruling-kappa-case/ (June 12, 2024). Despite this statement and eagerness to obtain an appellate ruling on the merits of the case, almost eight months since jurisdiction transferred back to this Court, Plaintiffs have taken no action.

While this case was proceeding, allies of Plaintiffs filed the Second Case in the Ohio federal court. The Second Case was brought by alumnae of Kappa and two former members of Kappa. Like this case, the Second Case alleges shareholder derivative claims against Kappa's Fraternity Council related to the admission of transgender women and challenges whether Fraternity Council has the authority to interpret their bylaws. In addition to the derivative claims, the Second Case alleges individual claims on behalf of two former Kappa members. The Complaint alleges that the dismissed members "became aware of facts underlying the litigation filed in the U.S. District Court for the District of Wyoming" and "openly supported the plaintiffs in the Lawsuit and challenged KKG's conduct that gave rise to the lawsuit." (Second Case, Compl., ¶¶ 6–7, attached as Ex. E.)

Like this case, the Second Case turns on "whether Kappa may admit transgender women consistent with its bylaws, Ohio law, and the First Amendment." (Transfer Order, Ex. A, p. 15.) The core issue in the Second Case, just like this case, is whether a court is required to defer to the

interpretation of the term "women" by the elected Fraternity Council of Kappa, an Ohio non-profit organization, or whether it can interfere with that interpretation and require Kappa to define "women" how plaintiffs desire.  (Second Case Motion to Dismiss, pp. 11-14; Second Case Reply in Support of Motion to Dismiss, pp. 9-14,  attached as Exs. F and G.)

Defendants in the Second Case filed a motion to dismiss, arguing that this Court's decision preluded the derivative claims and that all claims should otherwise be dismissed on the merits or stayed pending the resolution of this case.  In considering Defendants' motion to dismiss and in issuing its transfer order, the Ohio federal court determined that because this Court's dismissal was without prejudice, it was not final and therefore had no preclusive effect.  (Transfer Order, Ex. A, p. 20.)  The Ohio court considered other anti-duplicative-litigation doctrines and reasoned that the "first-to-file rule" supported transferring the case due to the overlap between the two cases.  (*Id.*)

### III.  LEGAL ARGUMENT

The Court's August 25, 2023 Order dismissing the Amended Complaint was based on the legal merits of the case, not a procedural problem that Plaintiffs could rectify through amendment. Although the Court declined to dismiss the case with prejudice due to the lack of an explicit argument concerning futility, Defendants submit that their motion to dismiss and reply briefing to this Court showed why any attempt at amendment would be futile and Plaintiffs have repeatedly conceded why amendment would be futile based on the Court's legal grounds for dismissal.  Now that the Tenth Circuit has returned jurisdiction of the case to this Court, the Court should set a deadline for Plaintiffs to file a Second Amended Complaint.  If Plaintiffs fail to do so, the Court should convert the dismissal of Plaintiffs' Amended Complaint into one with prejudice.

The Court should not permit Plaintiffs to hold this case in limbo as individuals who financially supported their claims and share legal counsel seek to have a different court[1] reach a different conclusion on the same derivative claim and legal issues this Court has already addressed without being bound by the preclusion doctrines that would attach to a final order. Granting this Motion would still allow Plaintiffs to seek appellate review of the Court's merits decision while also preventing duplicative litigation and forum shopping.

### A. The Court Should Set a Deadline for Plaintiffs to File a Second Amended Complaint and, if Plaintiffs Do Not Do So, Dismiss the Case with Prejudice

The Court should not permit Plaintiffs to hold this case in abeyance while allies who are also Kappa shareholders assert identical shareholder derivative claims against Kappa Fraternity Council members in other proceedings. As the Court has recognized, "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) *and* granting leave to amend would be futile." *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)) (internal citation and brackets omitted) (emphasis in original). The Court has already held that Plaintiffs' Amended Complaint failed to state a claim, and Plaintiffs have now argued repeatedly that amendment would be futile.

Nevertheless, the Court can remove any doubt as to the question of whether any amendment could save Plaintiffs' claims by setting a firm deadline by which Plaintiffs must file a Second Amended Complaint and, if they do not do so, dismiss the case with prejudice. Federal courts in the Tenth Circuit and elsewhere have recognized the authority of district courts to set a deadline by which plaintiffs must amend a complaint dismissed without prejudice and convert the dismissal to one with prejudice in the absence of an amendment. *See Lipe v. Albuquerque Pub.*

---

[1] Plaintiffs in the Second Case have challenged the transfer in a mandamus proceeding in the Sixth Circuit and have indicated that they may ask this Court to transfer the case back to Ohio.

*Sch.*, No. 23-899, 2024 U.S. Dist. LEXIS 153986, at *13 (D.N.M. Aug. 27, 2024) (setting seven-day deadline for plaintiff to amend complaint or else have dismissal converted to a dismissal with prejudice); *Xirium v. U.S. Immigr. & Customs Enforcement*, No. 1:22-cv-801-TWP-KMB, 2023 U.S. Dist. LEXIS 54429, at *68–*69 (S.D. Ind. Mar. 29, 2023) (dismissing claims without prejudice and setting a 30-day window where plaintiff must amend complaint or else have dismissals converted to dismissals with prejudice); *Kraft v. Old Castle Precast, Inc.*, No. LA CV 15-701-VBF, 2015 U.S. Dist. LEXIS 103440, at *2 (C.D. Cal. Aug. 5, 2015) (setting deadline to amend and ordering that if amended complaint is not filed by deadline, case will be dismissed with prejudice "without further opportunity for argument").

Courts have also recognized the right of defendants to ask the court to set deadlines for amendment in cases where the court did not set one in its dismissal order. *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1161 (10th Cir. 2023) (recognizing defendants can request that a district court impose a deadline to amend); *Britt v. DeJoy*, 45 F.4th 790, 798 (4th Cir. 2022) (en banc) ("[l]itigants on either side have the option of filing a motion requesting that the district court provide a specific deadline by which plaintiff must amend her complaint").

As the Court evaluates this Motion, it should consider the broader context related to Plaintiffs' decision to leave this case in abeyance.  The plaintiffs in the Second Case are asserting derivative claims that mirror those in this case. The Ohio federal court recognized that the Second Case is about whether Kappa "may allow transgender women to join its sisterhood," that "[a]ll parties agree that their dispute boils down to this issue," and that "this case duplicates Westenbroek." (Transfer Order, Ex. A, p. 1.) This Court already determined that a derivative claim does not lie under Ohio law based on a private organization's reasonable interpretation of an undefined term in its own governing documents.  *See Westenbroek v. Kappa Kappa Gamma*

*Fraternity*, No. 23-CV-51-ABJ, 2023 U.S. Dist. LEXIS 152458 (D. Wyo. Aug. 25, 2023). This Court also already determined the specific legal issues that: (1) "[d]efining 'woman' is Kappa Gamma's bedrock right as a private, voluntary organization – and one this Court may not invade;" and (2) Kappa's interpretation of the term "women" is "[a] "lawful interpretation – explicitly authorized per the sorority's Standing Rules – of an otherwise-silent bylaw." *Id.* at *29, *34. Therefore, the Ohio court held, "[b]ecause they are duplicative, these two cases should not proceed simultaneously, for a plethora of prudential reasons." (Transfer Order, Ex. A, p. 1.) Nevertheless, because this Court's Order was not a final order, the Ohio court found it had no preclusive effect.

The Ohio court weighed its discretionary options to transfer, stay, or dismiss the Second Case on other anti-duplicative litigation grounds because it was duplicative of this case. (Transfer Order, Ex. A, p. 2.) In transferring the Second Case to this Court pursuant to the first-to-file rule, the Ohio court noted that "to not apply the first-to-file rule here would condone forum-shopping." (*Id.* at 22.) In explaining that view, the court posed the following hypothetical:

> Six months have passed since the Tenth Circuit instructed the Westenbroek plaintiffs to either amend their complaint or move for a dismissal without prejudice. They have not done so. Why not? A plaintiff in the Westenbroek plaintiffs' shoes might respond to that question with one of their own: why would we proceed in a forum that dismissed our claim already when instead we can wait and see whether the Southern District of Ohio will be more receptive? Again, the Court insinuates nothing; the point is that dispensing with the first-to-file rule in cases like this one would, objectively, incentivize forum-shopping.

(*Id.* at pp. 22–23.)

Ultimately, whether Plaintiffs here are strategically delaying the filing of a Second Amended Complaint or not is immaterial to the importance of finalizing the decision in this case for Kappa, all of its shareholders, and all defendants. This Court's thorough determination on the merits of the shareholder derivative claim is something Plaintiffs acknowledged they are unable to cure; but without preclusive effect for this Court's Order, other Kappa shareholders may bring

identical derivative claims to seek a different result. To the extent Kappa shareholders do not agree with this Court's reasoning, their recourse is to finalize this Court's decision and seek appellate review, not leave in place a dismissal without prejudice and present the same shareholder derivative claim to another federal court and seek a contrary decision.

### B. The Requested Relief Will Advance the Conclusion of Litigation on These Issues While Preserving Plaintiffs' Rights to Seek Appellate Review

The relief Defendants request by this Motion does not prejudice Plaintiffs. Plaintiffs represented multiple times to the Tenth Circuit that amendment would be futile because there is no way to draft a Second Amended Complaint that addresses the merits issues in the Court's Order. There is, therefore, no reason to have this case sitting in limbo while Plaintiffs wait to see if the Second Case yields a better result on their derivative claims. If Plaintiffs have somehow changed their assessment on futility, providing them an opportunity to amend their Amended Complaint before the dismissal is converted will ensure they are not prejudiced in any way.

Assuming Plaintiffs do not file a Second Amended Complaint, Plaintiffs will have the opportunity to appeal the Court's decision dismissing the case once that decision is converted to one with prejudice. Conversely, allowing the case to remain pending on a dismissal without prejudice will likely subject the Kappa defendants in the Second Case to litigate the same derivative claim against Kappa shareholders on the same legal issues already decided by this Court. Kappa and its shareholders benefit in advancing this litigation to conclusion and avoiding duplication on legal claims and issues that have already been determined by a federal district court.

### IV. CONCLUSION

Defendants respectfully request that the Court issue an order directing Plaintiffs to file a Second Amended Complaint within 21 days and further providing that if Plaintiffs do not do so by the deadline, the Court's August 25, 2023 Order will convert to a dismissal with prejudice.

Dated: February 28, 2025     Respectfully submitted,

/s/ *Natalie M. McLaughlin*
Natalie M. McLaughlin (Ohio Bar No. 0082203)*
Brian W. Dressel (Ohio Bar No. 0097163)*
VORYS, SATER, SEYMOUR AND PEASE, LLP
52 East Gay Street
Columbus, OH 43215
Telephone/Facsimile: (614) 464-5452
Email:  nmmclaughlin@vorys.com
   bwdressel@vorys.com
*\* -Admitted Pro Hac Vice*

Stuart R. Day (#6-3081)
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:  (307) 265-0700
Facsimile:  (307) 266-2306
E-Mail:  sday@wpdn.net

*Attorneys for Defendants Kappa Kappa Gamma Fraternity, Kappa Kappa Gamma Building Co., and Mary Pat Rooney*

**CERTIFICATE OF SERVICE**

  The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission and electronic mail this 28th day of February, 2025.

| | |
|---|---|
| Cassie Craven (#7-5664)<br>LONGHORN LAW LLC<br>109 East 17th Street, Suite 223<br>Cheyenne, WY 82001<br>Telephone: (307) 823-3062<br>E-Mail: ccraven.law@gmail.com | ☒ CM/ECF Electronic Transmission<br>☐ U.S. Mail (Postage Prepaid)<br>☐ Fax<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☐ Email |
| John G. Knepper (#7-4608)<br>LAW OFFICE OF JOHN G. KNEPPER, LLC<br>P.O. Box 1512<br>Cheyenne, WY 82003<br>Telephone: (307) 632-2842<br>E-Mail: john@knepperllc.com | ☒ CM/ECF Electronic Transmission<br>☐ U.S. Mail (Postage Prepaid)<br>☐ Fax<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☐ Email |

/s/ *Natalie M. McLaughlin*
Natalie M. McLaughlin