## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **PATSY LEVANG, CHERYL TUCK-SMITH, SUSAN JENNINGS, MARGO KNORR, KAREN POPE, and ANN WITT,** | : : : : | |
| *Plaintiffs*, | : : | **Case No. 2:24-cv-00316-MHW-KAJ** |
| v. | : : | **Judge Michael H. Watson** |
| **KAPPA KAPPA GAMMA FRATERNITY, et al.** | : : | **Magistrate Judge Kimberly A. Jolson** |
| *Defendants*. | : : : : : | |

---

### PLAINTIFFS' NOTICE OF FILING TRANSCRIPT

---

!

Please take Notice that the Plaintiffs are hereby filing the transcript of oral argument in Westenbroek v. Kappa Kappa Gamma Fraternity, 2024 WL 2954705 (10th Cir. 2024), held May 14, 2024.  The transcript is attached as Exhibit A to this Notice.

  Respectfully submitted,

*/s/ Angela M. Lavin*
Angela M. Lavin          (0069604)
Jay R. Carson          (0068526)
WEGMAN HESSLER VALORE
6055 Rockside Woods Blvd. N., Ste. 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile:  (216) 642-8826
E-mail:amlavin@wegmanlaw.com
         jrcarson@wegmanlaw.com

And

Sylvia May Mailman (0100520)
Independent Women's Law Center

1802 Vernon Street, NW, Suite 1027
Washington, DC 20009
Telephone: (202) 807-9986
Email: may.mailman@iwlc.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Notice was served on all counsel of record via the Court's electronic filing system this 2nd day of August, 2024.

*/s/Angela M. Lavin*
One of the attorneys for the Plaintiffs

Page 1

```
 1              UNITED STATES COURT OF APPEALS

 2                   FOR THE TENTH CIRCUIT

 3              ------------------------

 4                     No. 23-8065

 5              ------------------------

 6      JAYLYN WESTENBROEK; HANNAH HOLTMEIER; ALLISON

 7        COGHAN; GRACE CHOATE; MADELINE RAMAR; MEGAN

 8      KOSAR, on behalf of themselves and derivatively

 9       on behalf of KAPPA KAPPA GAMMA FRANTERNITY,

10                 Plaintiff-Appellants,

11                         v.

12      KAPPA KAPPA GAMMA FRATERNITY, an Ohio non-profit

13       corporation, as Nominal Defendant and as Direct

14       Defendant; MARY PAT ROONEY, President of the

15         Fraternity Council of KAPPA KAPPA GAMMA

16      FRATERNITY, in her official capacity; KAPPA KAPPA

17         GAMMA BUILDING CO., a Wyoming non-profit

18                      corporation,

19                 Defendants-Appellees,

20                         and

21                 ARTEMIS LANGFORD,

22                    Defendant.

23              ------------------------

24

25
```

Page 2

```
 1      WOMEN'S DECLARATION INTERNATIONAL USA; OVER 450

 2       KAPPA KAPPA GAMMA ALUMNAE; WOMEN'S LIBERATION

 3     FRONT; NATIONAL PANHELLENIC CONFERENCE; NATHENIEL

 4       R. JONES CENTER FOR RACE, GENDER, AND SOCIAL

 5       JUSTICE; THE NATIONAL CENTER FOR TRANSGENDER

 6        EQUALITY; THE WOMANS CITY CLUB OF GREATER

 7        CINCINNATI; JIM OBERGEFELL; AMERICAN CIVIL

 8          LIBERTIES UION OF OHIO FOUNDATION.

 9                      Amici Curiae.

10              ------------------------

11

12                      Oral Argument

13                      May 14, 2024

14

15

16

17

18

19

20

21    B E F O R E:

22    HON. MICHAEL R. MURPHY

23    HON. CAROLYN B. MCHUGH

24    HON. RICHARD E. N. FEDERICO

25    Circuit Judges
```

Page 3

1   A P P E A R A N C E S:

2

3   LAW OFFICE OF SYLVIA MAY MAILMAN

4        Attorneys for Plaintiff-Appellants

5        20550 Byron Road

6        Shaker Heights, OH 44122

7

8   BY:  SYLVIA MAY MAILMAN

9

10  VORYS SATER SEYMOUR AND PEASE LLP

11       Attorneys for Defendant-Appellees

12       52 East Gay Street

13       Columbus, OH 43215

14

15  BY:  NATALIE M. MCLAUGHLIN

16

17

18

19

20

21

22

23

24

25

Page 4

1              P R O C E E D I N G S

2              HON. CAROLYN MCHUGH:238065, Westenbroek

3    v. Kappa Kappa Gamma.  You can approach the

4    podium when you're ready.

5              MS. MAILMAN:  Good morning, Your

6    Honors, and may it please the Court.  May Mailman

7    on behalf of Appellants, and I hope to save three

8    minutes for rebuttal.  The issue in this appeal

9    is actually quite narrow.  This case is at a

10   motion to dismiss.

11             The question before the District Court

12   and this Court is not the interpretation of

13   woman.  The question is whether Plaintiffs

14   plausibly allege a breach of fiduciary duty.  And

15   we do.  The District Court reached the opposite

16   conclusion only by ignoring our well-pled facts

17   and by importing inapplicable legal principles.

18             The decision must be reversed.  I want

19   to start by addressing the relevant allegations

20   in our complaints.  The Plaintiffs allege that

21   the Directors of Kappa Kappa Gamma unilaterally

22   changed the nature of the organization by adding

23   a category of members.

24             Most importantly, the complaint alleges

25   that the Directors did this in bad faith.  They -

Page 5

1    - the complaint alleges that the Directors dodged

2    an honest conversation with the members by

3    burying language in areas unlikely to be policed

4    as a change to membership.  And when the women in

5    the Wyoming chapter faced harm from the change

6    being implemented, they again avoided a good

7    faith conversation and applied pressure to ensure

8    unquestioned acceptance.

9              HON. CAROLYN MCHUGH: Let me interrupt.

10   I have a preliminary question that goes to

11   whether we have jurisdiction to hear this case at

12   all.  Obviously, we have to have a final decision

13   from the District Court before we can exercise

14   subject matter jurisdiction.

15             Here the District Court dismissed but

16   gave very specific instructions on how you could

17   fix your complaint and re-file.  If we were to

18   look at the intent of the District Court in

19   determining whether or not the District Court

20   thought it was a final decision, it seems to me

21   it's not final.  How do you respond to that?

22             MS. MAILMAN:  Well, a dismissal is

23   considered final when it goes to the merits of

24   the Plaintiff's complaint rather than a

25   procedural issue that the Plaintiffs can be

Page 6

1   expected to fix.  And so, the footnote that the

2   District Court, I don't think indicates that his

3   decision had anything to do, not with the merits,

4   if this was a procedural issue, it was if you're

5   allowed to re-file, because they've already filed

6   their first amendment complaint.

7          But if you are allowed to, I hope that

8   you do a better job of writing it, basically.

9   Not that there's anything that the Plaintiffs can

10  fix.  So, what the Plaintiffs allege is that

11  there is a promise that's been broken.  The

12  District Court said there is no such promise, and

13  even if there was, I wouldn't be able to do

14  anything regardless.

15         That goes to the merits of the

16  complaint.  There would be no way to write the

17  complaint around that merits decision.  Also, I

18  think another practical consideration is, are

19  there pieces of this case that are living in the

20  District Court that might spring to life at any

21  moment?

22         Is this going to lead to piecemeal

23  appeals?  And no, there's nothing remaining at

24  the District Court --

25         HON. MICHAEL MURPHY:  Wait a minute.

Page 7

1   You did not appeal the contract or tort claim,

2   correct?

3           MS. MAILMAN:  Correct.

4           HON. MICHAEL MURPHY:  So, those are

5   remaining in the District Court, having been

6   dismissed without prejudice.  So, think of this

7   hypothetical.  You lose here on the derivative

8   claim and the direct claim.  You go back to the

9   District Court and say well, I still have my

10  contract and my tort claims, because they were

11  dismissed without prejudice.

12          So, I'm going to amend, as was

13  suggested by the District Court in its footnote.

14  That's piecemeal litigation.

15          MS. MAILMAN:  Well, there's no -- I

16  guess the District Court didn't say that this

17  could be amended.  In the contract, all of these

18  claims are wrapped up in the --

19          HON. MICHAEL MURPHY:  Wait.  It said

20  without prejudice.  And it talks about what you

21  can do when you -- if you choose to amend.

22          MS. MAILMAN:  But there's no way to fix

23  the merits.  So the contract claim --

24          HON. CAROLYN MCHUGH: And it didn't just

25  dismiss without prejudice, it denied a motion

Page 8

1    asking that it be dismissed with prejudice, which

2    --

3              MS. MAILMAN:  But only --

4              HON. CAROLYN MCHUGH: -- kind of is an

5    exclamation point.

6              MS. MAILMAN:  But I think that's

7    separate from what the Moya case said, is that

8    where there's a request to leave to amend and

9    that that's granted -- that that is something

10   that's not appealable.  But here, the only reason

11   the District Court said that they -- that he

12   wasn't going to grant this with prejudice is

13   because the Defendants didn't argue that

14   amendment would be futile.

15             So, he didn't even consider it.  He

16   didn't say that you could re-file.  He just said

17   there isn't futility been alleged here, so I'm

18   just not even going to consider it.  It was not a

19   basis for the decision.

20             HON. MICHAEL MURPHY:  But don't you

21   agree that if you lose on the derivative claim

22   and you lose on the direct claim, the -- you can

23   go back to District Court and amend.

24             MS. MAILMAN:  The -- I think the

25   problem is --

Page 9

1              HON. MICHAEL MURPHY:  Just -- can you

2     do that?

3              MS. MAILMAN:  Not around the merits

4     determination.

5              HON. MICHAEL MURPHY:  Can you amend the

6     tort and/or the contract claim?

7              MS. MAILMAN:  I don't think there'd be

8     a good faith basis to do so.

9              HON. MICHAEL MURPHY:  Can you do that?

10    Are you authorized to do that by the Order of the

11    District Court Judge?

12             MS. MAILMAN:  We could ask.  We could

13    certainly ask to re-file.  But it would -- the

14    problem here, and this goes to the practical

15    consideration of is it on the merits, is that all

16    of these contract claims, every single one of the

17    claims, boils down to whether there's been a

18    certain promise made in the bylaws, and whether

19    that promise was broken.

20             And so, if we lose here, then in a

21    sense, there'd be no way to get around that

22    determination.  There -- I couldn't figure out a

23    way --

24             HON. MICHAEL MURPHY:  What if you

25    decide to amend the claim on the contract

Page 10

1    regarding housing?

2             MS. MAILMAN:  Again, that contract goes

3    to the bylaws, and whether there was a promise in

4    the bylaws.  So, I guess -- we could try.  We

5    could ask.  But there would be a difficult merits

6    determination to overcome.

7             HON. RICHARD FEDERICO:  Counsel, can I

8    read your briefings to conclude that you are

9    abandoning the contract and tort claim for all

10   time, and also really have no note -- or no

11   intent to -- and in fact, may be disclaiming any

12   rights you have to amend counts one and four as

13   well?

14            MS. MAILMAN:  Right, so it's not raised

15   in our opening brief, and so we've forfeited that

16   claim.

17            HON. RICHARD FEDERICO:  What about

18   counts one and four though?  You have been

19   granted leave to amend those as well.  I

20   understand you'd argue to say there's nothing we

21   can do to amend those claims to potentially make

22   them viable, consistent with the District Court

23   orders.  Or are you disclaiming any rights you

24   may have to amendment?

25            MS. MAILMAN:  Well, we haven't been

Page 11

1    given a right to amend that.  We've been -- the

2    claim has been dismissed, admittedly without

3    prejudice.

4            HON. RICHARD FEDERICO:  Without

5    prejudice, and Footnote 67 at the District Court

6    order is pretty clear that if you want to amend,

7    here are the guidelines that the District Court

8    is offering to you.  A lifeline in how to do

9    this.

10           MS. MAILMAN:  Right, and so we could

11   write it better.  I agree.  We could follow that

12   footnote and write it better.  The problem is, we

13   couldn't write it to get around the determination

14   on the merit.

15           So, we could write it cleaner and

16   prettier and nicer.  Just not to fix the problem

17   that exists here.  And so, that's what I really

18   want to address, is what is that merits

19   determination that we really can't get around?

20   And here, the District Court, instead of

21   assessing the elements of a breach of fiduciary

22   duty claim, said that he was unable to review

23   that claim because of not -- inner --

24   noninterference principles.

25           But the problem is, there is no non-

Page 12

1    interference principle that forbids Courts from

2    looking into bad faith breaches of fiduciary

3    duty.  So, that really is the question.  Is are

4    we in bad faith land?  Or are we in good faith

5    disagreements about the bylaws?  And so, it's

6    only by transforming the complaint into this is a

7    good faith disagreement that you have that

8    deference principle.

9            But the complaint doesn't allege that.

10   The complaint alleges that there was a change, so

11   this is paragraph seven, paragraph 57, paragraph

12   58.  That say there was a change to the bylaws,

13   that this was an alteration of the membership

14   requirement, that they added a category of

15   members, and that they did this in bad faith.

16           So that when the women in Wyoming said

17   that they had some harm arising from this change,

18   instead of having a conversation about that, they

19   said we are going to make the vote not anonymous,

20   even though it needs to be.  That women are going

21   to be threatened with dismissal.

22           HON. CAROLYN MCHUGH: In looking at your

23   arguments below, I don't see any argument about

24   anonymity.  When you're talking about the voting

25   requirements, that's not there.

Page 13

1            MS. MAILMAN:  And the -- sorry, so

2    places in the complaint or --

3            HON. CAROLYN MCHUGH: I'm talking about

4    when you raised it in the District Court, and

5    when you raised it with Kappa Kappa Gamma.

6            MS. MAILMAN:  Okay.  So, I guess a

7    couple of pieces.  So one, to the futility/demand

8    argument, I think there's two things here.  So,

9    one you could see the request -- the various

10   requests to the Kappa Directors as a demand.  Or

11   whether that's futile.  So, we would say both.

12            One, that there was an actual demand

13   made, and in that demand letter and that's at 259

14   and 60 of volume one of the Appendix.  That we

15   specifically do raise that there were illegal

16   voting procedures here.

17            HON. CAROLYN MCHUGH: But you never say,

18   and they actually -- the attorneys for the

19   fraternity write back and say could you please

20   point us to the particular provisions or bylaws

21   or procedures that we've -- that you say that we

22   have violated, and you don't respond at all.

23            MS. MAILMAN:  And I think that that may

24   be what --

25            HON. CAROLYN MCHUGH: It's hard to show

Page 14

1    futility if they were at -- they were trying to

2    engage and you didn't respond.

3             MS. MAILMAN:  Well we -- I guess we

4    don't see a good faith engagement here.  Because

5    the illegal voting procedures had been raised

6    with them multiple times, and our allegations in

7    our complaint is that they are behind it.  And

8    so, that shows antagonistic nature, that shows

9    that their minds are closed to argument.

10            Because if they're the ones behind it,

11   if they are saying that we're going to now use a

12   Google poll rather than Omega Recruit, if they

13   are saying that some of the members need to go

14   through sort of re-training to be better Kappa

15   members, and at that -- if they're behind this,

16   then of course they're antagonistic.

17            And I think that that -- I mean, that's

18   what the District Court said.  Of course.

19            HON. CAROLYN MCHUGH: But you didn't

20   ever raise either when the District Court or with

21   Kappa Kappa Gamma, your allegations about alleged

22   election violations.  It's not in your letter,

23   it's not in the argument to the District Court,

24   it springs fully formed and new on appeal.

25            MS. MAILMAN:  But -- I guess I disagree

Page 15

1    with that in the sense that there was a specific

2    -- in the letter to the Kappa Directors, it says

3    that voting is supposed to be anonymous and that

4    voting here was not anonymous.

5              HON. CAROLYN MCHUGH: In your complaint?

6              MS. MAILMAN:  And in the complaint,

7    absolutely.  So, the lack of secret nature was at

8    paragraph 12, paragraph 106, and paragraph 134.

9              HON. CAROLYN MCHUGH: But it's too late

10   in your complaint if you didn't make an effort to

11   raise that complaint to show that you have a

12   right to bring a derivative complaint because

13   they -- it would have been futile or they were

14   not interested in responding.  You have to

15   actually bring it to their attention.

16             And in fact, the District Court never

17   even addressed the election violation theory,

18   because it didn't even know it was before it.

19             MS. MAILMAN:  Well, even assuming that

20   that is the case, there still is a derivative

21   claim remaining there about the violation of the

22   bylaws in bad faith.  So, even assuming that, we

23   still have a claim.

24             But, the District Court did

25   specifically mention the letter as the reason how

Page 16

1    we know that these Directors were antagonistic

2    and that letter leads with a complaint about the

3    illegal voting procedures.  And that the request

4    in the letter was for a valid vote in accordance

5    with the bylaws, and I hope to reserve.  Yup.  Go

6    ahead.

7            HON. MICHAEL MURPHY:  You allege claims

8    against only one Defendant -- what, two

9    Defendants that are not nominal.  Correct?  And

10   one is the real estate issue.

11           MS. MAILMAN:  Right.

12           HON. MICHAEL MURPHY:  Okay.  So, you

13   asked for injunctive relief, correct?

14           MS. MAILMAN:  Correct.

15           HON. MICHAEL MURPHY:  And how -- Rooney

16   cannot give you injunctive relief.  She's one

17   individual of, I think a council of eight, that

18   it takes a vote of six to do something.  So, she

19   has no authority.  So, how could -- if you get an

20   injunction against her, isn't it meaningless?

21           MS. MAILMAN:  Declaratory relief I

22   think would be meaningful in that circumstance.

23   And I think there's still monetary relief that

24   we're seeking for the organization, which has

25   lost --

Page 17

1              HON. MICHAEL MURPHY:  Against Rooney?

2              MS. MAILMAN:  Against Rooney.

3              HON. MICHAEL MURPHY:  Even though she

4     has no power to act alone.

5              MS. MAILMAN:  No, but through

6     declaratory relief that the Board cannot

7     unilaterally amend the bylaws, I think that the

8     declaratory relief would apply by its nature --

9              HON. MICHAEL MURPHY:  Okay, are you

10    saying then that you may be able to survive on

11    your direct claim, but not your derivative claim,

12    because that's on behalf of the Court -- of the

13    entity?

14             MS. MAILMAN:  I think a declaratory

15    judgement that Rooney may not take certain

16    actions, or that this is what the bylaws require

17    would, unless everyone else wants to go then and

18    violate it separately and then get claimed

19    against that.

20             HON. MICHAEL MURPHY:  But what good is

21    any relief?  Injunctive or declaratory if the

22    only non-nominal Defendant is a single individual

23    that is on a board of eight that requires six

24    votes to do anything?  What meaning does any

25    relief have?

Page 18

1          MS. MAILMAN:  So, the -- an injunctive

2    relief against one person would still lead to the

3    result that the Plaintiffs are seeking here.

4    Because we would hope that the rest of the Board

5    --

6          HON. MICHAEL MURPHY:  Well, we're not

7    talking about hopes and aspirations here.  That

8    means, according to your view, that the other

9    seven members of the council would be -- have no

10   meaning.  I mean, okay.  So, you can clam up

11   Rooney, but what about the other seven?

12          MS. MAILMAN:  They're still not free to

13   violate the bylaws and violate this Court's

14   order.

15          HON. MICHAEL MURPHY:  But that goes to

16   the merits.  I'm talking about whether or not you

17   can bring this suit against one nominal

18   Defendant.  Excuse me, one non-nominal Defendant.

19          MS. MAILMAN:  Well, at the very least,

20   the monetary relief would still be there, and

21   that's not just the direct claim, that's the

22   derivative claim.  The harm here is to the

23   organization.  The organization is the one that

24   has lost donations, that has lost its reputation,

25   and that has lost members.

Page 19

1          Members have dropped.  In fact, the
2     house in Wyoming was not at capacity, and is at
3     risk of closing because of that.  So, still and
4     ultimately, at the end of the day, the monetary
5     relief would be sufficient.
6          HON. CAROLYN MCHUGH: And you're out of
7     time.
8          MS. MCLAUGHLIN:  May it please the
9     Court.  My name is Natalie McLaughlin, and it is
10    my privilege to represent Kappa Kappa Gamma
11    Fraternity, the President of its Fraternity
12    Council, Mary Pat Rooney, and the Kappa Kappa
13    Gamma Building Co. in this matter.
14          The District Court correctly dismissed
15    this lawsuit, recognizing the right of an Ohio
16    voluntary organization to not have a Federal
17    Court interfere in its governance.  There are
18    three points Appellees seek to highlight for the
19    Court today.
20          One, Kappa's governing documents
21    explicitly grant Fraternity Council the duty to
22    interpret Kappa's bylaws.  Two, because Kappa is
23    a voluntary organization, Kappa is entitled to
24    judicial deference under Ohio law to interpret
25    its own bylaws, and three, there is a presumption

Page 20

1    under Ohio law that Kappa's Fraternity Council

2    acted in good faith in accordance with their

3    fiduciary obligations in interpreting Kappa's

4    bylaws.

5           HON. CAROLYN MCHUGH: Before you jump

6    into the merits, do we have jurisdiction to even

7    hear this case?  Is there a final judgement from

8    the District Court when some of the claims were

9    dismissed without prejudice?

10          MS. MCLAUGHLIN:  So, we had raised this

11   early with the District Courts disposition and

12   the requirement of jurisdiction, and we certainly

13   think this is a valid question for the Court to

14   consider.  And this is something that the Court

15   will have to consider before getting to the

16   merits.

17          HON. CAROLYN MCHUGH: And I'm asking you

18   to weigh in on that consideration.

19          MS. MCLAUGHLIN:  Yeah, so Appellants

20   have -- we question the Court's jurisdiction, and

21   that's why we raised it in a motion, and raised

22   it again in our brief.  Appellants have

23   represented to the Court that they believe no

24   amendment could cure any of their claims.

25          And we certainly do believe they have a

Page 21

1    better understanding of what they are seeking to

2    advance with regard to their derivative and their

3    direct claims, so the Court does have the

4    opportunity to consider whether it can take their

5    representations to consider those claims.

6            We do believe that there has been an

7    abandonment though, of their breach of contract

8    in their tortious interference claims and not

9    advancing those claims before the Court.  But

10   this Court will need to consider --

11           HON. CAROLYN MCHUGH: But, how could

12   they advance those claims before the Court when

13   they were dismissed without prejudice?

14           MS. MCLAUGHLIN:  We believe those

15   Courts had been abandoned by them, and not

16   advancing them any further.

17           HON. CAROLYN MCHUGH: You -- so, you

18   think they should have appealed the decision to

19   dismiss them without prejudice, even though they

20   would have had an opportunity to amend?

21           MS. MCLAUGHLIN:  Well, they're -- they

22   have represented to the Court that all of their

23   claims are completely contingent on the

24   determination by the District Court that the --

25   that the -- Kappa has the ability to determine

Page 22

1    its own bylaws and interpret their bylaws and

2    interpret the term women.

3            And though we have represented to -- we

4    have put forth for this Court early on in our

5    motion and have raised it again in our briefing,

6    that because of the Court's determination that

7    that decision was without prejudice, that there

8    is a jurisdictional question that this Court will

9    have to determine.

10           And whether we had raised it or not,

11   this Court would have to make that decision even

12   sua sponte if we had not raised it, and so that

13   is a decision for this Court to make.  And we

14   think that that is a fair question for this

15   Court.

16           Now, they have asked this Court to take

17   their representation that that is a question that

18   they have said is a question that they cannot do

19   anything to fix that claim, and we question that

20   representation.

21           HON. MICHAEL MURPHY:  So, I don't

22   understand your answer.

23           MS. MCLAUGHLIN:  Yeah, so we --

24           HON. MICHAEL MURPHY:  Is it your

25   position we do not have jurisdiction?

Page 23

1           MS. MCLAUGHLIN:  We do not believe they

2    have jurisdiction.

3           HON. MICHAEL MURPHY:  All right.

4           MS. MCLAUGHLIN:  But they have asked

5    this Court to take their representation at face

6    value and find jurisdiction, yes.

7           HON. CAROLYN MCHUGH: Okay.

8           MS. MCLAUGHLIN:  So, the term women is

9    undefined in Kappa's bylaws, and that term women

10   is not a term that has a singular definition.

11   But everyone in this --

12          HON. CAROLYN MCHUGH: Well, I mean I

13   think the argument comes down to you're -- the

14   fraternity has the right to interpret its own

15   bylaws and its policies.

16          MS. MCLAUGHLIN:  Correct.

17          HON. CAROLYN MCHUGH: But the argument

18   is, this isn't an interpretation, this is an

19   amendment.  And that woman has been expanded to

20   include people who, when the fraternity was

21   formed, would not have been considered women.

22   Can you respond to that argument?

23          MS. MCLAUGHLIN:  Certainly, certainly.

24   So, the membership qualifications in the bylaws

25   remain the same.  There has been no amendment to

Page 24

1    the bylaws.  Which is that a member remains --

2    must be a woman.  Now, that qualification

3    however, is undefined in the bylaws.

4            And Fraternity Council is explicitly

5    given the duty, not even just the right, the duty

6    in these standing rules to interpret terms in the

7    bylaws, and that is what occurred here.  Now, the

8    issue here is whether Fraternity Council has the

9    right to interpret the term women.

10           And it is not whether they have

11   announced that term in the best form, but whether

12   they have exercised the right to interpret that

13   term, and that is what occurred here.  And so,

14   the term women is undefined in the bylaws, and

15   that term women is not subject to a singular

16   definition.

17           And everyone in this large and diverse

18   organization of over 210,000 individuals does not

19   interpret that term women in the same way.  And

20   Kappa's Fraternity Council are the volunteers of

21   this organization who were elected to serve as

22   the Board and given that duty in the standing

23   rules to interpret the terms.

24           And what Appellants have asked the

25   Court to do is to elevate their interpretation

Page 25

1    above that of Fraternity Council, but what this

2    Court should do is defer to Fraternity Council's

3    interpretation, because that is what is required,

4    both by Kappa's governing documents and Ohio law.

5            HON. CAROLYN MCHUGH: What if the

6    interpretation of women was that it included cis-

7    gender men?  Would your same argument fly, that

8    it's simply an interpretation and they have

9    absolute right to interpret it in any way they

10   want?

11           MS. MCLAUGHLIN:  So, the principle

12   under Ohio law, and Ohio law on this under -- is

13   that judicial deference accorded to voluntary

14   organizations in their interpretation and

15   administration is a threshold issue that the

16   Court must consider.

17           And what Ohio law holds in turning to

18   the (indiscernible) case is that Courts must

19   defer, and without direction or interference by

20   the Courts, the right to adopt bylaws and

21   interpret them and administer them is as sacred

22   as the right to make them.

23           And the only time that a Court can step

24   in is if they have to show that the

25   interpretation is both unreasonable and

Page 26

1   arbitrary.  So, that particular interpretation is

2   not before the Court today, and that is something

3   that I do not have the research on or

4   interpretations on cisgender men.  But, what we

5   would have to look at is is that interpretation

6   unreasonable and arbitrary?

7           And here, what we have done for this

8   Court is put forward many resources and many

9   other sources, such as the National Panhellenic

10  Conference, Federal Courts, other women's

11  organizations, women's colleges, the Endocrine

12  Society Guidelines, and dictionaries to show this

13  Court, not to say that this is the correct

14  interpretation, but to enable this Court to look

15  at that and say, this interpretation is a

16  reasonable and non-arbitrary interpretation.

17          And judicial deference only requires

18  the Court to look at that and determine, is this

19  a reasonable and non-arbitrary interpretation,

20  and if so, then judicial deference is required

21  per Ohio law.

22          HON. RICHARD FEDERICO:  Counsel, how do

23  you respond to the Appellant's argument, and

24  again, you keep using the word interpretation,

25  and their argument is there's no interpretation

Page 27

1    here, it's legislation.  And even the bylaws

2    itself, when it says woman, period, when you're

3    adding language and those who identify as women

4    that you're creating a new category altogether.

5              MS. MCLAUGHLIN:  Sure.  So, the issue

6    here is whether council has the right to

7    interpret women.  Not, again, whether they have

8    announced that interpretation in the best form.

9    So, nine years ago council had shared that the

10   interpretation that membership was inclusive of

11   individuals identifying as women, and we have

12   certainly improved in nine years in how we might

13   define and talk about gender identity.

14             But we cannot expect a volunteer board

15   to communicate their interpretations as precisely

16   as a legislator drafts a statute.  Nor are they

17   held to a statutory interpretation analysis.  And

18   what Kappa's governing documents do is they give

19   counsel the right to interpret.

20             And in an artful announcement of an

21   interpretation by a volunteer board does not

22   warrant Court interference under Ohio law.  Only

23   an unreasonable and arbitrary interpretation

24   does.

25             HON. RICHARD FEDERICO:  But they're

Page 28

1    alleging bad faith here, and the idea, as I
2    understand it, is it's one thing for the board to
3    interpret the bylaws in a way that determines
4    eligibility criteria regarding things like GPA or
5    let's say you want to admit someone who has good
6    moral character.
7            Compared with, what is really the
8    foundational issue for why this organization has
9    existed for 150 years, that this is categorically
10   different.  Which I also understand they to say -
11   - them to say that's why the Court getting
12   involved in this one unique issue would not lead
13   to the "waive of suits" about whether or not this
14   person was admitted because their GPA was on the
15   cusp or some other eligibility criteria.  So,
16   isn't this fundamentally different?
17           MS. MCLAUGHLIN:  Well, that is
18   speculation on that part, but we do not view that
19   this issue is any different.  Council exercises
20   the authority -- there is no distinguishing
21   factor in the standing rules that council has the
22   ability to interpret certain terms and not other
23   terms.
24           Women is unquestionably not defined.
25   Women is also a term that unquestionably has

Page 29

1  multiple definitions, and that they seek to

2  distinguish this term versus other terms that

3  council also exercises the right to interpret.

4         Certainly there are other terms, and

5  you have called out some of them, that council

6  also exercises their authority to interpret so

7  that they seek to question the interpretation of

8  this term, which is one that they take issue

9  with.

10         Well again, Council has interpreted

11  other things, such as how do they interpret

12  regard for others and appreciation for the worth

13  of all individuals?  Well, Council has also set

14  forth in their position statements that they

15  interpret that to be -- they interpret that to

16  mean they require candidates to be responsible

17  citizens and contributing members of their

18  communities.

19         That this interpretation is something

20  that they take issue with does not give -- that

21  this is something they disagree with does not

22  divest Fraternity Council of both their right

23  under the standing rules and the right under Ohio

24  law to interpret that.

25         HON. RICHARD FEDERICO:  But we're also

Page 30

1    at the pleading stage, and they're alleging bad

2    faith.

3              MS. MCLAUGHLIN:  Mm hmm.

4              HON. RICHARD FEDERICO:  And wouldn't

5    that eviscerate any deference that the board

6    would be entitled?

7              MS. MCLAUGHLIN:  No.  So, it is

8    important to distinguish that under Ohio law,

9    because this is a voluntary organization, there

10   are two separate tasks that this Court needs to

11   be aware of.  The first is the judicial deference

12   test.

13             And that is something that is only

14   accorded to voluntary organizations.  It is not

15   something that is accorded to for-profit

16   corporations under Ohio law.  And judicial

17   deference is the test that we set forth under

18   Stibora and the other cases.

19             Under that judicial deference is

20   accorded to the interpretation of governing

21   documents.  And that is a threshold issue for

22   this Court to decide.  The breach of fiduciary

23   duty test is a second test, and that's for breach

24   of fiduciary duty claims that could apply both

25   for voluntary organizations and for-profit

Page 31

1    corporations.

2                Moving beyond judicial deference, that

3    is a separate test, and so if the Court were to

4    determine, even if you were to find that their

5    interpretation was unreasonable, you would still

6    consider whether a breach of fiduciary duty claim

7    is met.

8                And under that, they have to allege

9    facts to establish a plausible claim for breach

10   of fiduciary duty.  Now, the -- now, what must be

11   alleged again, is that there are facts to show

12   plausibly that there has been bad faith on the

13   part of Ms. Rooney.  And that is more than just

14   conclusory allegations.  Actual facts, and here

15   that has not been contended.

16               HON. CAROLYN MCHUGH: Well, isn't --

17   what they allege, as I understand it, is that Ms.

18   Rooney had an outcome that she wanted, and

19   manipulated the voting process so that she could

20   get that outcome.

21               I'm not saying that's what happened,

22   I'm saying that's what's alleged.  Isn't that

23   enough of an allegation to support, at this

24   stage, bad faith?

25               MS. MCLAUGHLIN:  Reviewing the

Page 32

```
 1   complaint, that is not what is actually alleged.

 2   And so, certainly that is what they're briefing

 3   now attempts to allege.  But again, the

 4   complaint, we have to look at what are the actual

 5   factual allegations as opposed to the conclusory

 6   allegations?

 7          And what -- looking at the factual

 8   allegations here, the factual allegations and

 9   taking, again, there's very little alleged

10   against Ms. Rooney.  But taking the allegations

11   against Fraternity Council to be what is alleged

12   against her, the actual allegations against

13   Fraternity Council, about when does Fraternity

14   Council come into play, those are the allegations

15   in paragraph 63, 93, 94, 141.

16          There are no allegations that

17   Fraternity Council became aware of anything going

18   on until actually after post-election, not in the

19   membership selection.  The complaints about

20   Fraternity Council is that after Ms. Langford had

21   been selected by the chapter, complaints were

22   made that the Fraternity Council was made aware

23   of this.

24          And what they failed to do was stop.

25   They did not stop the induction.  I see my time
```

Page 33

 1    is about to run short, may I finish this answer
 2    before --
 3              HON. CAROLYN MCHUGH: Yes, and we gave
 4    your opposition two extra minutes, so I'm fine
 5    with that.  But let me point you to paragraph
 6    163.  By not only allowing, but also by endorsing
 7    and actively working to secure the membership of
 8    Langford, the Directors of the sorority have
 9    violated their duties of loyalty, care, and
10    obedience compliant.
11              MS. MCLAUGHLIN:  And certainly, and
12    that is absolutely what we would -- we contend,
13    is certainly a conclusory allegation.  If you
14    review the actual factual allegations here, and
15    again, looking at allegations 63, 93, 94, and 141
16    of the complaint, which allege the actual,
17    specific facts of when did Fraternity Council
18    even become aware of what was going on in the
19    chapter of Wyoming.
20              What is specifically alleged regarding
21    Ms. Langford is that complaints were made after
22    she was elected, that this individual had been
23    selected by the chapter, and they were made aware
24    and what she -- and what they failed to do was
25    stop the induction of Ms. Langford.

Page 34

1              But, what they have also done is they
2      have put forth the standing rules and the bylaws.
3      And that allows the Court to rule -- to review
4      what the actual process is for induction of
5      members by Fraternity Council.  And that is
6      basically an automatic process.
7              The induction process is something that
8      is required.  The language that is for Fraternity
9      Council is shall.  And so, they shall induct
10     anybody who meets those requirements.  It is not
11     a discretionary process.
12             HON. CAROLYN MCHUGH: And you are now
13     over.
14             MS. MCLAUGHLIN:  Thank you.
15             HON. MICHAEL MURPHY:  Can I --
16             HON. CAROLYN MCHUGH: I'm sorry.
17             HON. MICHAEL MURPHY:  I have a
18     question.  You invoked the concept of the
19     fiduciary shield law of Wyoming as interpreted by
20     this Court in Ten Mile Industrial Park, correct?
21             MS. MCLAUGHLIN:  Correct.
22             HON. MICHAEL MURPHY:  And if that's
23     correct, that Ms. Rooney is shielded as a
24     fiduciary under Wyoming law, there's nothing left
25     but nominal Defendants, correct?

Page 35

1              MS. MCLAUGHLIN:  That is correct.

2              HON. MICHAEL MURPHY:  And is that a

3    basis alone to -- well, affirm the dismissal

4    without prejudice?

5              MS. MCLAUGHLIN:  That could be, yes.

6              HON. MICHAEL MURPHY:  Thank you.

7              HON. CAROLYN MCHUGH: Thank you.  Do you

8    have anything further?

9              HON. MICHAEL MURPHY:  Thank you.

10             HON. CAROLYN MCHUGH: Thank you.  We

11   will take this matter under advisement.  We

12   appreciate your argument today, and the briefing.

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 36

1                C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7

8

9    <%12151,Signature%>

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date:   June 17, 2024

17

18

19

20

21

22

23

24

25

**[106 - amici]**                                                      Page 1

| 1 |
|---|
| **106**   15:8 |
| **11501**   36:14 |
| **12**   15:8 |
| **12151**   36:9 |
| **134**   15:8 |
| **14**   2:13 |
| **141**   32:15 |
| 33:15 |
| **150**   28:9 |
| **163**   33:6 |
| **17**   36:16 |

| 2 |
|---|
| **2024**   2:13 |
| 36:16 |
| **20550**   3:5 |
| **210,000**   24:18 |
| **23-8065**   1:4 |
| **238065**   4:2 |
| **259**   13:13 |

| 3 |
|---|
| **300**   36:13 |
| **330**   36:12 |

| 4 |
|---|
| **43215**   3:13 |
| **44122**   3:6 |
| **450**   2:1 |

| 5 |
|---|
| **52**   3:12 |
| **57**   12:11 |
| **58**   12:12 |

| 6 |
|---|
| **60**   13:14 |
| **63**   32:15 33:15 |
| **67**   11:5 |

| 9 |
|---|
| **93**   32:15 33:15 |
| **94**   32:15 33:15 |

| a |
|---|
| **abandoned** 21:15 |
| **abandoning** 10:9 |
| **abandonment** 21:7 |
| **ability**   21:25 28:22 |
| **able**   6:13 17:10 |
| **above**   25:1 |
| **absolute**   25:9 |
| **absolutely**   15:7 33:12 |
| **acceptance**   5:8 |
| **accordance** 16:4 20:2 |
| **accorded**   25:13 30:14,15,20 |
| **accurate**   36:4 |
| **act**   17:4 |
| **acted**   20:2 |
| **actions**   17:16 |
| **actively**   33:7 |
| **actual**   13:12 31:14 32:4,12 33:14,16 34:4 |

**actually**   4:9 13:18 15:15 32:1,18
**added**   12:14
**adding**   4:22 27:3
**address**   11:18
**addressed** 15:17
**addressing** 4:19
**administer** 25:21
**administration** 25:15
**admit**   28:5
**admitted**   28:14
**admittedly** 11:2
**adopt**   25:20
**advance**   21:2 21:12
**advancing**   21:9 21:16
**advisement** 35:11
**affirm**   35:3
**ago**   27:9
**agree**   8:21 11:11
**ahead**   16:6
**allegation** 31:23 33:13
**allegations** 4:19 14:6,21

31:14 32:5,6,8 32:8,10,12,14 32:16 33:14,15
**allege**   4:14,20 6:10 12:9 16:7 31:8,17 32:3 33:16
**alleged**   8:17 14:21 31:11,22 32:1,9,11 33:20
**alleges**   4:24 5:1 12:10
**alleging**   28:1 30:1
**allison**   1:6
**allowed**   6:5,7
**allowing**   33:6
**allows**   34:3
**alteration** 12:13
**altogether**   27:4
**alumnae**   2:2
**amend**   7:12,21 8:8,23 9:5,25 10:12,19,21 11:1,6 17:7 21:20
**amended**   7:17
**amendment**   6:6 8:14 10:24 20:24 23:19,25
**american**   2:7
**amici**   2:9

**[analysis - capacity]**                                           Page 2

**analysis**  27:17
**announced**
  24:11 27:8
**announcement**
  27:20
**anonymity**
  12:24
**anonymous**
  12:19 15:3,4
**answer**  22:22
  33:1
**antagonistic**
  14:8,16 16:1
**anybody**  34:10
**appeal**  4:8 7:1
  14:24
**appealable**
  8:10
**appealed**  21:18
**appeals**  1:1
  6:23
**appellant's**
  26:23
**appellants**  1:10
  3:4 4:7 20:19
  20:22 24:24
**appellees**  1:19
  3:11 19:18
**appendix**  13:14
**applied**  5:7
**apply**  17:8
  30:24
**appreciate**
  35:12

**appreciation**
  29:12
**approach**  4:3
**arbitrary**  26:1
  26:6,16,19
  27:23
**areas**  5:3
**argue**  8:13
  10:20
**argument**  2:12
  12:23 13:8
  14:9,23 23:13
  23:17,22 25:7
  26:23,25 35:12
**arguments**
  12:23
**arising**  12:17
**artemis**  1:21
**artful**  27:20
**asked**  16:13
  22:16 23:4
  24:24
**asking**  8:1
  20:17
**aspirations**
  18:7
**assessing**  11:21
**assuming**  15:19
  15:22
**attempts**  32:3
**attention**  15:15
**attorneys**  3:4
  3:11 13:18
**authority**  16:19
  28:20 29:6

**authorized**
  9:10
**automatic**  34:6
**avoided**  5:6
**aware**  30:11
  32:17,22 33:18
  33:23

### b

**b**  2:21,23
**back**  7:8 8:23
  13:19
**bad**  4:25 12:2,4
  12:15 15:22
  28:1 30:1
  31:12,24
**basically**  6:8
  34:6
**basis**  8:19 9:8
  35:3
**behalf**  1:8,9 4:7
  17:12
**believe**  20:23
  20:25 21:6,14
  23:1
**best**  24:11 27:8
**better**  6:8
  11:11,12 14:14
  21:1
**beyond**  31:2
**board**  17:6,23
  18:4 24:22
  27:14,21 28:2
  30:5
**boils**  9:17

**breach**  4:14
  11:21 21:7
  30:22,23 31:6
  31:9
**breaches**  12:2
**brief**  10:15
  20:22
**briefing**  22:5
  32:2 35:12
**briefings**  10:8
**bring**  15:12,15
  18:17
**broken**  6:11
  9:19
**building**  1:17
  19:13
**burying**  5:3
**bylaws**  9:18
  10:3,4 12:5,12
  13:20 15:22
  16:5 17:7,16
  18:13 19:22,25
  20:4 22:1,1
  23:9,15,24
  24:1,3,7,14
  25:20 27:1
  28:3 34:2
**byron**  3:5

### c

**c**  3:1 4:1 36:1,1
**called**  29:5
**candidates**
  29:16
**capacity**  1:16
  19:2

**[care - council]** Page 3

care  33:9
carolyn  2:23
　4:2 5:9 7:24
　8:4 12:22 13:3
　13:17,25 14:19
　15:5,9 19:6
　20:5,17 21:11
　21:17 23:7,12
　23:17 25:5
　31:16 33:3
　34:12,16 35:7
　35:10
case  4:9 5:11
　6:19 8:7 15:20
　20:7 25:18
cases  30:18
categorically
　28:9
category  4:23
　12:14 27:4
center  2:4,5
certain  9:18
　17:15 28:22
certainly  9:13
　20:12,25 23:23
　23:23 27:12
　29:4 32:2
　33:11,13
certify  36:3
change  5:4,5
　12:10,12,17
changed  4:22
chapter  5:5
　32:21 33:19,23

character  28:6
choate  1:7
choose  7:21
cincinnati  2:7
circuit  1:2 2:25
circumstance
　16:22
cis  25:6
cisgender  26:4
citizens  29:17
city  2:6
civil  2:7
claim  7:1,8,8
　7:23 8:21,22
　9:6,25 10:9,16
　11:2,22,23
　15:21,23 17:11
　17:11 18:21,22
　22:19 31:6,9
claimed  17:18
claims  7:10,18
　9:16,17 10:21
　16:7 20:8,24
　21:3,5,8,9,12
　21:23 30:24
clam  18:10
cleaner  11:15
clear  11:6
closed  14:9
closing  19:3
club  2:6
coghan  1:7
colleges  26:11
columbus  3:13

come  32:14
comes  23:13
communicate
　27:15
communities
　29:18
compared  28:7
complaint  4:24
　5:1,17,24 6:6
　6:16,17 12:6,9
　12:10 13:2
　14:7 15:5,6,10
　15:11,12 16:2
　32:1,4 33:16
complaints
　4:20 32:19,21
　33:21
completely
　21:23
compliant
　33:10
concept  34:18
conclude  10:8
conclusion  4:16
conclusory
　31:14 32:5
　33:13
conference  2:3
　26:10
consider  8:15
　8:18 20:14,15
　21:4,5,10
　25:16 31:6
consideration
　6:18 9:15

20:18
considered
　5:23 23:21
consistent
　10:22
contend  33:12
contended
　31:15
contingent
　21:23
contract  7:1,10
　7:17,23 9:6,16
　9:25 10:2,9
　21:7
contributing
　29:17
conversation
　5:2,7 12:18
corporation
　1:13,18
corporations
　30:16 31:1
correct  7:2,3
　16:9,13,14
　23:16 26:13
　34:20,21,23,25
　35:1
correctly  19:14
council  1:15
　16:17 18:9
　19:12,21 20:1
　24:4,8,20 25:1
　27:6,9 28:19
　28:21 29:3,5
　29:10,13,22

[council - district]                                                    Page 4

32:11,13,14,17
32:20,22 33:17
34:5,9
**council's** 25:2
**counsel** 10:7
26:22 27:19
**country** 36:12
**counts** 10:12
10:18
**couple** 13:7
**course** 14:16,18
**court** 1:1 4:6
4:11,12,15
5:13,15,18,19
6:2,12,20,24
7:5,9,13,16
8:11,23 9:11
10:22 11:5,7
11:20 13:4
14:18,20,23
15:16,24 17:12
19:9,14,17,19
20:8,13,14,23
21:3,9,10,12,22
21:24 22:4,8
22:11,13,15,16
23:5 24:25
25:2,16,23
26:2,8,13,14,18
27:22 28:11
30:10,22 31:3
34:3,20
**court's** 18:13
20:20 22:6

**courts** 12:1
20:11 21:15
25:18,20 26:10
**creating** 27:4
**criteria** 28:4,15
**cure** 20:24
**curiae** 2:9
**cusp** 28:15

**d**

**d** 4:1
**date** 36:16
**day** 19:4
**decide** 9:25
30:22
**decision** 4:18
5:12,20 6:3,17
8:19 21:18
22:7,11,13
**declaration** 2:1
**declaratory**
16:21 17:6,8
17:14,21
**defendant** 1:13
1:14,22 3:11
16:8 17:22
18:18,18
**defendants**
1:19 8:13 16:9
34:25
**defer** 25:2,19
**deference** 12:8
19:24 25:13
26:17,20 30:5
30:11,17,19
31:2

**define** 27:13
**defined** 28:24
**definition**
23:10 24:16
**definitions** 29:1
**demand** 13:7
13:10,12,13
**denied** 7:25
**derivative** 7:7
8:21 15:12,20
17:11 18:22
21:2
**derivatively**
1:8
**determination**
9:4,22 10:6
11:13,19 21:24
22:6
**determine**
21:25 22:9
26:18 31:4
**determines**
28:3
**determining**
5:19
**dictionaries**
26:12
**different** 28:10
28:16,19
**difficult** 10:5
**direct** 1:13 7:8
8:22 17:11
18:21 21:3
**direction** 25:19

**directors** 4:21
4:25 5:1 13:10
15:2 16:1 33:8
**disagree** 14:25
29:21
**disagreement**
12:7
**disagreements**
12:5
**disclaiming**
10:11,23
**discretionary**
34:11
**dismiss** 4:10
7:25 21:19
**dismissal** 5:22
12:21 35:3
**dismissed** 5:15
7:6,11 8:1 11:2
19:14 20:9
21:13
**disposition**
20:11
**distinguish**
29:2 30:8
**distinguishing**
28:20
**district** 4:11,15
5:13,15,18,19
6:2,12,20,24
7:5,9,13,16
8:11,23 9:11
10:22 11:5,7
11:20 13:4
14:18,20,23

**[district - fraternity]**                    Page 5

15:16,24 19:14
20:8,11 21:24
**diverse** 24:17
**divest** 29:22
**documents**
19:20 25:4
27:18 30:21
**dodged** 5:1
**donations**
18:24
**drafts** 27:16
**dropped** 19:1
**duties** 33:9
**duty** 4:14 11:22
12:3 19:21
24:5,5,22
30:23,24 31:6
31:10

**e**

**e** 2:21,21,24 3:1
3:1 4:1,1 36:1
**early** 20:11
22:4
**east** 3:12
**effort** 15:10
**eight** 16:17
17:23
**either** 14:20
**elected** 24:21
33:22
**election** 14:22
15:17 32:18
**elements** 11:21
**elevate** 24:25

**eligibility** 28:4
28:15
**enable** 26:14
**endocrine**
26:11
**endorsing** 33:6
**engage** 14:2
**engagement**
14:4
**ensure** 5:7
**entitled** 19:23
30:6
**entity** 17:13
**equality** 2:6
**establish** 31:9
**estate** 16:10
**eviscerate** 30:5
**exclamation**
8:5
**excuse** 18:18
**exercise** 5:13
**exercised** 24:12
**exercises** 28:19
29:3,6
**existed** 28:9
**exists** 11:17
**expanded**
23:19
**expect** 27:14
**expected** 6:1
**explicitly** 19:21
24:4
**extra** 33:4

**f**

**f** 2:21 36:1
**face** 23:5
**faced** 5:5
**fact** 10:11
15:16 19:1
**factor** 28:21
**facts** 4:16 31:9
31:11,14 33:17
**factual** 32:5,7,8
33:14
**failed** 32:24
33:24
**fair** 22:14
**faith** 4:25 5:7
9:8 12:2,4,4,7
12:15 14:4
15:22 20:2
28:1 30:2
31:12,24
**federal** 19:16
26:10
**federico** 2:24
10:7,17 11:4
26:22 27:25
29:25 30:4
**fiduciary** 4:14
11:21 12:2
20:3 30:22,24
31:6,10 34:19
34:24
**figure** 9:22
**file** 5:17 6:5
8:16 9:13

**filed** 6:5
**final** 5:12,20,21
5:23 20:7
**find** 23:6 31:4
**fine** 33:4
**finish** 33:1
**first** 6:6 30:11
**fix** 5:17 6:1,10
7:22 11:16
22:19
**fly** 25:7
**follow** 11:11
**footnote** 6:1
7:13 11:5,12
**forbids** 12:1
**foregoing** 36:4
**forfeited** 10:15
**form** 24:11
27:8
**formed** 14:24
23:21
**forth** 22:4
29:14 30:17
34:2
**forward** 26:8
**foundation** 2:8
**foundational**
28:8
**four** 10:12,18
**franternity** 1:9
**fraternity** 1:12
1:15,16 13:19
19:11,11,21
20:1 23:14,20
24:4,8,20 25:1

[fraternity - induct]                                                    Page 6

25:2 29:22
32:11,13,13,17
32:20,22 33:17
34:5,8
**free** 18:12
**front** 2:3
**fully** 14:24
**fundamentally**
28:16
**further** 21:16
35:8
**futile** 8:14
13:11 15:13
**futility** 8:17
13:7 14:1

**g**

**g** 4:1
**gamma** 1:9,12
1:15,17 2:2 4:3
4:21 13:5
14:21 19:10,13
**gay** 3:12
**gender** 2:4 25:7
27:13
**getting** 20:15
28:11
**give** 16:16
27:18 29:20
**given** 11:1 24:5
24:22
**go** 7:8 8:23
14:13 16:5
17:17
**goes** 5:10,23
6:15 9:14 10:2

18:15
**going** 6:22 7:12
8:12,18 12:19
12:20 14:11
32:17 33:18
**good** 4:5 5:6
9:8 12:4,7 14:4
17:20 20:2
28:5
**google** 14:12
**governance**
19:17
**governing**
19:20 25:4
27:18 30:20
**gpa** 28:4,14
**grace** 1:7
**grant** 8:12
19:21
**granted** 8:9
10:19
**greater** 2:6
**guess** 7:16 10:4
13:6 14:3,25
**guidelines** 11:7
26:12

**h**

**hannah** 1:6
**happened**
31:21
**hard** 13:25
**harm** 5:5 12:17
18:22
**hear** 5:11 20:7

**heights** 3:6
**held** 27:17
**highlight** 19:18
**hmm** 30:3
**holds** 25:17
**holtmeier** 1:6
**hon** 2:22,23,24
4:2 5:9 6:25
7:4,19,24 8:4
8:20 9:1,5,9,24
10:7,17 11:4
12:22 13:3,17
13:25 14:19
15:5,9 16:7,12
16:15 17:1,3,9
17:20 18:6,15
19:6 20:5,17
21:11,17 22:21
22:24 23:3,7
23:12,17 25:5
26:22 27:25
29:25 30:4
31:16 33:3
34:12,15,16,17
34:22 35:2,6,7
35:9,10
**honest** 5:2
**honors** 4:6
**hope** 4:7 6:7
16:5 18:4
**hopes** 18:7
**house** 19:2
**housing** 10:1
**hyde** 36:3

**hypothetical**
7:7

**i**

**idea** 28:1
**identify** 27:3
**identifying**
27:11
**identity** 27:13
**ignoring** 4:16
**illegal** 13:15
14:5 16:3
**implemented**
5:6
**important** 30:8
**importantly**
4:24
**importing** 4:17
**improved**
27:12
**inapplicable**
4:17
**include** 23:20
**included** 25:6
**inclusive** 27:10
**indicates** 6:2
**indiscernible**
25:18
**individual**
16:17 17:22
33:22
**individuals**
24:18 27:11
29:13
**induct** 34:9

[induction - looking]                                                                    Page 7

**induction**
    32:25 33:25
    34:4,7
**industrial**
    34:20
**injunction**
    16:20
**injunctive**
    16:13,16 17:21
    18:1
**inner**  11:23
**instructions**
    5:16
**intent**  5:18
    10:11
**interested**
    15:14
**interfere**  19:17
**interference**
    12:1 21:8
    25:19 27:22
**international**
    2:1
**interpret**  19:22
    19:24 22:1,2
    23:14 24:6,9
    24:12,19,23
    25:9,21 27:7
    27:19 28:3,22
    29:3,6,11,15,15
    29:24
**interpretation**
    4:12 23:18
    24:25 25:3,6,8
    25:14,25 26:1

    26:5,14,15,16
    26:19,24,25
    27:8,10,17,21
    27:23 29:7,19
    30:20 31:5
**interpretations**
    26:4 27:15
**interpreted**
    29:10 34:19
**interpreting**
    20:3
**interrupt**  5:9
**invoked**  34:18
**involved**  28:12
**issue**  4:8 5:25
    6:4 16:10 24:8
    25:15 27:5
    28:8,12,19
    29:8,20 30:21

**j**

**jaylyn**  1:6
**jim**  2:7
**job**  6:8
**jones**  2:4
**judge**  9:11
**judgement**
    17:15 20:7
**judges**  2:25
**judicial**  19:24
    25:13 26:17,20
    30:11,16,19
    31:2
**jump**  20:5
**june**  36:16

**jurisdiction**
    5:11,14 20:6
    20:12,20 22:25
    23:2,6
**jurisdictional**
    22:8
**justice**  2:5

**k**

**kappa**  1:9,9,12
    1:12,15,15,16
    1:16 2:2,2 4:3
    4:3,21,21 13:5
    13:5,10 14:14
    14:21,21 15:2
    19:10,10,12,12
    19:22,23 21:25
**kappa's**  19:20
    19:22 20:1,3
    23:9 24:20
    25:4 27:18
**keep**  26:24
**kind**  8:4
**know**  15:18
    16:1
**kosar**  1:8

**l**

**lack**  15:7
**land**  12:4
**langford**  1:21
    32:20 33:8,21
    33:25
**language**  5:3
    27:3 34:8

**large**  24:17
**late**  15:9
**law**  3:3 19:24
    20:1 25:4,12
    25:12,17 26:21
    27:22 29:24
    30:8,16 34:19
    34:24
**lawsuit**  19:15
**lead**  6:22 18:2
    28:12
**leads**  16:2
**leave**  8:8 10:19
**ledanski**  36:3
**left**  34:24
**legal**  4:17
    36:11
**legislation**  27:1
**legislator**  27:16
**letter**  13:13
    14:22 15:2,25
    16:2,4
**liberation**  2:2
**liberties**  2:8
**life**  6:20
**lifeline**  11:8
**litigation**  7:14
**little**  32:9
**living**  6:19
**llp**  3:10
**look**  5:18 26:5
    26:14,18 32:4
**looking**  12:2,22
    32:7 33:15

**[lose - never]**                                            Page 8

**lose**  7:7 8:21,22
   9:20
**lost**  16:25
   18:24,24,25
**loyalty**  33:9

|           **m**           |

**m**  3:15
**made**  9:18
   13:13 32:22,22
   33:21,23
**madeline**  1:7
**mailman**  3:3,8
   4:5,6 5:22 7:3
   7:15,22 8:3,6
   8:24 9:3,7,12
   10:2,14,25
   11:10 13:1,6
   13:23 14:3,25
   15:6,19 16:11
   16:14,21 17:2
   17:5,14 18:1
   18:12,19
**make**  10:21
   12:19 15:10
   22:11,13 25:22
**manipulated**
   31:19
**mary**  1:14
   19:12
**matter**  5:14
   19:13 35:11
**mchugh**  2:23
   4:2 5:9 7:24
   8:4 12:22 13:3
   13:17,25 14:19

15:5,9 19:6
20:5,17 21:11
21:17 23:7,12
23:17 25:5
31:16 33:3
34:12,16 35:7
35:10
**mclaughlin**
   3:15 19:8,9
   20:10,19 21:14
   21:21 22:23
   23:1,4,8,16,23
   25:11 27:5
   28:17 30:3,7
   31:25 33:11
   34:14,21 35:1
   35:5
**mean**  14:17
   18:10 23:12
   29:16
**meaning**  17:24
   18:10
**meaningful**
   16:22
**meaningless**
   16:20
**means**  18:8
**meets**  34:10
**megan**  1:7
**member**  24:1
**members**  4:23
   5:2 12:15
   14:13,15 18:9
   18:25 19:1
   29:17 34:5

**membership**
   5:4 12:13
   23:24 27:10
   32:19 33:7
**men**  25:7 26:4
**mention**  15:25
**merit**  11:14
**merits**  5:23 6:3
   6:15,17 7:23
   9:3,15 10:5
   11:18 18:16
   20:6,16
**met**  31:7
**michael**  2:22
   6:25 7:4,19
   8:20 9:1,5,9,24
   16:7,12,15
   17:1,3,9,20
   18:6,15 22:21
   22:24 23:3
   34:15,17,22
   35:2,6,9
**mile**  34:20
**minds**  14:9
**mineola**  36:14
**minute**  6:25
**minutes**  4:8
   33:4
**mm**  30:3
**moment**  6:21
**monetary**
   16:23 18:20
   19:4
**moral**  28:6

**morning**  4:5
**motion**  4:10
   7:25 20:21
   22:5
**moving**  31:2
**moya**  8:7
**multiple**  14:6
   29:1
**murphy**  2:22
   6:25 7:4,19
   8:20 9:1,5,9,24
   16:7,12,15
   17:1,3,9,20
   18:6,15 22:21
   22:24 23:3
   34:15,17,22
   35:2,6,9

|           **n**           |

**n**  2:24 3:1 4:1
   36:1
**name**  19:9
**narrow**  4:9
**natalie**  3:15
   19:9
**natheniel**  2:3
**national**  2:3,5
   26:9
**nature**  4:22
   14:8 15:7 17:8
**need**  14:13
   21:10
**needs**  12:20
   30:10
**never**  13:17
   15:16

[new - problem]                                                    Page 9

**new**   14:24 27:4
**nicer**   11:16
**nine**   27:9,12
**nominal**   1:13
    16:9 17:22
    18:17,18 34:25
**non**   1:12,17
    11:25 17:22
    18:18 26:16,19
**noninterferen...**
    11:24
**note**   10:10
**ny**   36:14

**o**

**o**   2:21 4:1 36:1
**obedience**
    33:10
**obergefell**   2:7
**obligations**
    20:3
**obviously**   5:12
**occurred**   24:7
    24:13
**offering**   11:8
**office**   3:3
**official**   1:16
**oh**   3:6,13
**ohio**   1:12 2:8
    19:15,24 20:1
    25:4,12,12,17
    26:21 27:22
    29:23 30:8,16
**okay**   13:6
    16:12 17:9
    18:10 23:7

**old**   36:12
**omega**   14:12
**ones**   14:10
**opening**   10:15
**opportunity**
    21:4,20
**opposed**   32:5
**opposite**   4:15
**opposition**   33:4
**oral**   2:12
**order**   9:10 11:6
    18:14
**orders**   10:23
**organization**
    4:22 16:24
    18:23,23 19:16
    19:23 24:18,21
    28:8 30:9
**organizations**
    25:14 26:11
    30:14,25
**outcome**   31:18
    31:20
**overcome**   10:6
**own**   19:25 22:1
    23:14

**p**

**p**   3:1,1 4:1
**panhellenic**   2:3
    26:9
**paragraph**
    12:11,11,11
    15:8,8,8 32:15
    33:5

**park**   34:20
**part**   28:18
    31:13
**particular**
    13:20 26:1
**pat**   1:14 19:12
**pease**   3:10
**people**   23:20
**period**   27:2
**person**   18:2
    28:14
**piecemeal**   6:22
    7:14
**pieces**   6:19
    13:7
**places**   13:2
**plaintiff**   1:10
    3:4
**plaintiff's**   5:24
**plaintiffs**   4:13
    4:20 5:25 6:9
    6:10 18:3
**plausible**   31:9
**plausibly**   4:14
    31:12
**play**   32:14
**pleading**   30:1
**please**   4:6
    13:19 19:8
**pled**   4:16
**podium**   4:4
**point**   8:5 13:20
    33:5
**points**   19:18

**policed**   5:3
**policies**   23:15
**poll**   14:12
**position**   22:25
    29:14
**post**   32:18
**potentially**
    10:21
**power**   17:4
**practical**   6:18
    9:14
**precisely**   27:15
**prejudice**   7:6
    7:11,20,25 8:1
    8:12 11:3,5
    20:9 21:13,19
    22:7 35:4
**preliminary**
    5:10
**president**   1:14
    19:11
**pressure**   5:7
**presumption**
    19:25
**prettier**   11:16
**pretty**   11:6
**principle**   12:1
    12:8 25:11
**principles**   4:17
    11:24
**privilege**   19:10
**problem**   8:25
    9:14 11:12,16
    11:25

**[procedural - rules]**                                                    Page 10

| | | | |
|---|---|---|---|
| **procedural** | **raise**  13:15 | **remain**  23:25 | **responding** |
| 5:25 6:4 | 14:20 15:11 | **remaining**  6:23 | 15:14 |
| **procedures** | **raised**  10:14 | 7:5 15:21 | **responsible** |
| 13:16,21 14:5 | 13:4,5 14:5 | **remains**  24:1 | 29:16 |
| 16:3 | 20:10,21,21 | **represent** | **rest**  18:4 |
| **proceedings** | 22:5,10,12 | 19:10 | **result**  18:3 |
| 36:5 | **ramar**  1:7 | **representation** | **reversed**  4:18 |
| **process**  31:19 | **rather**  5:24 | 22:17,20 23:5 | **review**  11:22 |
| 34:4,6,7,11 | 14:12 | **representations** | 33:14 34:3 |
| **profit**  1:12,17 | **reached**  4:15 | 21:5 | **reviewing** |
| 30:15,25 | **read**  10:8 | **represented** | 31:25 |
| **promise**  6:11 | **ready**  4:4 | 20:23 21:22 | **richard**  2:24 |
| 6:12 9:18,19 | **real**  16:10 | 22:3 | 10:7,17 11:4 |
| 10:3 | **really**  10:10 | **reputation** | 26:22 27:25 |
| **provisions** | 11:17,19 12:3 | 18:24 | 29:25 30:4 |
| 13:20 | 28:7 | **request**  8:8 | **right**  10:14 |
| **put**  22:4 26:8 | **reason**  8:10 | 13:9 16:3 | 11:1,10 15:12 |
| 34:2 | 15:25 | **requests**  13:10 | 16:11 19:15 |
| | **reasonable** | **require**  17:16 | 23:3,14 24:5,9 |
| **q** | 26:16,19 | 29:16 | 24:12 25:9,20 |
| **qualification** | **rebuttal**  4:8 | **required**  25:3 | 25:22 27:6,19 |
| 24:2 | **recognizing** | 26:20 34:8 | 29:3,22,23 |
| **qualifications** | 19:15 | **requirement** | **rights**  10:12,23 |
| 23:24 | **record**  36:5 | 12:14 20:12 | **risk**  19:3 |
| **question**  4:11 | **recruit**  14:12 | **requirements** | **road**  3:5 36:12 |
| 4:13 5:10 12:3 | **regard**  21:2 | 12:25 34:10 | **rooney**  1:14 |
| 20:13,20 22:8 | 29:12 | **requires**  17:23 | 16:15 17:1,2 |
| 22:14,17,18,19 | **regarding**  10:1 | 26:17 | 17:15 18:11 |
| 29:7 34:18 | 28:4 33:20 | **research**  26:3 | 19:12 31:13,18 |
| **quite**  4:9 | **regardless**  6:14 | **reserve**  16:5 | 32:10 34:23 |
| **r** | **relevant**  4:19 | **resources**  26:8 | **rule**  34:3 |
| **r**  2:4,21,22 3:1 | **relief**  16:13,16 | **respond**  5:21 | **rules**  24:6,23 |
| 4:1 36:1 | 16:21,23 17:6 | 13:22 14:2 | 28:21 29:23 |
| **race**  2:4 | 17:8,21,25 | 23:22 26:23 | 34:2 |
| | 18:2,20 19:5 | | |

**[run - three]**                                                      Page 11

| | | | |
|---|---|---|---|
| **run**  33:1 | **shield**  34:19 | **standing**  24:6 | **talking**  12:24 |
| **s** | **shielded**  34:23 | 24:22 28:21 | 13:3 18:7,16 |
| **s**  3:1 4:1 | **short**  33:1 | 29:23 34:2 | **talks**  7:20 |
| **sacred**  25:21 | **show**  13:25 | **start**  4:19 | **tasks**  30:10 |
| **sater**  3:10 | 15:11 25:24 | **statements** | **ten**  34:20 |
| **save**  4:7 | 26:12 31:11 | 29:14 | **tenth**  1:2 |
| **saying**  14:11,13 | **shows**  14:8,8 | **states**  1:1 | **term**  22:2 23:8 |
| 17:10 31:21,22 | **signature**  36:9 | **statute**  27:16 | 23:9,10 24:9 |
| **says**  15:2 27:2 | **simply**  25:8 | **statutory**  27:17 | 24:11,13,14,15 |
| **second**  30:23 | **single**  9:16 | **step**  25:23 | 24:19 28:25 |
| **secret**  15:7 | 17:22 | **stibora**  30:18 | 29:2,8 |
| **secure**  33:7 | **singular**  23:10 | **stop**  32:24,25 | **terms**  24:6,23 |
| **see**  12:23 13:9 | 24:15 | 33:25 | 28:22,23 29:2 |
| 14:4 32:25 | **six**  16:18 17:23 | **street**  3:12 | 29:4 |
| **seek**  19:18 29:1 | **social**  2:4 | **sua**  22:12 | **test**  30:12,17,23 |
| 29:7 | **society**  26:12 | **subject**  5:14 | 30:23 31:3 |
| **seeking**  16:24 | **solutions**  36:11 | 24:15 | **thank**  34:14 |
| 18:3 21:1 | **sonya**  36:3 | **sufficient**  19:5 | 35:6,7,9,10 |
| **seems**  5:20 | **sorority**  33:8 | **suggested**  7:13 | **theory**  15:17 |
| **selected**  32:21 | **sorry**  13:1 | **suit**  18:17 | **thing**  28:2 |
| 33:23 | 34:16 | **suite**  36:13 | **things**  13:8 |
| **selection**  32:19 | **sort**  14:14 | **suits**  28:13 | 28:4 29:11 |
| **sense**  9:21 15:1 | **sources**  26:9 | **support**  31:23 | **think**  6:2,18 |
| **separate**  8:7 | **specific**  5:16 | **supposed**  15:3 | 7:6 8:6,24 9:7 |
| 30:10 31:3 | 15:1 33:17 | **sure**  27:5 | 13:8,23 14:17 |
| **separately** | **specifically** | **survive**  17:10 | 16:17,22,23 |
| 17:18 | 13:15 15:25 | **sylvia**  3:3,8 | 17:7,14 20:13 |
| **serve**  24:21 | 33:20 | **t** | 21:18 22:14 |
| **set**  29:13 30:17 | **speculation** | **t**  36:1,1 | 23:13 |
| **seven**  12:11 | 28:18 | **take**  17:15 21:4 | **thought**  5:20 |
| 18:9,11 | **sponte**  22:12 | 22:16 23:5 | **threatened** |
| **seymour**  3:10 | **spring**  6:20 | 29:8,20 35:11 | 12:21 |
| **shaker**  3:6 | **springs**  14:24 | **takes**  16:18 | **three**  4:7 19:18 |
| **shared**  27:9 | **stage**  30:1 | **talk**  27:13 | 19:25 |
| | 31:24 | | |

[threshold - yup]                                                    Page 12

**threshold**
  25:15 30:21
**time**  10:10 19:7
  25:23 32:25
**times**  14:6
**today**  19:19
  26:2 35:12
**tort**  7:1,10 9:6
  10:9
**tortious**  21:8
**training**  14:14
**transcript**  36:4
**transforming**
  12:6
**transgender**
  2:5
**true**  36:4
**try**  10:4
**trying**  14:1
**turning**  25:17
**two**  13:8 16:8
  19:22 30:10
  33:4

**u**

**uion**  2:8
**ultimately**  19:4
**unable**  11:22
**undefined**  23:9
  24:3,14
**under**  19:24
  20:1 25:12,12
  27:22 29:23,23
  30:8,16,17,19
  31:8 34:24
  35:11

**understand**
  10:20 22:22
  28:2,10 31:17
**understanding**
  21:1
**unilaterally**
  4:21 17:7
**unique**  28:12
**united**  1:1
**unquestionably**
  28:24,25
**unquestioned**
  5:8
**unreasonable**
  25:25 26:6
  27:23 31:5
**usa**  2:1
**use**  14:11
**using**  26:24

**v**

**v**  1:11 4:3
**valid**  16:4
  20:13
**value**  23:6
**various**  13:9
**veritext**  36:11
**versus**  29:2
**viable**  10:22
**view**  18:8 28:18
**violate**  17:18
  18:13,13
**violated**  13:22
  33:9
**violation**  15:17
  15:21

**violations**
  14:22
**volume**  13:14
**voluntary**
  19:16,23 25:13
  30:9,14,25
**volunteer**
  27:14,21
**volunteers**
  24:20
**vorys**  3:10
**vote**  12:19 16:4
  16:18
**votes**  17:24
**voting**  12:24
  13:16 14:5
  15:3,4 16:3
  31:19

**w**

**wait**  6:25 7:19
**waive**  28:13
**want**  4:18 11:6
  11:18 25:10
  28:5
**wanted**  31:18
**wants**  17:17
**warrant**  27:22
**way**  6:16 7:22
  9:21,23 24:19
  25:9 28:3
**we've**  10:15
  11:1 13:21
**weigh**  20:18
**westenbroek**
  1:6 4:2

**woman**  4:13
  23:19 24:2
  27:2
**womans**  2:6
**women**  5:4
  12:16,20 22:2
  23:8,9,21 24:9
  24:14,15,19
  25:6 27:3,7,11
  28:24,25
**women's**  2:1,2
  26:10,11
**word**  26:24
**working**  33:7
**worth**  29:12
**wrapped**  7:18
**write**  6:16
  11:11,12,13,15
  13:19
**writing**  6:8
**wyoming**  1:17
  5:5 12:16 19:2
  33:19 34:19,24

**y**

**yeah**  20:19
  22:23
**years**  27:9,12
  28:9
**yup**  16:5