Freeburg Law, LLC
Alex Freeburg, Bar No. 7-5182
Rachel Berkness, Bar No. 7-5966
PO Box 3442
Jackson, WY 83001
*Attorneys for Artemis Langford*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JAYLYN WESTENBROEK, HANNAH, HOLTMEIER, ALLISON COGHAN, GRACE CHOATE, MADELINE RAMAR, and MEGAN KOSAR, on behalf of themselves and derivatively on behalf of KAPPA KAPPA GAMMA FRATERNITY, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Civil Action No.: 23-CV-00051-ABJ |
| KAPPA KAPPA GAMMA FRATERNITY, an Ohio non-profit corporation, as a Nominal Defendant and as a Direct Defendant; MARY PAT ROONEY, President of the Fraternity Council of KAPPA KAPPA GAMMA FRATERNITY, in her official capacity, KAPPA KAPPA GAMMA BUILDING CO., a Wyoming non-profit corporation, and ARTEMIS LANGFORD, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ARTEMIS LANGFORD'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS WITH PREJUDICE

Plaintiffs wasted no time in deciding to sue Artemis Langford over two years ago.

Before she even made it to her Kappa Kappa Gamma initiation ceremony, their lawyers

had sent a letter threatening to "enforce [the Plaintiffs'] rights through the courts if this

unthinkable course becomes necessary."[1] Within six months, Plaintiffs had penned a sixty-nine-page Complaint, submitted eighty-four pages of attachments, amended their complaint, filed two additional motions, and set out on a national media tour.

After this matter was dismissed, it took only three business days for one of the above-named Plaintiffs to attend an interview with Fox News during which she would declare: "we started this, and we are going to finish it."[2] During the same interview, Plaintiffs' counsel boasted Plaintiffs were already "prepared with a litany of additional legal filings." Within one month, the appellate process began.[3]

Immediately after the oral argument on appeal, however, Plaintiffs knew they had made a procedural mistake. In a press conference on the steps of the courthouse, their counsel declared: "This is not the end of the road[;] . . . we're going to be here to support these women no matter what because they deserve the sorority that they signed up for, and that's a women's only sorority."[4] One plaintiff echoed that they would "continue to fight until [they] win." As soon as the Tenth Circuit rejected their appeal, Plaintiffs' counsel admitted the decision was "as expected."[5]

---

[1] ECF 1-1 at 122.

[2] https://www.foxnews.com/media/wyoming-sorority-sister-vows-fight-protect-womens-spaces-judge-tosses-suit-trans-member (last visited February 28, 2025).

[3] ECF 32.

[4] https://www.youtube.com/watch?v=7aVA4XKkpb0 (last visited February 28, 2025).

[5] Attached hereto as Exhibit 1 is a true and accurate copy of a public post by Plaintiffs' appellate counsel calling the dismissal "expected."

Despite the forewarning, more than eight months later, Plaintiffs claim they remain undecided as to how to respond. On January 7, 2025, this Court asked Plaintiffs' counsel whether they planned to perfect their appeal or amend. Plaintiffs had no answer. This Court held another hearing on January 29, 2025. Again, Plaintiffs claimed not to know whether they cared to resubmit the briefing donors had paid their lawyers to write. Knowing this Court has been asking for a response and that motions to dismiss with prejudice were coming, Plaintiffs have done nothing.

Actually, that's not true. Plaintiffs have been repeating the allegations in this suit in press conferences and before state legislatures in an effort to legally define the word

"woman."[6] While certain Plaintiffs have made careers[7] out of this case and may now be booked for speaking engagements[8] on women's issues, Ms. Langford has been vilified in media coverage viewed tens of millions of times.

---

[6] Attached hereto as Exhibit 2 is a true and accurate copy of a Wyoming Freedom Caucus Flyer for a press conference "Featuring special guests: Brave women of the UW KKG sorority & their attorney, Cassie Craven," to take place after this Court's **January 7, 2025** hearing; attached hereto as Exhibit 3 is a true and accurate copy of a **January 10, 2025** press release for a Nebraska press conference featuring Plaintiff; *see also* https://www.youtube.com/watch?v=AGXLwieN9e4&t=2424s at 46:33 (Plaintiff testimony before the Wyoming Legislature **on January 15, 2025** regarding the allegations in this case); attached hereto as Exhibit 4 is a true and accurate copy of a **January 21, 2025** post by Independent Women's Forum applauding "Trump's sex-definition executive order" and asking viewers to "Watch @allie_coghan & @h_holtmeier discuss"; attached hereto as Exhibit 5 is a true and accurate copy of relevant portions of a transcript of Plaintiff's **February 7, 2025** testimony before the Nebraska legislature in which she claims that "Without our consent, we were forced to share a sorority house with an adult male"; attached hereto as Exhibit 6 is a true and accurate copy of a **February 14, 2025** letter signed by two plaintiffs in support of legislative changes in New Hampshire; *see also* https://www.youtube.com/watch?v=05gmXl82bQA&t=6505s at 1:45:49 (Plaintiff testimony before the Wyoming Legislature on **February 20, 2025** regarding the allegations in this case) (last accessed February 22, 2025).

Plaintiffs do not need any more time to make up their minds. Regardless of how this Court rules on Kappa Kappa Gamma's request for a deadline to perfect or amend, Ms. Langford respectfully requests that the allegations against her be dismissed with prejudice.[9]

### DISMISSAL WITH PREJUDICE IS APPROPRIATE.

As Ms. Langford raised in her original Motion to Dismiss, a complaint may be dismissed **with prejudice** for failure to comply with Rule 8. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158 (10th Cir. 2007). This remedy is guided by the *Ehrenhaus* factors. *Id.* at 1162. These factors include:

---

[7] Attached hereto as Exhibit 7 is at true and accurate copy of a landing page for Plaintiff Renkert, who now serves as Social Media Assistant for Independent Women's Forum.

[8] Attached hereto as Exhibit 8 is a true and accurate copy of a landing page wherein Plaintiff Holtmeier can be booked for speaking engagements; attached hereto as Exhibit 9 is a true and accurate copy of a landing page wherein Plaintiff Coghan can be booked for speaking engagements; attached hereto as Exhibit 10 is a true and accurate copy of a landing page wherein Plaintiff Westenbroek can be booked for speaking engagements; attached hereto as Exhibit 11 is a true and accurate copy of a landing page wherein Plaintiff Ramar can be booked for speaking engagements.

[9] Given there was no cause of action alleged against her in the first instance, Ms. Langford respectfully requests this Court dismiss the **allegations** against her with prejudice so that she is not left unable to defend herself against such in the event Defendants choose to amend in a similarly salacious manner or continue with their appeal as written.

> (1) The degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) culpability of the litigant; (4) whether the court warned the litigant in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

The *Ehrenhaus* factors "do not represent a rigid test," and "not all the factors" must be considered or satisfied. *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1323. Nor need they be given equal weight. *Procter & Gamble Co. v. Haugen*, 472 F.3d 727, 738 (10th Cir. 2005). Further, this Court may consider the conduct of both the litigants **and their counsel** in determining whether dismissal with prejudice is warranted. *Davis v. Miller*, 571 F.3d 1058, 1061 (10th Cir. 2009).

While Ms. Langford cited *Ehrenhaus* in her original Motion to Dismiss, this Court's order did not require an *Ehrenhaus* analysis. *See Arocho v. United States*, 502 F. App'x 730, 732 (10th Cir. 2012) (unpublished) ("When the dismissal is without prejudice, however, consideration of the *Ehrenhaus* factors is not required.") (citing *AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs.*, 552 F.3d 1233, 1236 (10th Cir. 2009); *Nasious v. Two Unknown B.I.C.E. Agents, Arapahoe Cnty. Just.*, 492 F.3d 1158, 1162 (10th Cir. 2007)). Ms. Langford, therefore, incorporates her previous arguments under *Ehrenhaus* herein. The analysis below, however, differs from her original filing and features recent events.

## *Ehrenhaus* Factor 1 — Ms. Langford continues to suffer overwhelming prejudice as a result of Plaintiffs' irrelevant allegations.

The first *Ehrenhaus* factor is "the degree of actual prejudice to the defendant." *Id.* at 1162. In analyzing this factor, the Tenth Circuit considers whether the allegations are

"serious and stigmatizing" because such allegations may "damage[] the reputation of those accused so long as the lawsuit remains pending." *Id.* at 921. Courts recognize that "unresolved charges" can "be a cloud on one's reputation" and cause "ongoing reputational harm." *Crittendon-Morman v. Schulke*, 2024 U.S. Dist. LEXIS 235944, *6-7 (D. Colo. Dec. 11, 2024) (internal citations omitted). "Under such circumstances, being able to defend oneself in a timely manner and seek to clear one's name is an important part of the judicial process." *Swan Glob. Invs. LLC v. Young*, No. 18-cv-03124-CMA-NRN, 2020 U.S. Dist. LEXIS 161813, 2020 WL 5204293, at *6 (D. Colo. June 5, 2020), *report and recommendation adopted*, No. 18-CV-03124-CMA-NRN, 2020 U.S. Dist. LEXIS 253767, 2020 WL 9432880 (D. Colo. Dec. 10, 2020).

Here, while this Court is aware of the nature of the allegations against Ms. Langford, it may not be aware of the extent of actual prejudice and reputational harm Ms. Langford has suffered as a result thereof.[10] A few examples, each occurring after this Court initially examined this issue, are highlighted below.

---

[10] Ms. Langford takes her burden to establish prejudice seriously. However, it is not possible to accurately show for this Court the extend of the prejudice she has faced. Attached hereto as Exhibits 12-52 are true and accurate copies of a handful of media posts repeating the allegations made by Plaintiffs herein and demonstrating the reputational harm Ms. Langford has suffered as demonstrated by public comments. The posts submitted herewith have been viewed tens of millions of times.

**A University of Wyoming student group has invited to campus a speaker who has called for students to "treat [Ms. Langford] poorly" and "bully this freak" because she is "obviously a predator."**

Within days of this Court's order initially dismissing the case, Turning Point USA Founder Charlie Kirk did a segment on *The Charlie Kirk Show* about Ms. Langford. [11] In it, Mr. Kirk commented that because the case had "been rejected by the U.S. District for Wyoming . . . we are now forcing 50% of the population to let their social lives be dominated by disgusting mentally ill neurotic, predatory, freaks." He went on: "This person, Artemis Langford, is a neurotic freak." Mr. Kirk encouraged Plaintiffs to "bully this freak" and said:

> these girls . . . could get her out of your sorority. You just have to treat her poorly. Make fun of her. Be like, you're a fat freak. What are you doing here?

He suggested that Ms. Langford is a danger to her sorority sisters and said:

> She is like Shrek. Put the picture up. It's like she could just take one of them and crush their skull. I mean, that's sick. I'm sorry. That is sick. She towers over these young ladies, obviously a predator, and she's obviously sexually attracted to them. Watching them undress with an erection, and the judge says, why do we need to protect women?

Approximately two weeks after this case was dismissed, Mr. Kirk commented on a positive MSNBC interview featuring Ms. Langford.[12]  He stated, "Listen to MSNBC describe the freak, Artemis Langford, a man who forced himself into a sorority and got a visible erection while watching the women change." He blamed MSNBC for "promoting

---

[11] Attached hereto as Exhibit 53 is a true and accurate copy of a Media Matters story about Mr. Kirk's *Westenbroek* segment containing the quoted material above.

[12] Attached previously as Exhibit 33 is a true and accurate copy of Mr. Kirk's post about Ms. Langford on social media, with over 286,00 views.

the abuse of young girls." Mr. Kirk's post about Ms. Langford has been viewed over 286,000 times.

Mr. Kirk's organization, Turning Point USA, has a chapter at the University of Wyoming. The chapter has invited Mr. Kirk to speak at the University of Wyoming campus on April 24, 2025.[13]

### Ms. Langford has already faced two protests on campus.

Shortly after this Court initially ordered dismissal without prejudice, the group "Rocky Mountain Women's Network" took to the University of Wyoming campus after claiming the suit was "thrown out by Judge Alan Johnson because he said he could not define the word 'woman.'"[14] They arrived with rocks they had painted with messages such as "Artemis Langford is a man." In a video which the group describes as "the record of our dissent," the group can be seen placing flyers around campus that contain a photo of Ms. Langford's face along with statistics indicating that she is predisposed to commit sex crimes.[15] The group left humiliating chalk messages with Ms. Langford's name on the

---

[13] Attached hereto as Exhibit 54 is a true and accurate copy of a flyer advertising Mr. Kirk's speech scheduled for April 24, 2025.

[14] Berkness Decl. at ¶ 2.

[15] Attached hereto as Exhibits 55-56 are true and accurate copies of photographs of one of the flyers distributed by Rocky Mountain Women's Network at the University of Wyoming Campus after this Court's dismissal.

sidewalks[16] and hung a banner on an overpass that read "#everybodyknows 'Artemis' Langford is a man."

In October 2023, anti-transgender activist Riley Gaines was joined by Plaintiffs as she spoke to a crowd of over 600 at the University of Wyoming, filling both an auditorium and an overflow room.[17] She lamented how Plaintiffs have been "vilified beyond belief" and have "endured . . . things really unimaginable to a person who hasn't gone through this." One Plaintiff gave a speech at the event. From the stage, the girls displayed to the crowd matching shirts they were wearing which read: "Sororities are for sisters, not misters."[18]–[19]

---

[16] Attached hereto as Exhibit 57 is a true and accurate photograph of Ms. Langford viewing a chalk message left by Rocky Mountain Women's Network on the sidewalks outside the Kappa Kappa Gamma house.

[17]    https://cowboystatedaily.com/2023/10/24/riley-gaines-speaks-to-600-at-uw-calls-kappa-sorority-members-inspiring/?fbclid=IwY2xjawIsXp5leHRuA2FlbQIxMQABHUCJVJ7dXmyxd4T5yozgqWwSvRuIbpNfjFe7U1ZPq142Z067KBpm9FzDVA_aem_h9xeHN1mYix1mm7gc0YmrQ (last accessed February 28, 2025).

[18] Attached hereto as Exhibit 58 is a true and accurate copy of a photograph of Plaintiffs at the Riley Gaines event displaying their matching t-shirts.

[19] This is not the first time Plaintiffs have donned matching shirts to humiliate Ms. Langford. After initially bringing suit, Plaintiffs attended a Kappa Kappa Gamma recruitment event wearing matching "Longhorn Law" shirt.

**The United States Congress heard damning testimony about Ms. Langford purporting to be based upon Plaintiffs' firsthand accounts.**

The week Plaintiffs' appellate brief was filed, activist Riley Gaines testified before the United States Congress. [20] She agreed that she was "active in working with [the] Kappa Kappa Gamma sorority in Wyoming." Ms. Gaines stated that she "talk[s] to [Plaintiffs] daily" and that "what they are going through is . . . perverse." She claimed that Ms. Langford is "watching them as they shower and undress." She stated that it was "explicit" but "true" that she is "walking around . . . erect in their sorority house." She also claimed that Ms. Langford is "asking them uncomfortable questions about what undergarments they wear" and "about their breasts."

**Plaintiffs' counsel act as if this suit is ongoing.**

On July 30, 2024, approximately ten weeks after the Tenth Circuit issued its order dismissing the appeal, Plaintiffs' appellate counsel was interviewed for *The Independent with Scott Atlas*.[21] She was introduced in the present tense as "lead counsel in *Westenbroek v. Kappa Kappa Gamma*, a landmark case that seeks to preserve female-only sororities." Plaintiffs' appellate counsel calls Ms. Langford "a biological male" who is "kind of a weird guy, apparently." She then corrects herself and says, "not apparently, weird." She says Ms. Langford "talked about cadavers" and "wanting to be close to dead bodies." However, when asked the key question in this case, whether private sororities are

---

[20] https://www.youtube.com/watch?v=1PQyll-2Gc4&t=15s (last accessed February 28, 2025).

[21] https://www.youtube.com/watch?v=Qqs6LBnWjno (last accessed February 28, 2025).

able to "choose their own members on the basis of any criteria whatsoever," Plaintiffs' appellate counsel dodged the question.

On January 7, 2025, three of the above-named Plaintiffs along with their counsel gave a press conference in the Wyoming State Capitol rotunda to kick off Wyoming's current legislative session.[22] Plaintiffs' counsel got choked up at as she recounted how they have been accused of bigotry in bringing this suit, and said, "it's a long road, but it's one that's so important to us." One Plaintiff claimed that Ms. Langford's presence "completely destroyed the women's space [they] were promised" and "shattered their expectations of safety and privacy." Another complained that "no woman should have to explain why it makes us uncomfortable to undress in front of a male."

---

[22] The Wyoming Freedom Caucus has removed the video of the press conference from their social media page. However, a video of the conference, taken by an attendee, may be viewed here: https://x.com/Yola_the_TERF/status/1876736458351943703 (last accessed February 28, 2025).

Three weeks ago, Plaintiffs' appellate counsel participated in an interview from the White House[23] in which Ms. Langford's full name was used.[24] Plaintiffs' counsel said that "Kappa initiated a male" and that Plaintiffs "had stomach ulcers, they couldn't sleep, they felt unsafe" because "their home had been violated" and "their private space had been violated" by Ms. Langford.

**_Ehrenhaus_ Factor 2: Plaintiffs have demonstrated a lack of respect for this Court, the Tenth Circuit, and the legal process in their handling of this case.**

The second factor this Court must consider is Plaintiffs' interference with the judicial process. _Ehrenhaus_, 965 F.2d at 921. In weighing this factor, courts may analyze whether a party's conduct outside of the courtroom indicates a lack of "respect for the judicial process and the law." _Cosby v. Meadors_, 351 F.3d 1324, 1326, 1333-34 (10th Cir. 2003) (under the _Ehrenhaus_ factors, considering a plaintiff's failure to pay court fees particularly egregious in connection with his choices "to make discretionary purchases" because "clearly, Plaintiff thought clothing and sundries more valuable than continued pursuit of litigation." (internal citation omitted)). Additionally, a court may consider whether a party's actions have "forced" a court "to expend time and resources . . . on a

---

[23] Attached hereto as Exhibit 59 is a true and accurate copy of a press release announcing that Plaintiffs' appellate counsel, May Mailman, has recently taken a position as Deputy Assistant to the President and Senior Policy Strategist. She drafted the Executive Order entitled "Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government," which is attached hereto as Exhibit 60.

[24] https://www.youtube.com/watch?v=DAgBDlGQsmQ (last accessed February 28, 2025).

case that [the party] seems to have little interest in pursuing." *Swan Global Invs. v. Young*, 2020 U.S. Dist. LEXIS 161813, *20-21 (D. Colo. June 5, 2020). A court may also consider whether a party's "actions have taken time away from individuals in other cases who have meritorious claims and serious injuries that deserve to be redressed promptly." *Valentine v. PNC Fin. Servs. Grp., Inc.*, No. 18-cv-01934-CMA-SKC, 2019 U.S. Dist. LEXIS 196265, 2019 WL 5957297, at *3 (D. Colo. Nov. 13, 2019).

Based on the pleadings alone, this Court has already noted that, as to Ms. Langford, Plaintiffs have used this case to raise "irrelevan[t]" allegations that are "unbefitting in federal court."[25] And despite Plaintiffs' claim that Ms. Langford was only named for fear the matter would be subject to dismissal absent her presence, Plaintiffs' counsel has not named Ms. Langford in the other matter before this Court which has equal likelihood to impact Ms. Langford's future in the sorority.[26]

### Plaintiffs and their counsel have accused this Court of being improperly motivated.

Plaintiffs' conduct outside of the courtroom demonstrates a lack respect for the legal process. For example, in response to this Court's dismissal, Plaintiffs' counsel claimed to Fox News that Plaintiffs merely "sought a determination in a court of law to look at the bylaws from a contractual and not a political standpoint at all. Unfortunately, the judge converted this into a political issue."[27]

---

[25] ECF 31 at n. 68.

[26] *Levang v. Kappa Kappa Gamma, et. al.*, 2:24-cv-000267-ABJ, ECF 48.

[27] https://www.foxnews.com/media/womanhood-not-game-semantics-attorney-says-judge-allows-transgender-sorority-sister-remain (last accessed February 28, 2025).

In a Fox Business segment following this Court's initial dismissal, Riley Gaines —
the same activist who appeared on stage with Plaintiffs at the University of Wyoming —
stated that she is "very close with several of these girls on this case" and "was just with
one in Omaha this past week."[28] Suggesting she played an inside role in this case,
Ms. Gaines indicated that she could not "list too much because of the litigation process"
but she "wish[ed] [she] could." However, she stated that Plaintiffs "have had problems
with this Judge the entirety of this case" and that "he is willing to put these girls in harm's
way." She also claimed that this Court denied Plaintiffs' motion for pseudonymity because
"he wanted to scare them."

**Plaintiffs' counsel tell different stories to the Court and to the public.**

As this case moved through the appellate process, Plaintiffs' actions further
demonstrated a misuse of the legal system.

In an interview on *The Laura Ingraham Angle*, Plaintiffs' appellate counsel
appeared with Plaintiff Coghan to discuss this Court's dismissal and the then-upcoming
appeal.[29] Commenting on the appeal, Plaintiffs' appellate counsel remarked, "The big
question there is . . .  what is a woman?" Before the Tenth Circuit, however, Plaintiffs'
appellate counsel opened her remarks in this fashion:

> The issue in this appeal is actually quite narrow. This case is at a motion to
> dismiss. **The question for the district court and this court is not the
> interpretation of 'woman.**' The question is whether plaintiffs plausibly
> allege a breach of fiduciary duty.

---

[28]    https://www.foxbusiness.com/lifestyle/riley-gaines-sorority-sisters-harms-way-
trans-lawsuit-dismissal-disturbed (last accessed February 28, 2025).

[29] https://www.facebook.com/watch/?v=210711445313226 (last accessed February 28,
2025).

Upon exiting the Court, Plaintiffs and their counsel held a press conference on the courthouse steps.[30] Plaintiffs' counsel began her remarks, almost unbelievably, as follows:

> So what happened in Court today? **The Court did not want to address 'what is a woman' because they know what it is.** And so the Court was looking to try and find small reasons to not hear this case.

On another subject, Plaintiffs' appellate counsel was asked whether this Court's order went to the merits. She responded:

> So what the Plaintiffs allege is that there is a promise that has been broken. The District Court says there is no such promise and, even if there was, I wouldn't be able to do anything about it. That goes to the merits of the Complaint.[31]

Approximately three weeks later, Plaintiffs' counsel told the Laramie County District Court that Westenbroek "was not dismissed on the merits.'[32]

**Plaintiffs and their counsel demonstrate a lack of respect for the legal system.**

---

[30] https://www.youtube.com/watch?v=7aVA4XKkpb0&t=217s (last accessed February 28, 2025).

[31]         https://www.ca10.uscourts.gov/sites/ca10/files/oralarguments/23-8065.mp3 beginning at 01:30.

[32] Attached hereto as Exhibit 61 is a true and accurate copy of *Memorandum of Law in Support of Defendants' Motion to Dismiss* filed in *Langford v. Knepper, et. al* , 2024-cv-0202231 at p. 9; s*ee also* p. 10 ("Here, Langford's malicious prosecution claim fails because the prior proceedings were not terminated in her favor on the merits."); at 10-11 ("As the proceedings against Langford were not dismissed on the merits, there is no viable malicious prosecution claim.").

On *The Laura Ingraham Angle* with Plaintiff Coghan, Plaintiffs' appellate counsel accused this Court of dismissing this case because it "can't figure out what [woman] means."[33]

During the same October 2023 rally at University of Wyoming where Plaintiffs joined Riley Gaines on stage,[34] Ms. Gaines remarked:

> The judge, was appointed by Ronald Reagan, 87-years-old, how is he still breathing? He told these girls in regards to this incident right here, their sorority and allowing a male into this space with these girls who have been promised sisterhood . . . this judge, again who is on his last breath, said, 'Who am I to define what a woman is?. . . They can interpret it however they want.'[35]

In May 2024, Plaintiffs invited Ms. Gaines to again speak at their press conference outside the Tenth Circuit Court of Appeals.[36] During the press conference, Plaintiffs' counsel accused the Tenth Circuit of "trying to avoid" answering the question on appeal due to "pressures in society."

After the Tenth Circuit dismissed Plaintiffs' appeal, Plaintiffs' appellate counsel accused the courts of lacking the courage to decide this case. She stated:

> We disagree the court lacked appellate jurisdiction. As we explained in our brief, appellate courts consider district court decisions that go to the merits of the case, which the Wyoming decision certainly did. Women deserve the

---

[33] https://www.facebook.com/watch/?v=210711445313226 (last accessed February 28, 2025).

[34] Attached hereto as Exhibit 62 is a true and accurate copy of a photograph of Plaintiffs speaking at the event alongside Riley Gaines.

[35] Berkness Decl. at ¶ 3.

[36] https://www.youtube.com/watch?v=7aVA4XKkpb0&t=217s (last accessed February 28, 2025).

camaraderie and safety of sororities, but unfortunately, it also appears **they first need courts brave enough to say so.**[37]

**_Ehrenhaus_ Factor 3: Plaintiffs and their counsel bear culpability both for the allegations in this matter and their delay in responding to the Tenth Circuit's dismissal.**

In weighing dismissal with prejudice, this Court may review the culpability of both Plaintiffs and their counsel. _Gripe v. City of Enid, Okl._, 312 Fed.R.Serv.3d 1184, 1189 (10th Cir. 2002) (citing _Link v. Wabash R.R, Co._, 370 U.S. 626, 633-34 (1962)). Establishing culpability requires willfulness, bad faith, or fault as opposed to an inability to comply. _Lee v. Max Int'l, LLC_, 638 F.3d 1318, 1321 (10th Cir. 2011). A showing of wrongful intent is not required. _In Re Standards Metals Corp._, 817 F.2d 625, 628-29 (10th Cir. 1987). Further, rather than direct evidence of culpability, courts may review actions which "suggest[] bad faith." _Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n_, 886 F.3d 852, 861.

Here, Plaintiffs' counsel willfully chose to bring irrelevant and stigmatizing allegations about Ms. Langford before this Court in a matter that required none.[38] And despite repeatedly claiming that this Court's order went to the merits of the case, they have unjustifiably delayed perfecting their appeal.

At the same time, Plaintiffs' counsel has argued before the Laramie County District Court that one of Ms. Langford's causes of action against them personally should fail

---

[37]    https://www.law.com/2024/06/14/10th-circuit-dismisses-bid-from-kappa-kappa-gamma-sisters-to-reinstate-lawsuit-over-admission-of-transgender-member/?slreturn=20250227161120 (last accessed February 28, 2025).

[38] _See Levang v. Kappa Kappa Gamma Fraternity, et al._, 2:24-cv-00267-ABJ at ECF 1.

because this action remains pending.[39] While Ms. Langford disagrees with that position, Plaintiffs' counsel appear to believe they may personally benefit by keeping this case alive. However, any further litigation in this matter has the potential to result in evidence that may be used against Plaintiffs' counsel in *Langford v. Knepper, et. al.*[40] Therefore, Plaintiffs' counsel stand to personally benefit from stagnating this matter until *Langford v. Knepper* is resolved.

**_Ehrenhaus_ Factor Four: Plaintiffs have been on notice that Defendants were moving to dismiss with prejudice since January 29, 2025 and have made no effort to amend or perfect their appeal.**

At this Court's hearing on January 29, 2025, it made clear to Plaintiffs that it was considering dismissal with prejudice and provided Defendants the opportunity to brief its authority to do so.[41] Plaintiffs could have perfected their appeal in the meantime and submitted the same briefing that has already been written. Plaintiffs could have also filed an amended complaint. They have chosen to do neither.

Additionally, as stated in Ms. Langford's original Motion to Dismiss, Plaintiffs, through counsel, have long been on notice of the requirements of Rule 8. Notice of the rules and the need to comply therewith is all that is required to satisfy this factor under *Ehrenhaus*. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135. 1149 (10th Cir. 2007); *Nasious*, 492 F.3d at 1163.

---

[39] *See* Exhibit 62, attached above.

[40] Attached hereto as Exhibit 63 is a true and accurate copy of the Complaint in *Langford v. Knepper, et. al*. The matter has already survived a motion to dismiss.

[41] ECF 45.

***Ehrenhaus* Factor Five: No effective lesser sanction exists other than dismissal with prejudice of all details about Ms. Langford.**

Finally, this Court must weigh "the efficacy of lesser sanctions." *Nasious*, 492 F.3d at 1162. An effective sanction should "correct the behavior" of the litigant. *Davis v. Miller*, 571 F.3d 1058, 1064 (10th Cir. 2009) (citing lower court's order). As a Colorado court recently reiterated, "being able to defend oneself in a timely manner and seek to clear one's name is an important part of the judicial process." *Crittendon-Morman v. Schuelke*, 2024 U.S. Dist. LEXIS 235944, *7 (D. Colo. Dec. 11, 2024) (internal citation omitted).

Here, Ms. Langford has had to bear the backlash of Plaintiffs' allegations for nearly two years. If Plaintiffs choose to perfect their appeal, Ms. Langford can expect another round of media coverage that may cause members of the public to call for harm.[42]  During this time, she will have no opportunity to defend herself.[43]

If Ms. Langford is dismissed from this action but Plaintiffs are permitted to amend in whatever way they see fit, Ms. Langford may continue to be the subject of stigmatizing allegations that have no bearing on Plaintiffs' claims.[44] The only sanction that will allow Ms. Langford to put these allegations behind her is dismissal of such allegations with prejudice.

On the other hand, this sanction has no impact on Plaintiffs' ability to pursue their claims if they wish. They need only style any Amended Complaint in the way of *Levang*.

---

[42] Attached Exhibits 12-53, attached above.

[43] ECF 32 (Plaintiffs did not appeal their claims against Ms. Langford, and she was given no opportunity to brief the matter before the Tenth Circuit).

[44] ECF 31 at n. 68.

## CONCLUSION

There is no way for Ms. Langford to know whether dismissal with prejudice will finally put to rest the barrage of stigma and attacks that she's suffered since this case was filed. But the *Ehrenhaus* factors entitle her to this remedy. Ms. Langford respectfully request this Court dismiss the allegations against her with prejudice.

Dated _____02/28/2025_____.        ____/s/ Rachel Berkness_____
                                         Rachel M. Berkness, Bar No. 7-5966
                                         Freeburg Law, LLC
                                         Box 3442
                                         Jackson, WY 83001

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 28th day of February 2025.

Cassie Craven (#7-5664)               ☒  CM/ECF
LONGHORN LAW LLC                      ☐  U.S. Mail
109 East 17th Street, Suite 223        ☐  Fax
Cheyenne, WY 82001                    ☐  Email
Telephone: (307) 823-3062
E-Mail: ccraven.law@gmail.com


John G. Knepper (#7-4608)             ☒  CM/ECF
LAW OFFICE OF JOHN G. KNEPPER, LLC    ☐  U.S. Mail
P.O. Box 1512                         ☐  Fax
Cheyenne, WY 82003                    ☐  Email
Telephone: (307) 632-2842
E-Mail: john@knepperllc.com

Natalie M. McLaughlin (Pro Hac Vice)  ☒  CM/ECF
Brian W. Dressel (Pro Hac Vice)       ☐  U.S. Mail
VORYS, SATER, SEYMOUR AND             ☐  Fax
PEASE, LLP                            ☐  Email
52 East Gay Street
Columbus, OH 43215
Telephone:   (614) 464-5452
Email: nmmclaughlin@vorys.com
bwdressel@vorys.com

Stuart Day                            ☒  CM/ECF
WILLIAMS, PORTER, DAY & NEVILLE, P.C. ☐  U.S. Mail
159 North Wolcott, Suite 400          ☐  Fax
P.O. Box 10700                        ☐  Email
Casper, WY 82602-3902
Telephone:   (307) 265-0700
E-Mail: sklosterman@wpdn.net


                              /s/ Rachel Berkness
                                Rachel Berkness