WY Laramie County District Court
1st JD
Jun 07 2024 02:37PM
2024-CV-0202231
73343005

**FILED**

Anna Reeves Olson, 6-3692
LONG REIMER WINEGAR, LLP
242 So. Park Street
Casper, WY 82601
(307) 265-3843
(307) 235-0243 *facsimile*
aolson@lrw-law.com

IN THE DISTRICT COURT, FIRST JUDICIAL DISTRICT
STATE OF WYOMING, COUNTY OF LARAMIE

| | | |
|---|---|---|
| ARTEMIS LANGFORD, | ) | |
| | ) | Civil Action No. 2024-cv-0202231 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LAW OFFICE OF JOHN G. KNEPPER, LLC | ) | |
| JOHN KNEPPER, Individually; | ) | |
| LONGHORN LAW, LLC, | ) | |
| CASANDRA CRAVEN, Individually; | ) | |
| and Does 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, John Knepper and the Law Office of John G. Knepper, LLC, through their

Counsel, Anna Reeves Olson, and pursuant to Wyoming Rule of Civil Procedure 12(b)(6), state

as follows:

INTRODUCTION

Plaintiff, Artemis Langford, has sued opposing counsel liable in litigation that is currently

pending, seeking tort damages. Fortunately for all attorneys, the law sets a high burden for those seeking to hold opposing counsel liable for statements made and actions taken in litigation. This is because citizens and attorneys are encouraged to access the court system to resolve their disputes without fear of retribution or retaliation. Therefore, Langford's lawsuit should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

BACKGROUND

In 2022, Artemis Langford, a "young, transgender college student at the University of Wyoming" applied for and gained acceptance at Kappa Kappa Gamma, a sorority that accepts transgender applicants. *Compl.* at *Introduction* & ¶¶ 10, 11.

In 2023, attorneys John G. Knepper and Casandra Craven, filed a *First Amended Verified Complaint* against the Kappa Kappa Gamma sorority, Mary Rooney (the president of the Fraternity Council of Kappa Kappa Gamma) and Artemis Langford, on behalf of several Kappa Kappa Gamma sorority members: Jaylyn Westenbroek, Hannah Holtmeier, Allison Coghan, Grace Choate, Madeline Ramar, and Megan Kosar. *Id.* at ¶13; *see also Westenbroek, et al. v. Kappa Kappa Gamma, et al.*, Civil Case No. 2:23-cv-51, ECF 6, (April 20, 2023 Wyo. 2023).[1]

The lawsuit asserted claims for breach of contract, tortious interference with contract, as well as a derivative complaint for breach of fiduciary duties. These claims were primarily based upon the plaintiffs' allegations that Langford, as a transgender woman, should not have been voted into the sorority. *Id.* at ¶14. In doing so, the plaintiffs' verified allegations included statements that:

1. Langford was 6'2" tall and weighed 260 pounds, *see Compl.* at ¶18(a); *Verified Compl.*

---

[1] As the *Complaint* was verified, it was sworn to under oath by all of the attorneys' clients. These clients—the plaintiffs in the underlying lawsuit that remains pending—are not parties to this case.

at ¶115;

2. Langford had a 1.9 cumulative grade point average ("GPA"), which was disqualifying for Kappa applicants, who must have at least a 2.7 GPA, *id.* at 18(b); ¶139;

3. Langford became visibly aroused in the presence of her sorority sisters, *id.* at ¶18(c); *id.* at ¶119;

4. Langford had yet to undergo any medical or legal transition; *id.* at ¶¶18(d), (e) & 116; and

5. Langford sought relationships with women on the online dating application "Tinder"; *id*. at ¶18(f); and ¶119.

6. Langford also alleges that the *Verified Complaint* states that Langford's "mundane actions" were sexually motivated, *id.* at ¶18(g).

Following the filing of the Plaintiff's *First Amended Verified Complaint,* the attorneys and their clients agreed to interviews on *The Laura Ingraham Angle, the Megyn Kelly Show,* and Fox News' *America Reports* and "cooperated with print media sources to publish hurtful stories about Ms. Langford." *Id.* at ¶19. During those interviews, Langford alleged that the attorneys "mocked Ms. Langford's physical appearance, made jabs about her GPA and attempted to paint Ms. Langford as a sexual deviant who had joined a transgender-friendly sorority simply to gain access to women." *Id.* at ¶20.

Langford believes that the attorneys' actions in the underlying suit were improper and were done only to solicit donations to pay their legal fees. *Id.* at ¶21. The attorneys supposedly raised money for their fees through a password-protected website called the "Sapphire Syndicate," *id.* at ¶23, as well as through high-profile social media posts and television appearances by Caitlyn

Jenner, *id.* at ¶24.

Langford also believes that the attorneys improperly and needlessly disclosed her name in the pleadings, despite that doing so would likely cause significant psychological distress as well as put life endangerment. *Id.* at ¶29. Indeed, Langford alleges that since the attorneys filed the lawsuit, "she has been subjected to significant media attention and her name and likeness are unused in connection with disparaging comments." *Id.* at ¶30.

On August 25, 2023, the United States District Court for the District of Wyoming dismissed the *Verified Complaint* "without prejudice" against the Kappa Kappa Gamma Sorority and Ms. Rooney. *See Westenbroek, et al. v. Kappa Kappa Gamma, et al.*, Civil Case Number 2:23-cv-51, ECF 31 at 40-41 (*Order Granting Motion to Dismiss*). The district court also found that Langford's *Motion to Dismiss* should be "dismissed as moot." *Id.* at 41. However, in doing so, the district court stated, in a footnote, that the comments made about Langford were "unsubstantiated" and "unbefitting in federal court." *See Westenbroek, et al. v. Kappa Kappa Gamma, et al.,* ECF 31 at ¶ 40 n. 68.

Following the dismissal, the Westenbroek Plaintiffs filed a timely notice of appeal, *see* Exhibit 1 (Notice of Appeal), and the matter is currently on appeal before the United States Court of Appeals for the Tenth Circuit.

***This Litigation***

After the dismissal of the *Verified Complaint* by the federal district court, and after briefing was complete in the Tenth Circuit, Langford filed suit against Mr. Knepper and Ms. Craven and raised four claims: (1) Abuse of Process; (2) Malicious Prosecution; (3) Intrusion upon Seclusion; and (4) Intentional Infliction of Emotional Distress. However, as set forth below, Langford has

failed to state a claim upon which relief may be granted and the *Complaint* must be dismissed.

ARGUMENT

The Defendants vehemently deny the allegations set forth in Langford's *Complaint*. Nevertheless, for the sake of this *Motion to Dismiss*, Defendants recognize that Langford's allegations must be accepted as true and viewed in a light most favorable to the non-moving party. *See Sweetwater Station, LLC v. Pedri,* 522 P.3d 617, 622 (Wyo. 2022).

I.    LANGFORD'S ABUSE OF PROCESS CLAIM MUST BE DISMISSED BECAUSE: (1) THE MERE INSTITUTION OF A LEGAL ACTION BY AN ATTORNEY DOES NOT CONSTITUTE ABUSE OF PROCESS; (2) LANGFORD HAS NOT ALLEGED THAT THE ATTORNEYS ACTED WITH MALICE IN FILING THE LAWSUIT; AND (3) LANGFORD HAS NOT ALLEGED THAT THE LAWSUIT WAS FILED FOR A PURPOSE OTHER THAN ADJUDICATING THEIR CLIENTS' CLAIMS.

In the abuse of process claim, Langford alleges that the attorneys "engaged in willful acts not proper in the regular course of legal proceedings by": (1) bringing suit against Langford unnecessarily; (2) including irrelevant and unsubstantiated allegations against Langford; (3) needlessly disclosing Langford's name and private details in the filed pleadings; (4) implying that Langford was a sexual deviant; and (5) participating and encouraging negative media coverage regarding Langford. *See Compl*. at ¶35(a) - (f).

### *Abuse of Process Claims Generally*

The term "process" refers to the proceedings in any civil lawsuit that compels a defendant to appear in court and is the means by which a court acquires or exercise jurisdiction over a person. *See* Websters' Dictionary. "Abuse of process" is a tort that is defined as the use of legal process against another "to accomplish a purpose for which it [was] not designed." RESTATEMENT (Second) OF TORTS § 682 (March 2017 update); *see also* Dan B. Dobbs, *Law of Torts*, § 594 (2016 update). It is the deliberate misuse of regularly issued civil process that is not justified by the underlying

legal action. *See, e.g., Wood v. Palmer Ford, Inc.,* 425 A.2d 671, 679 (Md. App. 1981) (citing Prosser, Law of Torts 856 (4th ed. 1971)).

For example, when a state trooper arraigned a plaintiff on charges of illegal possession of a car with no VIN, but did so primarily because the plaintiff had advised his friend to remain silent and obtain a lawyer during interrogation, that amounted to abuse of process. *See Davis v. U.S.*, 2007 WL 9753132, at \*4 (D. Conn. Feb. 27, 2007) (citing *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994)). Or similarly, when university officials engaged in abuse of process when they obtained a detention order, not for purposes of inquiry into a student's mental condition as the detention order was designed, but to physically prevent her from leaving school." *Id.* (citing *Maniaci v. Marquette Un.*, 184 N.W.2d 168 (Wis. 2d 1971)).

There is no cause of action for abuse of process when the process is used for the purpose for which it was intended. This is true even when there is also incidental motive of spite or some other ulterior purpose. *See* RESTATEMENT (SECOND) OF TORTS § 682, cmt. b. Furthermore, the strength of the party's case does not matter as to whether there has been abuse of process. For example, the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm. *Id.* For abuse of process to occur there must be use of the process — here, the filing of the *Verified Complain t*— for an immediate purpose other than that for which it was designed and intended, such as by trying to force a payment through fear of legal entanglement. *Id.*

In Wyoming, in order to establish a claim for abuse of process, the plaintiff must prove: (1) the defendant had an ulterior purpose; and (2) the defendant engaged in a willful act in the use of the legal process that was not proper in the regular conduct of the proceeding. *See The Tavern,*

*LLC v. Town of Alpine*, 395 P.3d 167, 179 (Wyo. 2017); *see also* W.C.P.J.I. 21.18. There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even if one attributes the worst intentions. W.C.P.J.I. 21.18.

### *Attorneys & Abuse of Process Claims*

The Wyoming Supreme Court has never considered an abuse of process claim brought against opposing counsel, but the Court has held that an attorney owes no duty of care to a nonclient, unless the nonclient was an intended beneficiary of the attorney's representation. *See In re Est. of Drwenski*, 83 P.3d 457, 464 (Wyo. 2004) (attorney did not owe a duty of care to nonclient because the attorney's representation of the client in a divorce proceeding was not intended to benefit the nonclient); *see also Schlegel v. Barney & Graham, LLC,* 536 P.3d 231, 236 (Wyo. 2023).

The policy reasoning behind this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of loyalty owed to a client. *In re Est. of Drwenski*, 83 P.3d at 465; *Montalvo v. Sondes,* 637 So. 2d 127, 130 (La. 1994).

Therefore, in order for a nonclient to state a valid claim against an attorney, the complaint must additionally allege facts showing: (1) that the attorney acted with malice or an intent to do harm on the part of the attorney in persuading his client to initiate and continue the suit; and (2) that the lawsuit was filed for a purpose other than aiding the client in adjudicating the client's claim, *i.e.*, the attorney sought some additional act in the use of the legal process that was not proper in the regular prosecution of the proceedings. *See*, *e.g., McDonald v. Bowen*, 351 So.3d 914, 919 (La. App. 2 Cir. 2022) (holding that it is "essential" for the abuse of process complaint

against an attorney to allege facts showing specific malice or an intent to harm on the part of the attorney); *Epps v. Vogel*, 454 A.2d 320 (D.C. 1982) (holding that allegation in physicians' complaint that attorney prosecuted previous malpractice case against them "with an ulterior purpose," without any indication that attorney sought to accomplish some result not contemplated in regular prosecution of charge, was insufficient to sustain abuse of process claim); *Ewert v. Wieboldt Stores, Inc.*, 347 N.E.2d 242 (1st Dist. 1976) (plaintiff failed to state a claim for abuse of process against attorneys because the mere institution of a civil action without an allegation that the attorneys attempted to use the legal process for an improper purpose does not support an abuse of process claim); *Blanton v. Morgan*, 681 S.W.2d 876 (Tex. App. El Paso 1984) (suit against attorney was fatally defective because it failed to allege an improper use of the process); *Tanguay v. Asen*, 722 A.2d 49 (Me. 1998) (ex-husband did not establish an abuse of process claim against his ex-wife's attorney, who had represented her in post-divorce litigation, absent allegations that any court document or initiation of court process was used improperly); *Journeymen, Inc. v. Judson*, 608 P.2d 563 (Or. Ct. App. 1980) (in order to state a claim for abuse of process against an attorney, the plaintiff must establish that the attorney's purported misconduct resulted primarily from the attorney's ulterior motive or malice).

Even if a lawsuit appears completely meritless on its face, the filing of that suit does not support an abuse of process claim because the attorney is simply the instrument through which the client invokes a judicial determination. *See Spencer v. Burglass,* 337 So.2d 596 (La. App. 4th Cir. 1976).

In this case, Langford has failed to state a cause of action for abuse of process for several reasons.    First, several of Langford's allegations are that the underlying lawsuit: (1) was

unnecessary; (2) included irrelevant allegations; and (3) implied Langford is a sexual deviant. These allegations, however, all focus on Langford's opinions of the *Verified Complaint's* inadequacies. However, such allegations cannot support a claim for abuse of process no matter how unhappy Langford may be with the allegations contained therein.

Second, Langford alleges that the attorneys' "ulterior purpose" was to raise money for the lawsuit and to gain publicity. *Compl.* at ¶38. Langford cites no basis for these unsupported (and baseless) allegations, but—even if true—such an allegation cannot support a claim for abuse of process. Attorneys must have had this as their motive *before* filing the lawsuit. Simply wanting to be paid for legal work *after* the complaint was already filed does not mean that the lawsuit was filed for a purpose other than attempting to have Langford removed from the sorority.

For these reasons, Langford's abuse of process claim must be dismissed.

II.    LANGFORD'S MALICIOUS PROSECUTION CLAIM MUST BE DISMISSED BECAUSE THE UNDERLYING CASE WAS NOT DISMISSED ON THE MERITS AND THERE IS A PENDING APPEAL.

In support of the malicious prosecution claim, Langford alleges that opposing counsel "improperly" and without "probable cause" filed suit against in an action that did not require Langford to be named as a party. *See Compl.* at ¶¶ 39, 45.

Malicious prosecution claims began as a remedy for unjustifiable criminal proceedings but, over time, the tort was extended to the wrongful institution of civil suits. *See* W. Prosser, *Law of Torts* § 120, at 889 (Fifth Ed. 1984). In Wyoming, in order to prevail on a claim for malicious prosecution, the Plaintiff must prove: (1) the institution of judicial proceedings; (2) such proceedings having been by or at the instance of the defendant; (3) the termination of such proceedings in favor of the plaintiff; (4) malice in instituting the proceeding; (5) a lack of probable

cause; and (6) the suffering of injury or damage as a result of the action complained of. *Consumers Filling Station Co. v. Durante,* 333 P.2d 691, 694 (Wyo. 1958).

However, not just any termination of the prior action will do. The termination "must address the merits of the suit rather than terminating the suit on procedural or technical grounds." *See Horizon Trades, Inc. v. Givens,* 2020 WL 4919781, at *2-3 (Tenn. App. Aug. 20, 2020); *see also* W. Prosser, Law of Torts s 854 (4th Ed. 1971) (where the original proceeding was ended, without regard to the merits, no such termination may be availed of for the purpose of an action for malicious prosecution). It is important that the previous suit be terminated on the merits so that the court "can conclude with confidence that the termination of the first suit was not only favorable to the defendant in that suit, but also that it demonstrated the first suit's lack of merit. *Doss v. Bank of Am., N.A.,* 857 So. 2d 991, 994-95 (Fla. 5th Dist. App. 2003) (citing RESTATEMENT (SECOND) OF TORTS, § 660, cmt. a.).

Therefore, suits that terminate because of technical or procedural reasons or for reasons other than the merits, are not "bona fide terminations" and do not support malicious prosecution suits. *Doss,* 857 So. 2d at 995; *see also Parrish v. Marquis,* 172 S.W.3d 526, 532-33 (Tenn. 2005) (a dismissal of a prior action based on a successful statute of limitations defense is not a termination on the merits).

Here, Langford's malicious prosecution claim fails because the prior proceedings were not terminated in her favor on the merits. Instead, the United States District Court dismissed the *Verified Complaint* "without prejudice" and declined to decide whether Langford needed to be joined under the Federal Rules of Civil Procedure, stating that Langford's *Motion to Dismiss* would be "Dismissed as Moot." *See Westenbroek,* ECF 31 at 41. As the proceedings against Langford

were not dismissed on the merits, there is no viable malicious prosecution claim against Mr. Knepper or Ms. Craven and this claim must be dismissed.

Furthermore, in order to be a successful termination on the merits, there cannot be an underlying appeal. If an appeal is pending, a malicious prosecution action is premature. *See Frey v. Stoneman*, 722 P.2d 274, 277 (Ariz. 1986). As there is a pending appeal before the United States Court of Appeals, *see* Exhibit 1, Langford's malicious prosecution claim is also premature.

III.    THE ATTORNEYS ARE IMMUNE FROM LIABILITY FROM LANGFORD'S INTRUSION UPON SECLUSION CLAIM PURSUANT TO THE LITIGATION PRIVILEGE.

In the intrusion upon seclusion claim, Langford alleges that opposing counsel "intentionally included private details of Ms. Langford's life" by: (1) disclosing her GPA, sexual preference, private interests, and details about mundane occurrences spun in a way to appear perversely sexually motivated; and (2) publishing private details of her life to the media. *See Compl.* at ¶47-48.

In Wyoming, to state a claim for invasion of privacy, Langford must allege and establish: (1) that Defendants intentionally intruded upon Langford's solitude and private affairs; *and* (2) that a reasonable person would consider Defendants' supposed intrusion to be "highly offensive." *Howard v. Aspen Way Enter., Inc.,* 2017 WY 152, ¶¶ 9-10, 406 P.3d 1271, 1274 (Wyo. 2017). There is no liability unless the interference with the plaintiff's privacy is "substantial," a reasonable person would find the conduct is "highly offensive," and a reasonable person would "strongly object." *Id.* at ¶12, 1274 (quoting RESTATEMENT (SECOND) OF TORTS §652B, cmt. d).

Historically, pursuant to the "litigation privilege" doctrine, lawyers have been granted immunity from civil liability for statements related to litigation that may have injured or offended the opposing party during the litigation process. *See* Lewis Lark Hill, *The Litigation Privilege: Its*

*Place in Contemporary Jurisprudence*, HOFSTRA LAW REVIEW at 1 (2015) (citing Douglas R. Richmond, The Lawyer's Litigation Privilege, 31 AM. J. TRIAL ADVOC. 21, 284 (2007)). This privilege provides complete immunity to attorneys who have made any sort of defamatory communications during litigation. *Id.; see also Drees v. Turner*, 45 So. 3d 350, 358 (Ala. Civ. App. 2010) ("Pertinent statements made in the course of judicial proceedings are absolutely privileged.").

The broad scope of the litigation privilege is memorialized in the RESTATEMENT (SECOND) OF TORTS:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

RESTATEMENT (SECOND) OF TORTS § 586 (1977).

The rationale for the litigation privilege includes: (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) encouraging settlement; and (8) proving attorneys with the utmost freedom in their efforts to secure justice for their clients. *See* Hill, *supra,* at n. 4 (citing Thomas Borton, Comment, *The Extent of the Lawyer's Litigation Privilege*, 25 J. LEGAL PROF. 119, 121 (2001)); *see also Kurczaba v. Pollock*, 742 N.E.2d 425 (Ill. App. 3d 2000) (quoting Restatement (Second) of Torts § 586 cmt. a, at 247 (1977)). The privilege also facilitates the free flow of information between attorneys, clients, and the court system. *See Doe v. Williams McCarthy, LLP*, 92 N.E.3d 607, 612 (Ill. App. 2d 2017).

For the privilege to apply, the communication must bear some relationship to the proposed or pending litigation and it must be in furtherance of that litigation. *Id.* Furthermore, all doubts must be resolved in favor of finding the communication pertinent to the litigation. *Id.* When the privilege applies, "no liability will attach even at the expense of uncompensated harm to the plaintiff." *Id.*

In recent years, the application of litigation privilege has been expanded from its application to defamation suits so that now it provides immunity to attorneys for many other claims, such as invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, fraud, and malicious prosecution. *See, e.g., Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 436 (N.J. 2006) ("[t]he litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims," including "negligence, breach of confidentiality, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, civil conspiracy, interference with contractual or advantageous business relations, and fraud."); *Bassichis v. Flores,* 189 N.E.3d 640, 155-56 (Mass. 2022) (citing *Linder v. Brown & Herrick*, 943 P.2d 758 (Ariz. App. 1997) (litigation privilege applies to claims of fraud); *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) ("the litigation privilege applies in all causes of action, whether for common-law torts or statutory violations"); *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) (the litigation privilege applies to claim of tortious interference with business relationship because "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . [as] long as the act has

some relation to the proceeding"); *Creamer v. Danks*, 863 F.2d 1037, 1037 (1st Cir. 1988) ("[T]he absolute privilege for statements made in the course of judicial proceedings bars not only plaintiffs' defamation claim, but *all* the causes of action, including professional malpractice."); *McCullough v. Kubiak*, 158 So. 3d 739, 741 (Fla. 4th Dist. Ct. App. 2015) ("[T]he circuit court's proper dismissal of the plaintiffs' defamation actions based on absolute privilege also bars the plaintiffs' negligence actions for the same reason."); *Estate of Mayer v. Lax, Inc.,* 998 N.E.2d 238, 249 (Ind. Ct. App. 2013) ("Other torts related to defamation, or relying upon defamatory statements as proof of wrongdoing, may also be barred by the absolute privilege."); *Jones v. Coward*, 666 S.E.2d 877, 880 (N.C. App. 2008) (dismissing plaintiff's claims of intentional infliction of emotional distress and negligence based off allegedly false statements made during judicial proceedings).

With specific regard to the litigation privilege providing immunity for invasion-of-privacy claims, in *Johnson v. Johnson & Bell, Ltd.*, the Illinois Appellate Court upheld the dismissal of plaintiff's case for invasion of privacy, negligence, negligent infliction of emotional distress, and breach of contract, finding that the claims were barred by the absolute litigation privilege. 7 N.E.3d 52 (Ill. App. 1st 2014). In the underlying lawsuit, a plaintiff had filed a personal injury claim against the retail store, Target, and during the proceedings a final pretrial order was entered in the court's electronic filing system that contained personal information about the plaintiff. *Id.* at 54.

Later, the plaintiff sued Target and Target's law firm for invasion of privacy. However, the plaintiff's claims were dismissed because the court found that the litigation privilege applied to the plaintiff's invasion of privacy claims. *Id.* at 56. The court expanded the application of the privilege to the plaintiff's invasion of privacy claims because the litigation privilege "would be

meaningless if a simple recasting of the cause of action . . . could void its effect." *Id.; see also Drees v. Turner,* 45 So.3d 350, 358 (Ala. Civ. App. 2010) (holding that the litigation privilege applies to claims for invasion of privacy); *Ribas v. Clark,* 38 Cal.3d 355, 365 (1985) (the litigation privilege provided immunity for plaintiff's invasion-of-privacy claim when the attorney listened to a phone call).

In this case, Defendants, while representing their clients, filed claims in federal court and alleged that Langford's membership in Kappa Kappa Gamma should be voided because, *inter alia,* Langford's 1.9 cumulative GPA was below the 2.7 GPA minimum for applicants. The truth of all allegations about Langford were sworn to by the clients and documented the clients' concerns regarding Langford's admission.  The federal district court recognized that "*Plaintiffs' requested relief [sought] to void Langford's KKG membership." See Westenbroek, et al. v. Kappa Kappa Gamma, et al.,* ECF 31 at ¶ 40 n. 68.

The *Verified Complaint* contains personal information about Langford, as set forth above, but the litigation privilege provides Defendants with immunity for all statements in the *Verified Complaint* and, thus, this claim must be dismissed.

IV.   LANGFORD'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST BE DISMISSED BECAUSE THE FACTS DO NOT SUPPORT THIS CLAIM.

In support of the intentional infliction of emotional distress claim, Langford alleges that the attorneys engaged in extreme and outrageous conduct unnecessary to their clients' legal interests. *See Compl.* at ¶54. Langford also believes that it was unnecessary in these proceedings to disclose her identity or to encourage any media coverage. *Id.* at ¶ 56.

In order to prevail on an intentional infliction of emotional distress claim, the plaintiff must prove "that the defendant's conduct was extreme and outrageous and that the defendant

intentionally or recklessly caused the plaintiff to suffer severe emotional harm." *Kanzler v. Renner*, 937 P.2d 1337, 1341 (Wyo. 1997) (citing *R.D. v. W.H.,* 875 P.2d 26, 31 (Wyo. 1994)). It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. *Leithead v. Am. Colloid Co.,* 721 P.2d 1059, 1066 (Wyo. 1986).

Wyoming has adopted the Restatement rationale in showing "extreme and outrageous conduct" as, "[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Cook v. Shoshone First Bank*, 126 P.3d 886 (Wyo. 2006) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

The Wyoming Civil Pattern Jury Instructions provides:

It is not enough that the defendant has acted with intent that is wrongful or even criminal, or that defendant has intended to inflict emotional distress, or even that defendant's conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages. There must be more than mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities to constitute intentional infliction of emotional distress. The conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

W.C.P.J.I. 21.01A.

In emotional-injury damages in malpractice cases, the Restatement of the Law Governing Lawyers expresses a similar theme in the context of intentional infliction of emotional distress claims. This is because vigorous advocacy is vital in adversarial proceedings. A lawyer's

partisanship in presenting evidence and argument, drafting and serving pleadings, and comparably pressing a client's case in such a proceeding is not considered extreme and outrageous and is privileged from such tort liability to the opposing party. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 56 cmt. g (2000).

Here, Langford's allegations, taken as true, do not show that opposing counsels' conduct was sufficiently outrageous to satisfy the egregious degree of conduct required for an intentional infliction of emotional distress claim. Plaintiff alleges that the disclosure of Langford's identity and participating in media coverage, among other things, is "extreme and outrageous." Such allegations fail to meet any requisite level of "outrageous," let alone the requisite behavior necessary to plead a claim for intentional infliction of emotional distress under Wyoming law. This is especially so when the attorneys are advocating for clients and presenting arguments in a *Verified Complaint.* Therefore, this claim must be dismissed.

CONCLUSION

Therefore, for the reasons set forth above, it is respectfully requested that this Court grant Defendants' *Motion to Dismiss.*

DATED this 7th day of June 2024.

/s *Anna Reeves Olson*
Anna Reeves Olson, #6-3692
LONG REIMER WINEGAR
242 So. Park Street
Casper, Wyoming 82601
(307) 265-3843
(307) 235-0243 *facsimile*
aolson@lrw-law.com

CERTIFICATE OF SERVICE

The undersigned does certify that a true and correct copy of the foregoing was correctly addressed and served in the following manner on this 7th day of June 2024.

Alex Freeburg                    ☐ U.S. Mail
Freeburg Law LLC                 ☐ Hand Delivered
PO Box 3442                      ☐ Overnight
Jackson, WY 83001                ☐ Email
                                 ☒ File & ServeXpress [E-Service]


                    */s/Anna Reeves Olson*
                    Anna Reeves Olson