Freeburg Law LLC
Alex Freeburg, Bar No. 7-5182
Rachel Berkness, Bar No. 7-5966
PO Box 3442
Jackson, WY 83001
Attorneys for *Plaintiff Artemis Langford*



FILED
MAR 25 2024
DIANE SANCHEZ
CLERK OF THE DISTRICT COURT

# IN THE DISTRICT COURT, FIRST JUDICIAL DISTRICT STATE OF WYOMING, COUNTY OF LARAMIE

Artemis Langford, )
Plaintiff, )
)
v. ) Case No. 2024 - CV - 0202231
)
Law Office of John G. Knepper, LLC, )
John Knepper, individually; )
Longhorn Law, LLC, Casandra Craven, )
individually; and DOES 1-100 )
Defendants. )

COMES NOW Plaintiff Artemis Langford, by and through her undersigned counsel, and for her Complaint against Defendants Law Office of John G. Knepper, LLC, John Knepper, Longhorn Law, LLC, and Casandra Craven, states and alleges as follows:

## INTRODUCTION

Artemis Langford is a young, transgender college student at the University of Wyoming. She applied to join Kappa Kappa Gamma, a sorority that openly accepted transgender applicants, and was accepted by a majority vote.

Defendants then filed suit on behalf of a number of Ms. Langford's sorority sisters in an attempt to recover monetary damages and remove Ms. Langford from her sorority for being transgender. In so doing, Defendants needlessly sued Ms. Langford and injected into their filings exaggerated, false, and humiliating sorority gossip as well as private details about her life. Defendants used these stories not to further their clients' legal

claims, but to raise money for their own attorney fees and to get their fifteen minutes of fame. As the District Court would later find, these details were legally irrelevant and unbefitting in federal court.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Artemis Langford ("Langford") is a resident of Laramie, Wyoming.

2. Defendant Law Office of John G. Knepper, LLC is incorporated in Wyoming with its principal place of business at 1720 Carey Avenue, Suite 590, Cheyenne, Wyoming 82001. Defendant Law Office of John G. Knepper is a law firm that provides legal representation in Wyoming through a licensed Wyoming attorney.

3. Defendant John Knepper is an attorney licensed to practice law in Wyoming and is a citizen of Wyoming. He provides legal services through Law Office of John G. Knepper, LLC.

4. Defendant Longhorn Law, LLC is incorporated in Wyoming with its principal place of business at 109 E. 17th Street, Suite 11, Cheyenne, Wyoming 82001. Defendant Longhorn Law, LLC is a law firm that provides legal representation in Wyoming through a licensed Wyoming attorney.

5. Defendant Casandra Craven is an attorney licensed to practice law in Wyoming and is a citizen of Wyoming. She provides legal services through Longhorn Law, LLC.

6. DOES 1-100 are individuals and/or entities that helped to initiate, cause, or procure the litigation that is the subject of this action.

7. Jurisdiction in this Court is proper under Wyoming Constitution Art. 5, § 10. The amount in controversy exceeds the statutory cap for exclusive Circuit Court jurisdiction under Wyo. Stat. § 5-9-128; thus, by virtue of Wyo. Const. Art. V, § 10, original subject-matter jurisdiction exists with the district courts.

8. Jurisdiction and venue in this action are proper in Laramie County, Wyoming, given that Defendants reside or may be summoned in Laramie County, Wyoming.

9. Exercise of personal jurisdiction is not inconsistent with the Wyoming or United States constitution. Defendants are citizens of Wyoming, they have purposefully availed themselves of the privilege of acting in Wyoming, and the causes of action herein arise for the Defendants' contacts with Wyoming.

## FACTUAL ALLEGATIONS

### Artemis Langford was accepted into an openly transgender-friendly sorority.

10. In fall 2022, University of Wyoming student Artemis Langford applied for membership in Kappa Kappa Gamma, a sorority that openly accepts transgender applicants.

11. Ms. Langford specifically chose to apply to Kappa Kappa Gamma because it accepts transgender applicants, avoiding another sorority on campus that did not specifically indicate whether it accepts transgender applicants.

12. Ms. Langford later learned that she had been accepted into the sorority by a majority vote of its members.

### Defendants agreed to use the legal system to publicly bully and humiliate Ms. Langford while seeking donations to pay for their own attorney fees.

13. On March 27, 2023, Defendants initiated a civil action on behalf of their clients ("the Clients") against Artemis Langford, a college student at the University of Wyoming, Case No. 2:23-cv-00051-ABJ ("the Lawsuit").

14. The Lawsuit alleged that Ms. Langford, as a transgender woman, should not have been permitted to have been voted into the sorority. It asserted claims for breach of

contract and tortious interference with contract as well as a derivative complaint for breach of fiduciary duties against a number of Defendants.

15. The Lawsuit's causes of action did not require Defendants to allege any details about Ms. Langford whatsoever other than that she had been voted into the sorority and was a transgender woman.

16. Defendants stated no cause of action against, nor did they seek any relief from, Ms. Langford.

17. Instead, Defendants claimed that they sued Ms. Langford because they believed that she was likely a necessary party given that success on the merits would result in Ms. Langford's removal from the sorority.

18. In the Lawsuit's Complaint, Defendants raised numerous allegations of fact that were irrelevant to their legal claims and were not used to support their causes of action. Instead, the allegations appeared to be an attempt to spark public outrage at Ms. Langford's expense. These include, among others:

    a. Unflattering and embarrassing descriptions of Ms. Langford's height, weight, and physical appearance;

    b. Ms. Langford's alleged G.P.A.;

    c. A discredited, drunken rumor that Ms. Langford became visibly aroused in the presence of her sorority sisters;

    d. The inaccurate suggestion that Ms. Langford had not undergone any medical transition;

    e. The inaccurate suggestion that Ms. Langford had not undergone any legal transition;

    f. Personal details about Ms. Langford's sexual orientation and dating life;

4

g. Implications that Ms. Langford's mundane actions must have been perversely sexually motivated.

**Defendants used these allegations to gain significant media attention in connection with the Lawsuit.**

19. Defendants actively participated in bullying Ms. Langford in the media. Defendants and their clients agreed to interviews on *The Laura Ingraham Angle*, *The Megyn Kelly Show*, and Fox News' *America Reports* and cooperated with print media sources to publish hurtful stories about Ms. Langford.

20. During the interviews, Defendants mocked Ms. Langford's physical appearance, made jabs about her G.P.A., and attempted to paint Ms. Langford as a sexual deviant who had joined a transgender-friendly sorority simply to gain access to women.

21. None of these actions were proper in the regular course of the Lawsuit, but, upon information and belief, were instead tactics to drive donations to pay Defendants' legal fees.

22. Defendants further requested that the public donate to a crowdfunding site which sought to raise $250,000 to pay their own attorney fees.

23. In addition to crowdfunding, Defendants also raised money for their own attorney fees through a secret, password-protected website which funneled money through a group called "Sapphire Syndicate."

24. Defendants further raised money for their own attorney fees through high profile social media posts and television appearances by Caitlyn Jenner.

25. Further, upon information and belief, these tactics were used to gain publicity for Defendants and their law firms.

//

5

**Defendants needlessly disclosed Ms. Langford's full, legal name in court filings.**

26. Initially, Defendants did not use Ms. Langford's name, choosing instead to refer to her by the pseudonym "Terry Smith."

27. Defendants claimed in court filings that both their clients and Ms. Langford should be permitted to proceed under pseudonyms due to the "significant psychological distress" as well as "threats, harassments, and safety concerns" that may arise if their true names are disclosed.

28. On April 14, 2023, the U.S. District Court for the District of Wyoming ordered Defendants "to file an amended complaint that substitutes [their clients'] real names." The District Court did not require Defendants to disclose Ms. Langford's name.

29. On April 20, 2023, Defendants filed an amended complaint which needlessly disclosed Ms. Langford's full, legal name despite previously acknowledging that doing so may cause her significant psychological distress and could put her in danger.

30. Ms. Langford has since been subject to significant media attention during which her name and likeness are used in connection with disparaging stories about her.

**Defendants' legal claims against Ms. Langford were dismissed, with the court referring to allegations against Ms. Langford as "unsubstantiated" and "unbefitting in federal court."**

31. On August 25, 2023, the U.S. District Court dismissed the Lawsuit. In so doing, it noted "the irrelevancy of Langford's alleged behavior."

32. The court further indicated that the allegations had "no bearing on [Defendants'] legal claims."

33. The court further recognized that the allegations were "unsubstantiated" and called them "unbefitting in federal court."

### FIRST CLAIM: ABUSE OF PROCESS
### AGAINST DEFENDANTS

34. Plaintiff incorporates by reference all paragraphs in this *Complaint* as if fully set forth herein.

35. Defendants engaged in willful acts not proper in the regular course of legal proceedings by, amongst other things:

    a. Bringing suit against Ms. Langford unnecessarily;

    b. Including irrelevant and unsubstantiated allegations against Ms. Langford in court filings;

    c. Needlessly disclosing Ms. Langford's name in court filings;

    d. Needlessly disclosing private details about Ms. Langford in court filings;

    e. Implying that Ms. Langford is a sexual deviant; and

    f. Participating and encouraging negative media coverage regarding Ms. Langford.

36. Defendants' actions were motivated by the ulterior purposes of raising money for their own attorney fees and gaining publicity.

37. Defendants' actions have caused Ms. Langford to suffer significant damages.

### SECOND CLAIM: MALICOUS PROSECUTION
### AGAINST DEFENDANTS

38. Plaintiff incorporates by reference all paragraphs in this *Complaint* as if fully set forth herein.

39. Defendants improperly instituted judicial proceedings against Ms. Langford in an action that did not require Ms. Langford to be named as a party and did not require allegations related to Ms. Langford's looks, sexual orientation, or conduct.

40. Such legal proceedings were by or at the instance of Defendants as the attorneys who were charged with advising their clients which claims to pursue against which parties.

41. Such legal proceedings were terminated in favor of Ms. Langford.

42. Defendants acted with malice in instituting the legal proceedings against Ms. Langford because doing so was motivated by the improper motive of increasing publicity for the suit and thereby increasing donations to fund Defendants' legal fees.

43. Defendants lacked probable cause to institute the original proceedings against Ms. Langford.

44. Plaintiff suffered significant damages as a result of Defendants' conduct.

### THIRD CLAIM: INTRUSION UPON SECLUSION
### AGAINST DEFENDANTS

45. Plaintiff incorporates by reference all paragraphs in this *Complaint* as if fully set forth herein.

46. Defendants intentionally included private details of Ms. Langford's life in the Lawsuit, despite those details being unrelated to the legal claims of the Clients.

47. These details included private information related to Ms. Langford's G.P.A., sexual preference, private interests, and details about mundane occurrences spun in a way to appear perversely sexually motivated.

8

48. Defendants further published and caused to be published private details of Ms. Langford's life in the media.

49. Such details concerned Ms. Langford's private affairs and/or concerns.

50. Defendants' actions intruded upon Ms. Langford's solitude and/or seclusion.

51. The intrusion perpetrated by Defendants would be highly offensive to a reasonable person.

52. Ms. Langford suffered significant damages as a result of Defendants' conduct.

## FOURTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS

53. Plaintiff incorporates by reference all paragraphs in this *Complaint* as if fully set forth herein.

54. Defendants engaged in extreme and outrageous conduct unnecessary to their clients' legal interests by injecting allegations about Ms. Langford into a lawsuit that did not require them and needlessly disclosing Ms. Langford's identity, among other things.

55. Through these actions, Defendants implied that Ms. Langford had engaged in sexual misconduct.

56. Defendants further encouraged and participated in media coverage related to the unnecessary allegations against Ms. Langford.

57. Defendants' conduct either intentionally and/or recklessly caused Ms. Langford severe emotional distress.

58. Ms. Langford suffered significant damages as a result of Defendants' conduct.

## DAMAGES

59. Plaintiff incorporates by reference all paragraphs in this *Complaint* as if fully set forth herein.

9

60. As a direct and proximate result of Defendants' actions, Ms. Langford suffered significant damages, including:

   a. Past, present and future physical, mental, and emotional pain and suffering damages, in an amount to be proven at trial;

   b. Past, present and future loss of enjoyment of life in an amount to be proven at trial;

   c. Past, present and future loss of income and earning capacity in an amount to be proven at trial;

   d. Other economic loss;

   e. All allowable costs, expenses, and fees associated with this litigation; and

   f. All other damages allowed under the laws of the State of Wyoming.

## PRAYER FOR RELIEF

61. WHEREFORE, Plaintiff Artemis Langford, requests this Court grant judgment as follows:

   a. Judgment against Defendants for economic damages in an amount consistent with the allegations contained herein and to be proven at trial;

   b. Judgment against Defendants for non-economic damages in an amount consistent with the allegations contained herein and to be proven at trial;

   c. Judgment against Defendants for punitive damages in an amount consistent with the allegations contained herein and to be proven at trial;

   d. Nominal damages; and

//
//
//

  e.  Judgment for costs, expenses, fees, interest, and other such further relief as the Court deems just and equitable.

Dated March 25, 2023.

              /s/ Alex Freeburg
              Alex. F. Freeburg, Bar No. 7-5182
              Freeburg Law, LLC
              Box 3442
              Jackson, WY 83001