Stuart R. Day (#6-3081)
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:    (307) 265-0700
Facsimile:    (307) 266-2306
E-Mail:    sday@wpdn.net

Natalie M. McLaughlin (*Pro Hac Vice*)
Brian W. Dressel (*Pro Hac Vice*)
VORYS, SATER, SEYMOUR AND PEASE, LLP
52 East Gay Street
Columbus, OH 43215
Telephone:    (614) 464-5452
Email:    nmmclaughlin@vorys.com
    bwdressel@vorys.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| HANNAH HOLTMEIER, ALLISON COGHAN, and HALEY RUTSCH, on behalf of themselves and derivatively on behalf of KAPPA KAPPA GAMMA FRATERNITY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 23-CV-00051-ABJ |
| KAPPA KAPPA GAMMA FRATERNITY, MARY PAT ROONEY, MARIA BROWN, NANCY CAMPBELL, BARB GOETTELMAN, LIZ WONG, KYLE DONNELLY, BETH BLACK, and JANE DOES 1-4 | ) ) ) ) ) ) | |
| Defendants. | ) | |

---

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND
### AMENDED COMPLAINT

---

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

III. DISCUSSION ..................................................................................................... 3

    A.   Standard of Review ................................................................................. 4

    B.   Plaintiffs are Still Unable to Plausibly Allege a Derivative Claim ........................ 5

        1.   Plaintiffs Fail to Allege that They Satisfy the Requirements of Rule 23.1 ................................................................................... 6

        2.   Judicial Non-Intervention Principles Dictate Dismissal of the Derivative Claims ...................................................................... 7

            a.   Ohio Law Defers to Reasonable Interpretations by Voluntary Organizations of Their Own Documents for Breach of Fiduciary Duty Claims .................................. 8

            b.   Kappa's Interpretation of "Women" to Include Trans Women Is Reasonable .................................................. 10

            c.   Deferring to Voluntary Organizations on Matters of Internal Governance at the Pleading Stage Is the Only Way to Maintain a Workable Status Quo for Both Courts and Organizations ................................................. 12

        3.   The Allegations Relating to the Chapter Membership Decision at Wyoming Do Not Support a Shareholder Derivative Claim Against Former Fraternity Council ...................................................... 12

        4.   Plaintiffs' Shareholder Derivative Claim for Breach of Fiduciary Duty for Ultra Vires Acts Duplicates the Shareholder Derivative Claim for Breach of Fiduciary Duty and Should Be Dismissed for the Same Reasons ................................................................. 14

        5.   The First Amendment Further Shields Kappa from Litigation over Its Own Membership Decisions ....................................... 15

    C.   Plaintiffs' Breach of Contract Claim Against Kappa Fails ................................. 16

    B.   Plaintiffs' Fraud-in-the-Inducement Claim Fails ............................................ 17

    F.   All Dismissals Should Be with Prejudice ...................................................... 21

    G.   Plaintiffs Have Failed to Serve or Attempt Service on All Defendants .............. 22

IV.  CONCLUSION ................................................................................................... 22

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4

*Barrash v. American Ass'n of Neurological Surgeons, Inc.*, 2013 U.S. Dist. LEXIS 114605 ..... 10

*Bodiford v. Krause*, No. 1:23 CV 1191, 2023 U.S. Dist. LEXIS 169907 (N.D. Ohio Sept. 25, 2023) ........................................................................................................ 11

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ........................................................ 15

*Brosz v. Fishman*, 99 F. Supp. 3d 776 (S.D. Ohio 2015) ............................................. 9

*Campbell v. Am. Psychological Ass'n*, 68 F. Supp. 2d 768 (W.D. Tex. 1999) .............. 9

*Carlson v. Rabkin*, 789 N.E.2d 1122 (Ohio Ct. App. 2003) ......................................... 5

*Carr v. Acacia Country Club Co.*, 970 N.E.2d 1075 (Ohio Ct. App. 2012) ................. 14

*Elworthy v. First Tenn. Bank*, 391 P.3d 1113 (Wyo. 2017) ........................................ 18

*Finlay v. Duffy*, 94 N.E.2d 466 (Ohio Ct. App. 1950) ............................................... 10

*Flandro v. Salt Lake County Jail*, 53 F. App'x 499 (10th Cir. 2002) ........................... 5

*Halling v. Yovanovich*, 391 P.3d 611 (Wyo. 2017) .................................................... 17

*Hecox v. Little*, 79 F.4th 1009 (9th Cir. 2023) ..................................................... 11, 12

*Howard v. Covenant Apostolic Church*, 705 N.E.2d 385 (Ohio Ct. App. 1997) ........... 5

*Kadel v. Folwell*, 620 F. Supp. 3d 339 (M.D.N.C. 2022) .......................................... 11

*Levang, et al. v. Kappa Kappa Gamma, et al.*, U.S. District Court for the District of Wyoming, No. 2:24-cv-00267-ABJ ........................................................................ 7

*Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 216 N.E.3d 1 (Ohio Ct. App. 2023) ... 17

*McKinney v. Granite Park Fabrication*, No. 19-CV-00266-ABJ, 2020 U.S. Dist. LEXIS 257239 (D. Wyo. Mar. 12, 2020) ........................................................................ 4

*Moore v. Christ's Christian Fellowship Church, Inc.*, 875 N.E.2d 121 (Ohio Ct. App. 2007) ..................................................................................................................... 5

*Mortgage Elec. Registration Sys. v. Mosley*, 2010-Ohio-2886, 2010 Ohio App. LEXIS 2380 (Ohio Ct. App. 2010) ................................................................................ 18

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ........................................................................ 15

*Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, No. 2:23-cv-01595, 2023 U.S. Dist. LEXIS 131707 (S.D. Ohio Jul. 28, 2023) ................................................ 11

*Putka v. First Catholic Slovak Union*, 600 N.E.2d 797 (Ohio Ct. App. 1991) .............................. 8

*Qz'Etax v. Ortiz*, 170 F. App'x 551 (10th Cir. 2006) ................................................................. 12

*Redden v. Alpha Kappa Alpha Sorority, Inc.*, No. 1:09CV705, 2010 U.S. Dist. LEXIS 822 (S.D. Ohio Jan. 6, 2010) ................................................................................................... 8

*Roeber v. Gateway Found.*, No. 19-cv-200 ABJ, 2020 U.S. Dist. LEXIS 164907 (D. Wyo. Aug. 17, 2020) .................................................................................................................. 20

*Russell v. United Missionary Baptist Church*, 637 N.E.2d 82 (Ohio Ct. App. 1994) ................... 5

*Sandesara v. Peco II, Inc.*, 2010 Ohio Misc. LEXIS 565 (Ohio Ct. Common Pleas. 2010) .......... 6

*Sayyah v. O'Farrell*, No. CA2000-06-017, 2001 Ohio App. LEXIS 1914 (Ohio Ct. App. Apr. 30, 2001) ............................................................................................................... 5, 6

*Seale v. Peacock*, 32 F.4th 1011 (10th Cir. 2022) ..................................................................... 22

*Siltstone Servs., LLC v. Guernsey Cty. Cmty. Dev. Corp.*, 2020-Ohio-3878 (Ohio Ct. App. 2020) ........................................................................................................................... 15

*Stibora v. Greater Cleveland Bowling Ass'n*, 577 N.E.2d 1175 (Ohio Ct. App. 1989) .......... 9, 10

*Strah v. Lake Cnty. Humane Soc'y*, 631 N.E.2d 165 (Ohio Ct. App. 1993).................................. 9

*Tucker v. Young*, 790 N.E.2d 828, 148 Ohio App.3d 254 (Ohio Ct. App. 2003) .......................... 9

*Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019 (10th Cir. 2021) ................................................. 12

*United States v. Price*, 84 F.4th 738 (7th Cir. 2023) ................................................................. 12

*Universal Drilling Co., LLC v. R&R Rig Serv., LLC*, 271 P.3d 987 (Wyo. 2012)....................... 18

*Wellendorf v. Chauffeurs, Teamsters, etc., Local Union No. 377*, No. 87 C.A. 37, 1988 Ohio App. LEXIS 2166 (Ohio App. 1988)....................................................................... 10

*Westenbroek v. Kappa Kappa Gamma*, U.S. Court of Appeals for the Tenth Circuit, No. 23-8065 ............................................................................................................................. 7

*White v. Pitman*, 156 N.E.3d 1026 (Ohio Ct. App. 2020) ......................................................... 19

*Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022)................................................................... 12

*Zalvin v. Ayers*, 157 N.E.3d 256 (Ohio Ct. App. 2020)............................................................... 9

**Statutes**

R.C. § 1702.12(I) ................................................................................................................ 6

R.C. § 1702.12(I)(1)(c) ...................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 3

Fed. R. Civ. P. 23.1 ........................................................................................................ 6, 7

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 23

# I.    INTRODUCTION

Much has changed in the more than two years since this case was initially filed.  The matter has bounced between this Court and the Tenth Circuit.  Four of the six named Plaintiffs have left the case and a new one has joined.  Each of the current and former Plaintiffs and the former student defendant who attended the University of Wyoming have graduated.  As is done every two years, a new Fraternity Council was elected in June 2024.  Since that election, Mary Pat Rooney, at whom Plaintiffs directed so much of their ire, has not been a member of Council.  Plaintiffs have abandoned their claims against some Defendants and added claims against new Defendants.  A duplicative derivative case was also filed in Ohio against all these same defendants and transferred to this Court.  But, through it all, this remains a case where Plaintiffs seek to have a federal court dictate to a ***private organization*** how inclusive it can be in ***defining its own membership***.  As was the case when Defendants moved to dismiss this case two years ago, Plaintiffs have no legal right to have their sorority's leadership adopt their personal definition of who is and is not a "woman," and it is not the role of the courts to police the membership decisions of private organizations.  As such, the Second Amended Complaint does not cure the deficiencies that led to dismissal of the First Amended Complaint, and it is now clear any further attempts at amendment would be futile.

Moreover, the legal defects in the Second Amended Complaint extend beyond their failure to cure the defects identified in the Court's dismissal of the First Amended Complaint.  Plaintiffs fail to plausibly plead revised contractual claims and seek to maintain claims against unnamed "Jane Doe" defendants and Kappa's former Panhellenic Delegate without alleging any wrongdoing on those individuals' behavior.  For all of these reasons, as explained below, the Court should dismiss the Second Amended Complaint with prejudice as any further attempt at amendment would be futile.

## II.    BACKGROUND

By this point, the Court is familiar with the background of this case.  On March 27, 2023, seven then-current members of the Gamma Omicron chapter of the Kappa Kappa Gamma Fraternity ("Kappa") filed the Complaint alleging a derivative claim, breach-of-contract claim, tortious-interference claim, and direct cause of action against Kappa, Rooney (then Kappa's Fraternity Council President), the Kappa Kappa Gamma Building Co., and a trans woman who had been admitted to the chapter.  (*See* ECF No. 1.)  The initial Plaintiffs sought to proceed anonymously.

After the Court rejected Plaintiffs' attempt to proceed anonymously and motion for reconsideration of that decision, Plaintiffs filed the First Amended Complaint, which asserted functionally identical claims on behalf of six Plaintiffs, Jaylyn Westenbroek, Hannah Holtmeier, Allison Coghan, Grace Choate, Madeline Ramar, and Megan Kosar, on April 20, 2023. (*See* ECF No. 6.)  The Court granted the Kappa Defendant's Motion to Dismiss on August 25, 2023.  (*See* ECF No. 31.)  Though the dismissal was without prejudice, Plaintiffs appealed the decision to the United States Court of Appeals for the Tenth Circuit.

After oral argument, the Tenth Circuit granted a motion by Defendants to dismiss the appeal for lack of appellate jurisdiction, agreeing that it did not have jurisdiction to consider an appeal of a dismissal without prejudice.  (*See* ECF No. 39.)  On May 9, 2025, this Court ordered Plaintiffs to either file a Second Amended Complaint within 30 days or else have the prior order converted to a dismissal with prejudice.  (ECF No. 57.)  On June 9, 2025, original Plaintiffs Holtmeier and Coghan, along with new Plaintiff Haley Rutsch, filed a Second Amended Complaint against original Defendants Kappa and Rooney and new Defendants Maria Brown, Nancy

Campbell, Barb Goettelman, Liz Wong, Kyle Donnelly, and Beth Black.[1] Plaintiffs also sued four "Jane Doe" Defendants. The Second Amended Complaint asserts two derivative claims, one breach-of-contract claim, and one claim for fraud in the inducement to enter a contract.[2]

As discussed below, the Second Amended Complaint does not cure the issues the Court identified in the First Amended Complaint, and it is apparent after Plaintiffs' repeated representations to the Tenth Circuit and two years of litigation that further amendments would be futile. As such, the Court should dismiss the Second Amended Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III. DISCUSSION

Plaintiffs' Second Amended Complaint fails to state any claim on which the Court can grant relief. Like those that preceded, the Second Amended Complaint depends entirely on the premise that the word "women" can only be defined to include people assigned the female gender at birth and must exclude trans women. As the Court is already aware, Kappa's governing documents do not so define the term, and Kappa's governing documents explicitly grant Fraternity Council the duty to interpret Kappa's Bylaws. Furthermore, a federal court entertaining purported

---

[1] Brown and Wong are listed as Vice Presidents and members of the Fraternity Council and Black is listed in the caption as the Panhellenic Delegate, though they have not held these roles since June 29, 2024. Plaintiffs were aware of these facts. They attended Kappa's national conference where new Fraternity Council was sworn in, and Plaintiffs' counsel was notified via email on May 2, 2025 that the leadership change had occurred in June 2024.

[2] As is the case with the prior Complaints, the Second Amended Complaint did not specify which claims were asserted against which Defendants, even though it would be legally impossible to assert all claims against all Defendants. Plaintiffs fail to specifically identify the Defendants to each claim despite the Court's prior order that, in the case of a Second Amended Complaint, Plaintiffs should "highlight the Defendant(s) [they] sue under each count." (Order, ECF No. 31 at 40.) Despite inconsistencies in their pleadings that sometimes make it confusing to determine against whom Plaintiffs seek relief, Kappa has endeavored to identify the Defendants for each claim.

derivative claims and ordering a private organization to change its own interpretation of its bylaws and deny admission to members it would otherwise choose to admit oversteps the deference Ohio law affords to private voluntary organizations when they interpret their own bylaws and violates the associational rights of the organization under the First Amendment. There is also a presumption under Ohio law that Kappa's Fraternity Council acted in good faith in accordance with their fiduciary obligations in interpreting Kappa's bylaws.

Plaintiffs' breach-of-contract claim fails for similar reasons. Plaintiffs similarly premise the claim on the idea that when Kappa bylaws and other documents use the terms "woman" or "women," they can only refer to cisgender women. As the Court has already recognized, that is not the case and the breach-of-contract claim fails. Plaintiffs' final claim, for fraud in the inducement, fails because Plaintiffs have not alleged a false statement by any Defendant or that any Defendant concealed material information.

Finally, Plaintiffs are unable to maintain this action against the unnamed "Jane Doe" Defendants or Defendant Black, who was not a member of Fraternity Council, as Plaintiffs have not alleged claims or wrongdoing against any of them.

## A. Standard of Review

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "should assume [the] veracity" of factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *McKinney v. Granite Park Fabrication*, No. 19-CV-00266-ABJ, 2020 U.S. Dist. LEXIS 257239, at *5 (D. Wyo. Mar. 12, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679). In making this assessment,

the Court is not bound to accept any legal conclusion or opinion alleged in the complaint as true. *Flandro v. Salt Lake County Jail*, 53 F. App'x 499, 500 (10th Cir. 2002) ("[w]e will accept the complainant's allegations of fact as true, but we will not accept assertions or opinions or conclusions where no facts are alleged to support them").

### B.   Plaintiffs are Still Unable to Plausibly Allege a Derivative Claim

The first count of the Second Amended Complaint asserts a claim for breach of fiduciary duty on behalf of Kappa.  Though it fails to invoke Ohio Revised Code 1702.12(I),[3] that type of claim can only be advanced under that non-profit shareholder derivative statute and is therefore presumably against the former members of Kappa's Fraternity Council named as Defendants in this case.  The second count asserts a near identical claim for "breach of fiduciary duty by ultra vires acts" pursuant to 1702.12(I).  It is not apparent what acts independent of the first cause of action constitute the "ultra vires" acts in the second cause of action.

Additionally, the Prayer for Relief in Count One and some of the Prayer for Relief in Count Two nonsensically seek relief not applicable in derivative claims because they seek an order enjoining Kappa from violating its governing documents, requiring removal of individuals who are not Defendants in this case, and expelling men from membership until Kappa conducts a vote by delegate of its membership converting Kappa to a co-ed organization.  As those claims are only

---

[3] These claims are very rare.  As far as cases Defendants have been able to locate, this Court's 2023 Order was only the sixth decision to issue in a shareholder derivative claim under Ohio Revised Code 1702.12(I)(1)(c), the statute that allows members of a non-profit to sue that organization derivatively.  As to the other five cases, one was dismissed against the members because they had no standing, and the other four were dismissed for failing to satisfy the procedural prerequisites for a derivative action.  *See Moore v. Christ's Christian Fellowship Church, Inc.*, 875 N.E.2d 121 (Ohio Ct. App. 2007); *Carlson v. Rabkin*, 789 N.E.2d 1122 (Ohio Ct. App. 2003); *Sayyah v. O'Farrell*, No. CA2000-06-017, 2001 Ohio App. LEXIS 1914 (Ohio Ct. App. Apr. 30, 2001); *Howard v. Covenant Apostolic Church*, 705 N.E.2d 385 (Ohio Ct. App. 1997); *Russell v. United Missionary Baptist Church*, 637 N.E.2d 82 (Ohio Ct. App. 1994).

against Fraternity Council, relief against Kappa would be unavailable even if Plaintiffs could prevail on the claims.

1.    Plaintiffs Fail to Allege that They Satisfy the Requirements of Rule 23.1

Defendants first note that for both these claims under 1702.12(I), Plaintiffs must satisfy the requirements of Ohio Civil Rule 23.1 before they can pursue either claim because Plaintiffs are claiming to advance these claims on behalf of Kappa.  Plaintiffs must: "(1) spell out the efforts made to have [the Fraternity Council] take the action demanded; (2) explain why they failed in this effort or did not make it; and (3) show that they 'fairly and adequately' represent the interests of other shareholders 'similarly situated.'"  *Sayyah v. O'Farrell*, No. CA2000-06-017, 2001 Ohio App. LEXIS 1914, at *13-14, 2001 WL 433789 (Ohio Ct. App. 2001).

That Plaintiffs have delayed moving this case forward and that the composition of Fraternity Council changed one year ago becomes an issue on this point.  The Second Amended Complaint contains no evidence of efforts by Plaintiffs to discuss their derivative claims with Kappa's new Fraternity Council.  It also does not indicate why Plaintiffs have chosen to pursue litigation instead of attempting to address their issues internally.  Plaintiffs also do not make any attempt to show why they fairly and adequately represent the interests of other shareholders similarly situated, especially given their delay and chosen strategies, as well as the other pending duplicative litigation.  Ohio law presumes a board's decisions are made in the best interests of the organization and that those decisions are entitled to deference, so the requirements of Civil Rule 23.1 must be met to pursue a shareholder derivative claim or dismissal is warranted.  *See Sandesara v. Peco II, Inc.*, No. CV-720332, 2010 Ohio Misc. LEXIS 565, *12 (Ohio Ct. Common Pleas 2010).

2.    Judicial Non-Intervention Principles Dictate Dismissal of the Derivative
      Claims

Ultimately, the Court can dispose of the two derivative claims on the same grounds upon which it relied to dismiss the derivative claim in the First Amended Complaint: the protection of Kappa's associational rights under the First Amendment and Ohio law's deference to Kappa in interpreting its own governing documents.  The Court has already ruled on these issues, and the Second Amended Complaint does not offer a basis for the Court to depart from its prior ruling. Plaintiffs' derivative claims depend on a finding that Kappa's Bylaws and governing documents categorically exclude trans women from membership.  In its 2023 Order, however, the Court held that the Bylaws do *not* limit the definition of the term "woman."  (*See* Order, ECF No. 31 at 4 ("no bylaw defines 'woman'").)  In dismissing the First Amended Complaint, the Court observed that Plaintiffs "cannot point the Court to the bylaw that defines 'woman' the way they wish."  (*Id.* at 31.)[4]  The Second Amended Complaint does not cure this issue, failing to identify any Bylaw that limits the term "woman" to only those who are cisgender.

The central issue in this case—what does it mean to be a woman—is one of great public interest.  It is of no surprise that everyone in this large and diverse organization of over 210,000 individuals does not interpret "women" the same way.  But, as it did not when considering whether to dismiss the First Amended Complaint, the Court need not "define 'woman'" to resolve this Motion.  (*See id.* at 3.)  Rather, the Court only needs to determine whether Kappa has a right to reach its own interpretation of the term as it is used in Kappa's governing documents.  Kappa's

---

[4] Prior to the transfer to this Court, the Southern District of Ohio also probed on this issue, ordering the Levang Plaintiffs to file a notice with pin cites noting, "where in the Fraternity's articles of incorporation, bylaws, or rules the term 'women' is defined."  (*Levang, et al. v. Kappa Kappa Gamma, et al.*, U.S. District Court for the District of Wyoming, No. 2:24-cv-00267-ABJ, ECF 28 at 2.)  The Levang Plaintiffs were unable to provide any such pin cite where "women" is defined. (*Levang, et al. v. Kappa Kappa Gamma, et al.*, U.S. District Court for the District of Wyoming, No. 2:24-cv-00267-ABJ, ECF 31 at 3.)

Fraternity Council are the volunteers elected by the organization's members to serve as the Board and were explicitly given the duty under Kappa's Standing Rules of "[i]interpreting the Fraternity *Bylaws* and *Standing Rules*." (See Order, ECF No. 31 at 32.) Plaintiffs ask this Court to elevate their interpretation above that of Fraternity Council. But this Court must defer to Fraternity Council's interpretation because deference is required by Kappa's governing documents and Ohio law. As the Court has already held, Ohio law protects Kappa's right to interpret its governing documents without being subjected to extensive litigation.

> a.   *Ohio Law Defers to Reasonable Interpretations by Voluntary*
> *Organizations of Their Own Documents for Breach of Fiduciary*
> *Duty Claims*

Ohio law affords private organizations significant deference when they reasonably interpret their own governing documents. "Generally speaking, in matters of policy, discipline or internal economy of a voluntary association, wherein members have mutually agreed upon a charter or rules, the decision of the association itself is supreme." *Putka v. First Catholic Slovak Union*, 600 N.E.2d 797, 802 (Ohio Ct. App. 1991) (*see also* Order, ECF No. 31 at 26–28). Courts will only disturb a private organization's interpretation of its own bylaws "when there has been some palpable violation of the constitution or laws of the corporation." *Redden v. Alpha Kappa Alpha Sorority, Inc.*, No. 1:09CV705, 2010 U.S. Dist. LEXIS 822, at *14 (S.D. Ohio Jan. 6, 2010) (internal citation omitted). Conversely, courts do not serve as arbiters when members are simply arguing that their interpretation of a private organization's bylaws is correct and the organization's is incorrect. *Stibora v. Greater Cleveland Bowling Ass'n*, 577 N.E.2d 1175, 1179 (Ohio Ct. App. 1989).

Courts presume a non-profit organization's directors act in the best interests of the organization. When an aggrieved shareholder brings a derivative action alleging a breach of fiduciary duty, the shareholder must show that the alleged wrongdoers "have acted in bad faith or

without the requisite objectivity," and failure to do so can result in dismissal at the pleading stage. *Zalvin v. Ayers*, 157 N.E.3d 256, 263 (Ohio Ct. App. 2020) (internal citations omitted). In assessing a derivative suit for breach of fiduciary duty, "it is presumed that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation." *Brosz v. Fishman*, 99 F. Supp. 3d 776, 785 (S.D. Ohio 2015) (internal citation omitted). "Courts will not interfere with the internal management of a corporation not for profit in the absence of proof that the managing officers are acting in excess of their corporate power, or that they are guilty of collusion or fraud." *Strah v. Lake Cnty. Humane Soc'y*, 631 N.E.2d 165, 171 (Ohio Ct. App. 1993) (internal citation omitted); *see also Tucker v. Young*, 790 N.E.2d 828, (Ohio Ct. App. 2003).

Judicial non-intervention in the decisions of a private organization is important because, "if the courts were to interfere [every time] some member, or group of members, had a grievance, real or imagined, the non-profit, private organization would be fraught with frustration at every turn and would founder in the waters of impotence and debility." *Campbell v. Am. Psychological Ass'n*, 68 F. Supp. 2d 768, 779 (W.D. Tex. 1999) (internal quotation omitted). As such, private organizations have the right to interpret their own governing documents:

> The right of a voluntary club or association to interpret its own organic agreements . . . is not inferior to its right to make and adopt them, and an individual, by becoming a member, subjects himself, within legal limits, to the association's power to administer as well as its power to make its rules . . . the requirements for judicial review are more than a mere breach of [an association's] own policies.

*Barrash v. American Ass'n of Neurological Surgeons, Inc.*, No. 4:13-cv-1054, 2013 U.S. Dist. LEXIS 114605, at *16 (internal citations omitted).

Allowing the pursuit of a derivative claim based on a challenge to any bylaw interpretation would lead to unending litigation where organizations would need to conduct discovery and litigate

over every interpretation of its bylaws and do so without any sort of deference. And, at the end of the litigation process, courts would be tasked with telling private organizations how to interpret their bylaws in the first instance, thus drastically expanding the rule of the judiciary in the lives of ordinary people. Ohio law precludes this result.

> b.    *Kappa's Interpretation of "Women" to Include Trans Women Is Reasonable*

A voluntary organization's right to interpret and administer its bylaws without direction or interference by the courts remains as sacred as the right to make them. *Stibora*, 577 N.E.2d at 1179. Therefore, "[C]ourts will not assume to act in place of those authorized to interpret the constitution and by-laws of a voluntary association unless those upon whom the duty is placed acted in an ***arbitrary and unreasonable*** manner. This is also true with respect to the determination of all questions of policy and internal management." *Wellendorf v. Chauffeurs, Teamsters, etc., Local Union No. 377*, No. 87 C.A. 37, 1988 Ohio App. LEXIS 2166, at *17 (Ohio Ct. App. 1988) (finding that the union's construction of its own governing documents was reasonable and court would defer to this interpretation) (citing *Finlay v. Duffy*, 94 N.E.2d 466, 469 (Ohio Ct. App. 1950)) (emphasis added). Plaintiffs' entire case depends on the conclusion that trans women are not women. But this is not a case where the Court needs to make an authoritative statement on that issue. Instead, this Court only needs only to determine if Kappa's interpretation that the term "woman" includes trans women is reasonable and non-arbitrary.

"Currently, over 1.6 million adults and youth identify as transgender in the United States, or roughly 0.6 percent of Americans who are 13 years old or older." *Hecox v. Little*, 79 F.4th 1009, 1016 (9th Cir. 2023). As evidence that Kappa's interpretation of the word "woman" to include trans women is reasonable, the Court can look to courts across the country that have reached the same inclusive definition as Kappa. "A transgender woman ***is a woman*** who was

assigned male at birth." *Bodiford v. Krause*, No. 1:23 CV 1191, 2023 U.S. Dist. LEXIS 169907, at *6 (N.D. Ohio Sept. 25, 2023) (citation omitted) (emphasis added); *see also Kadel v. Folwell*, 620 F. Supp. 3d 339, 376 (M.D.N.C. 2022) ("[t]ransgender men are men; transgender women are women").

One Ohio court recognized that "biological markers that compromise an individual's 'biological sex'" include "*inter alia* their organs, their chromosomes, their hormones, and their gender identity." *Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, No. 2:23-cv-01595, 2023 U.S. Dist. LEXIS 131707, at *23 (S.D. Ohio Jul. 28, 2023). That court further explained:

> [B]iological sex is not quite as binary as that definition presumes. Instead, the concept of "biological sex" encompasses a multitude of biological components (including gender identity) that often diverge in the same individual; for any given person, some of their biological markers may align with maleness while other markers align with femaleness . . . Sometimes, that divergence manifests in obvious physical ways: for example, in intersex individuals whose reproductive or sexual anatomy [do not] fit into an exclusively male or female (binary) sex classification . . . In others, the divergence in their biological components is still physical, but in less obvious or outwardly apparent ways . . . Simply put, it is not so simple to define "biological sex" as just male or female.

*Id.* at *22–*23 (citations to court decisions and medical literature omitted).

Courts have also routinely referred to trans women using she/her pronouns, implicitly recognizing that trans women are women. *See, e.g., Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019 (10th Cir. 2021) (using female pronouns to refer to party who was a transgender woman); *Hecox*, 79 F.4th 1009 (same); *United States v. Price*, 84 F.4th 738 (7th Cir. 2023) (same); *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022) (same); *Qz'Etax v. Ortiz*, 170 F. App'x 551, 553 (10th Cir. 2006) (same).

The Court need not conclude that any of these courts made the right decision or have approached trans or gender issues correctly. *See B. P. J. v. W. Va. State Bd. of Educ.*, No. 2:21-cv-00316, 2023 U.S. Dist. LEXIS 1820, at *14 (S.D. W. Va. Jan. 5, 2023) ("I will not get into the business of defining what it means to be a 'girl' or a 'woman.' The courts have no business creating such definitions"). But, at the very least, these courts demonstrate that it was ***reasonable*** for Kappa to determine that trans women are women. And, as discussed above, that is enough to merit deference under Ohio law.

> c.  *Deferring to Voluntary Organizations on Matters of Internal Governance at the Pleading Stage Is the Only Way to Maintain a Workable Status Quo for Both Courts and Organizations*

Judicial deference for voluntary organizations is the threshold issue for this Court to rule upon. Ohio law on non-interference would be rendered relatively toothless unless courts, as this Court did previously, enforce the doctrine at the pleading stage. Allowing derivative claims by members of voluntary organizations like Kappa to proceed past the pleading stage would paralyze an organization (and that organization's resources) whenever a small portion of its members sought to reshape the internal politics of the organization using the power of the judiciary. Those matters are best left resolved internally by organizations.

> 3.  <u>The Allegations Relating to the Chapter Membership Decision at Wyoming Do Not Support a Shareholder Derivative Claim Against Former Fraternity Council</u>

Most of the new factual allegations relate to specifics of what Plaintiffs think may have occurred with the voting process that their chapter members conducted. Defendants dispute those allegations, but will briefly address their irrelevance. Actions attributed to collegiate members or other unidentified leaders who are not Fraternity Council members cannot serve as a basis for derivative claims against any members of Fraternity Council. There are no factual allegations of any action or knowledge by Fraternity Council of anything concerning the Gamma Omicron

chapter until *after* the chapter membership selection vote was over and the trans woman was voted in by the chapter.

Plaintiffs further allege that, after the election, the trans woman's membership selection by the chapter was raised with Fraternity Council, and Fraternity Council proceeded with inducting her. Plaintiffs, however, misunderstand Fraternity Council's limited role in membership decisions. Though the Kappa Defendants deny Plaintiffs' allegations concerning the chapter vote, those allegations are ultimately irrelevant to these legal claims. The Bylaws leave membership selection to the chapters, not to Fraternity Council.

> **Section 2(B)(2) Chapter Membership Selection**. Chapters shall have the right to select members of their choice in accordance with Fraternity standards and procedures.

(Bylaws, ECF No. 6-1 at 10.)

Fraternity Council's role is limited to approving new members for more than 140 Kappa chapters when those members have fulfilled the requirements of initiation under the Bylaws, and there is no contention the student did not here. Even if Fraternity Council had known in advance of alleged irregularities at the chapter level, which Defendants dispute, the membership decision was made by the chapter. Though Plaintiffs may envision a more direct role where Fraternity Council overturns membership decisions with which Plaintiffs disagree, the governing documents do not call for Fraternity Council to do so.[5]

> **Article III - Section 3. Initiation.** A new member, upon fulfilling the requirements for Initiation, shall be initiated and become a member of the Fraternity. Each new initiate shall receive a certification of membership.

---

[5] If any chapter member who did not like their chapter's decision to admit a woman as a member or thought the vote had been unfair could demand Fraternity Council intervention and, if unsuccessful, sue Fraternity Council for failing to prevent initiation, Kappa would be buried in litigation from unhappy members seeking to exclude new members from their chapter of the sorority.

### A.    Requirements for Initiation.

> 1.    A collegiate new member who is registered as a full-time student during the pledge to membership year or during the term in which they pledged, has met all financial obligations and Fraternity standards of conduct, has completed a period of education about the Fraternity, and is in good standing with the educational institution may be initiated. In extraordinary cases.  Chapters may petition the Membership Director for an exception to these requirements.

(Bylaws, ECF No. 6-1 at 7.)

Plaintiffs do not make any factual allegation that Fraternity Council engaged in bad faith conduct when it followed the Bylaws to initiate the student for membership after the student was selected and submitted by the chapter and after the student fulfilled the requirements for initiation, nor is there any basis to make such an allegation.

> 4.    Plaintiffs' Shareholder Derivative Claim for Breach of Fiduciary Duty for Ultra Vires Acts Duplicates the Shareholder Derivative Claim for Breach of Fiduciary Duty and Should Be Dismissed for the Same Reasons

Plaintiffs' second cause of action is for "breach of fiduciary duty for ultra vires acts," pursuant to 1702.12, which is Ohio's non-profit shareholder derivative statute, is necessarily only advanced against Fraternity Council.  *See Carr v. Acacia Country Club Co.*, 970 N.E.2d 1075, 1090 (Ohio Ct. App. 2012) ("the notion of *ultra vires* acts by a corporation does not encompass a corporation's violation of its own regulations or bylaws").  Black's law Dictionary defines ultra vires as "[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law."  *Siltstone Servs., LLC v. Guernsey Cty. Cmty. Dev. Corp.*, No. 2020-Ohio-3878, 2020 Ohio App. LEXIS 2782, at *11 (Ohio Ct. App. 2020).  As another shareholder derivative claim for breach of fiduciary duty, this alleges actions taken in breach of fiduciary duty beyond the scope allowed by the corporate documents.  But Plaintiffs plead no allegations to support this claim. And, as already noted by this Court, Kappa's Fraternity Council are given the duty of

"[i]nterpreting the Fraternity Bylaws and Standing Rules." (See Order, ECF No. 31 at 32.) The reasons stated above apply with equal force to the dismissal of the breach of fiduciary duty for ultra vires acts claim.

    5.    The First Amendment Further Shields Kappa from Litigation over Its Own Membership Decisions

In addition to noting Ohio's policy for deferring to voluntary organizations in terms of their internal governance, this Court dismissed the First Amended Complaint recognizing that it sought to have the Court infringe on Kappa's First Amendment rights.

In the absence of any Bylaw that prohibits Kappa from accepting transgender women as members, Plaintiffs ask the Court to issue an order "expel[ling] men from membership . . ." until Kappa is converted to a co-ed organization." (Second Am. Compl. at Prayer for Relief, ¶ 1.) Allowing transgender women into membership does not equate to allowing men into membership. But, more to the point, the issue is that Plaintiffs are seeking court action to force Kappa to exclude transgender women from membership, and that would fundamentally alter Kappa's expressive message in violation of the First Amendment. If this Court ordered Kappa to exclude transgender women, that could implicate the same First Amendment concerns the Supreme Court found when it ruled that the Boy Scouts of America could not be required to include gay scoutmasters. (Order, ECF No. 31 at 28–31 (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000)).)[6]

The Second Amended Complaint does not identify any reason for the Court to alter its reasoned analysis of the First Amendment implications of this case. When it comes to Plaintiffs'

---

[6] In *New York Times v. Sullivan*, 376 U.S. 254 (1964), a civil action arose between private parties and the Alabama court applied the common law in a constitutionally deficient manner that failed to provide the safeguards for freedom of speech the First Amendment requires. The Supreme Court recognized that even with a lawsuit between private parties a violation can occur when a court takes action because, "[t]he test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised." *Sullivan*, 376 U.S. at 265.

derivative claims, the Court should stand by its assessment that Kappa's associational rights further support dismissal of this case.

### C. Plaintiffs' Breach of Contract Claim Against Kappa Fails

Plaintiffs' latest attempt to articulate a breach-of-contract claim also fails. As previously, Plaintiffs fail to coherently or plausibly state their claim, pleading both that the breach-of-contract claim is based on the idea that the Kappa governing documents constitute a contract between Kappa and its members under Ohio corporate law and that Plaintiffs' individual membership contracts with Kappa were breached. (*See* Second Am. Compl. at ¶ 180.) The core allegation seems to be that Plaintiffs agreed to join Kappa, pay dues, and follow Kappa policies in exchange for a promise to provide a sorority environment that included only women, as Plaintiffs define the term.

In the second cause of action in the First Amended Complaint, Plaintiffs asserted a breach of contract claim that appeared to be pled against the Kappa Kappa Gamma Building Co., the entity that operates the Kappa chapter house at the University of Wyoming. In their response to the Motion to Dismiss, however, Plaintiffs shifted and argued that their claim also addressed "the contract between Kappa and its members under Ohio corporate law." As a result, the Court has already rejected the breach-of-contract theory Plaintiffs advance in the Second Amended Complaint. (Order, ECF No. 31 at 33–34.) The Court found that Plaintiffs had failed to identify contractual language that had been breached. (*Id.* at 34.) Further, upon reviewing Kappa's governing documents that Plaintiffs had put before the Court, the Court found that Kappa "undertook no contractual obligation to reject transgender women." (*Id.*)

Despite this Court's prior ruling, once again, Plaintiffs simply allege that Kappa breached its governing documents. Indeed, there is inconsistency in what constitutes the "governing

documents" they are intending to reference, as they refer at one point to the Wyoming Chapter bylaws (*see* Second Am. Compl. at ¶ 2) and refer at another point to a constitution (*see id.* at ¶ 180). Regardless, the claim fails because Plaintiffs fail to identify a specific contractual provision that Kappa breached. Both Ohio and Wyoming law require proof that the defendant failed to perform on a promise made in a contract as an element of a breach-of-contract claim. *See Ma v. Cincinnati Children's Hosp. Med. Ctr.*, 216 N.E.3d 1, 4 (Ohio Ct. App. 2023); *Halling v. Yovanovich*, 391 P.3d 611, 616–17 (Wyo. 2017). Even though the Court had specifically warned the failure to identify a breached provision as fatal to Plaintiffs' last attempt to sustain a breach-of-contract claim (Order, ECF No. 31 at 34), Plaintiffs make only general allegations of promises made without identifying any specific promise in the governing documents.

Therefore, the Court can dispose of this claim based on its prior reasoning. After having two opportunities to identify ***any*** term that was breached in any governing document and being unable to do so, it is evident that providing any further attempt to do so would be futile.

### D. Plaintiffs' Fraud-in-the-Inducement Claim Fails

Plaintiffs' final claim is for "fraudulent inducement to enter into the contract." Plaintiffs base this claim on both the "concealing" of the fact that Kappa admits trans women and the purported false statement that Kappa is an organization for women. The claim fails for several reasons. First, nothing about the admission of trans women is inconsistent with Kappa being an organization for women. Second, concealment of a fact cannot give rise to a fraudulent-inducement claim unless there existed a legal duty to disclose the fact. Third, neither Kappa nor

Fraternity Council concealed anything; as Plaintiffs allege elsewhere in the Complaint, Kappa published its interpretation that trans women could join.

Again, Plaintiffs do not specify whether their claim arises under Ohio or Wyoming law. Under Ohio law, a plaintiff succeeds in establishing a fraudulent-inducement claim by proving: "(1) a representation of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with utter disregard and recklessness, as to whether it is true or false, (4) with the intent of misleading another into relying upon the representation, (5) justifiable reliance upon the representation, (6) and a resulting injury proximately caused by the reliance." *Mortgage Elec. Registration Sys. v. Mosley*, 2010-Ohio-2886, 2010 Ohio App. LEXIS 2380, at *20 (Ohio Ct. App. 2010). In Wyoming, a Plaintiff must show "(1) the defendant made a false representation intending to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff suffered damages in relying on the false representation." *Elworthy v. First Tenn. Bank*, 391 P.3d 1113, 1124 (Wyo. 2017).

Like the rest of their claims, Plaintiffs' fraudulent-inducement claim proceeds from the faulty premise that an organization cannot be an organization for women and admit trans women as members. As noted throughout this and prior briefing, there is a divergence of opinion on this, and many, including other members of Kappa, accept and consider trans women to be women. It is Plaintiffs' prerogative to disagree with that viewpoint, but that they joined an organization that sees things differently is not legally actionable. *See Universal Drilling Co., LLC v. R&R Rig Serv., LLC*, 271 P.3d 987, 997 (Wyo. 2012) ("any false representation must relate to a matter of fact rather than of opinion") (citation omitted). It may be a different case if Kappa or any other Defendant had represented that Kappa did *not* admit trans women as members, but neither Kappa

nor any other Defendant has never made any statement to that effect. Kappa has always been an organization for women, and stating as much to Plaintiffs was not a fraudulent misrepresentation.

Kappa and Fraternity Council also did not conceal any material facts from Plaintiffs. Concealment can only form the basis of a fraudulent-inducement claim when there is a duty to disclose the fact concealed. *See White v. Pitman*, 156 N.E.3d 1026, 1033 (Ohio Ct. App. 2020). Plaintiffs have not identified any legal duty Kappa or the Fraternity Council had to make a disclosure to Plaintiffs that Kappa's policy allowed for admission of trans women as members. But even more crucially, the Second Amended Complaint concedes the policy was not concealed. As Plaintiffs allege, Kappa issued a position statement in 2021 and a guide in 2018 that both provided trans women could be accepted as members. (Second Am. Compl. at ¶¶ 131–37.) If Plaintiffs were as concerned about the possibility of joining the same sorority as a trans woman as they now purport to be, they should have researched to determine which sororities share their viewpoint by reviewing sororities' publicly available statements.[7] Their failure to do so is not fraudulent concealment by Kappa.

### E. The Court Should Dismiss Claims Against the "Jane Doe" Defendants and Defendant Black

In addition to the named Defendants, Plaintiffs also sue four "Jane Doe" defendants in the Second Amended Complaint. Plaintiffs describe these Jane Does as "national, regional or district level advisors and/or directors or employees who acted in concert with Fraternity Council" with regard to the admission of a trans woman as a Kappa member at the University of Wyoming. (*Id.* at ¶ 10.) Plaintiffs' allegations as to these Jane Doe Defendants never get more specific than that.

As this Court has previously recognized, naming a Jane or John Doe defendant without factual allegations "does not rise to the level of pleading required to put a party on notice as to

---

[7] None of the 26 NPC sororities share Plaintiffs' viewpoint.

what actions they are alleged to have committed and against which they are expected to defend." *Roeber v. Gateway Found.*, No. 19-cv-200 ABJ, 2020 U.S. Dist. LEXIS 164907, at *31–32 (D. Wyo. Aug. 17, 2020). This failure warrants dismissal under Federal Rule of Civil Procedure 8(a)(2). *Id.* at *32.

Plaintiffs compound their failure to adequately state claims against the Jane Doe Defendants by not naming the Defendants at issue for each claim. None of the Jane Does are identified for *any* claim by name (no "Jane Doe" is alleged), title, or description. Indeed, as Plaintiffs plead their claims, the Jane Doe Defendants could not be a party to any claims. The shareholder derivative claims are only advanced against Fraternity Council members, the breach of contract claim is only advanced against Kappa, and the fraudulent inducement claim is only advanced against Kappa and Fraternity Council. Furthermore, for the breach of contract claim and fraudulent inducement claim, Plaintiffs do not allege any contract with a Jane Doe Defendant and the only actions alleged by the Jane Doe Defendants occurred *after* Plaintiffs joined Kappa, so they could not have breached a contract with Plaintiffs or fraudulently induced Plaintiffs to join Kappa. Indeed, there are only two allegations in the Second Amended Complaint referencing the "Jane Does." (Second Am. Compl. at ¶¶ 10, 153.) That does not remotely satisfy the pleading standard against any of the "Jane Does."

Additionally, Defendant Black was not a member of Fraternity Council, serving only as the Panhellenic Delegate. "The members of Fraternity Council shall be the officers of the Fraternity: The President, the four Vice Presidents, and the Treasurer." (Bylaws, ECF No. 6-1 at 18.) There is no allegation against the Panhellenic Delegate or against Black specifically and therefore, no basis for any claim against her.

For these additional reasons, the Court should dismiss the Jane Doe Defendants and Defendant Black from this case.

### F.     All Dismissals Should Be with Prejudice

The Second Amended Complaint is Plaintiffs' second substantive attempt to maintain these claims.  The Court declined to issue its prior dismissal with prejudice, giving Plaintiffs the opportunity to amend their Complaint.  Plaintiffs instead appealed, and represented to the Tenth Circuit that they had no way to cure the flaws the Court found in the First Amended Complaint.

In Plaintiff's Response to Defendants' Motion to Dismiss Plaintiffs' Appeal, Plaintiffs represented to the Tenth Circuit: "Plaintiffs cannot cure the defects the district court believed present in the First Amended Complaint through an amendment; the opinion below makes this plain."  (*See* Kappa's Memorandum in Support of Motion to Set Deadline, ECF 47, Attachment B, pp. 5-6).  They told the Tenth Circuit that any amendment would be a "futile endeavor because "no amendment could cure the legal grounds for dismissal on which the district court relied."  (*Id.* at p. 9).  In Plaintiffs' Appellate Brief to the Tenth Circuit, they again informed the Tenth Circuit:

> Plaintiffs cannot cure the defects the district court believed present in the First Amended Complaint through an amendment because the district court's decision was based on "a matter going to the merits of appellant's complaint itself rather than a procedural problem which amendment of a complaint might rectify."

(ECF 47, Attachment C, pp. 13-14 (citations omitted).)

And at oral argument to the Tenth Circuit, Plaintiffs explained to the Tenth Circuit why amendment of their complaint would be futile:

> We could follow that footnote and write it better.  The problem is, we couldn't write it to get around the determination on the merits. So, we could write it cleaner and prettier and nicer.  Just not to fix the problem that exists here.  And so, that's what I really want to address, is what is that merits determination that we really can't get around?  And here, the District Court, instead of assessing the

elements of a breach of fiduciary duty claim, said that he was unable
to review that claim because of non – inner – noninterference
principles.

(ECF 47, Attachment D, p. 11 (emphasis added).)

Plaintiffs' Second Amended Complaint demonstrates the truth of Plaintiffs' numerous representations to the Tenth Circuit. Plaintiffs are unable to plead any actionable claim to get around this Court's prior decision, and the Court should now be satisfied that any further attempts at amendment would be futile and dismiss all claims with prejudice. *See Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022).

### G. Plaintiffs Have Failed to Serve or Attempt Service on All Defendants

By this Motion, Defendants do not waive any defenses, including for failure to serve. Although Kappa and Rooney were Defendants in the First Amended Complaint, the remaining named Defendants were not. It does not appear that Plaintiffs have served or made any attempt to serve Defendants Brown, Campbell, Goettelman, Wong, Donnelly, or Black.

## IV. CONCLUSION

The Kappa Defendants want to move Kappa forward and end this litigation. There is much good the organization and its Fraternity Council seek to do, and Plaintiffs' dragging out this litigation for over two years has not advanced the interests of any party. Every current and former individual student party has graduated and leadership has changed. In two years, Plaintiffs had their claims dismissed, advanced an appeal that had no jurisdictional basis, sat on the case for almost an entire year after the appellate court dismissed their appeal before filing the Second Amended Complaint, and now seek to advance claims that mostly rehash the claims that were dismissed. Plaintiffs have no legal claims, only disagreements. In an organization this large, that is to be expected. There are, however, much better ways of resolving disagreements than

continuously pursuing baseless litigation.  Defendants respectfully submit that the time has come

for the Court to put an end to Plaintiffs' attempts to use this Court to advance their preferred social

agenda within a private organization of more than 210,000 members.  For the foregoing reasons,

the Court should dismiss the Second Amended Complaint, with prejudice.

Dated: June 26, 2025                      Respectfully submitted,

                                          /s/ *Natalie M. McLaughlin*
                                          Natalie M. McLaughlin (Ohio Bar No. 0082203)*
                                          Brian W. Dressel (Ohio Bar No. 0097163)*
                                          VORYS, SATER, SEYMOUR AND PEASE LLP
                                          52 East Gay Street
                                          Columbus, OH 43215
                                          Telephone/Facsimile: (614) 464-5452
                                          Email:        nmmclaughlin@vorys.com
                                                        bwdressel@vorys.com
                                          *\* -Admitted Pro Hac Vice*

                                          Stuart R. Day (#6-3081)
                                          WILLIAMS, PORTER, DAY & NEVILLE, P.C.
                                          159 North Wolcott, Suite 400
                                          P.O. Box 10700
                                          Casper, WY 82602-3902
                                          Telephone:    (307) 265-0700
                                          Facsimile:    (307) 266-2306
                                          E-Mail:       sday@wpdn.net

                                          *Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

        The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission and electronic mail this 26th day of June, 2025.

| | |
|---|---|
| Cassie Craven (#7-5664) | ☒ CM/ECF Electronic Transmission |
| LONGHORN LAW LLC | ☐ U.S. Mail (Postage Prepaid) |
| 109 East 17th Street, Suite 223 | ☐ Fax |
| Cheyenne, WY 82001 | ☐ Overnight Delivery |
| Telephone: (307) 823-3062 | ☐ Hand Delivery |
| E-Mail: ccraven.law@gmail.com | ☐ Email |

| | |
|---|---|
| John G. Knepper (#7-4608) | ☒ CM/ECF Electronic Transmission |
| LAW OFFICE OF JOHN G. KNEPPER, LLC | ☐ U.S. Mail (Postage Prepaid) |
| P.O. Box 1512 | ☐ Fax |
| Cheyenne, WY 82003 | ☐ Overnight Delivery |
| Telephone: (307) 632-2842 | ☐ Hand Delivery |
| E-Mail: john@knepperllc.com | ☐ Email |

/s/ *Brian W. Dressel*
Brian W. Dressel