| | |
|---|---|
| Stuart R. Day (#6-3081) | Natalie M. McLaughlin (*Pro Hac Vice*) |
| WILLIAMS, PORTER, DAY & NEVILLE, P.C. | Brian W. Dressel (*Pro Hac Vice*) |
| 159 North Wolcott, Suite 400 | VORYS, SATER, SEYMOUR AND PEASE, LLP |
| P.O. Box 10700 | 52 East Gay Street |
| Casper, WY 82602-3902 | Columbus, OH 43215 |
| Telephone: (307) 265-0700 | Telephone: (614) 464-5452 |
| Facsimile: (307) 266-2306 | Email: nmmclaughlin@vorys.com |
| E-Mail: sday@wpdn.net | bwdressel@vorys.com |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| HANNAH HOLTMEIER, ALLISON COGHAN, and HALEY RUTSCH, on behalf of themselves and derivatively on behalf of KAPPA KAPPA GAMMA FRATERNITY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 23-CV-00051-ABJ |
| KAPPA KAPPA GAMMA FRATERNITY, MARY PAT ROONEY, MARIA BROWN, NANCY CAMPBELL, BARB GOETTELMAN, LIZ WONG, KYLE DONNELLY, BETH BLACK, and JANE DOES 1-4 | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. DISCUSSION ................................................................................................................. 1

    A. Plaintiffs Have Not Satisfied Rule 23.1 ................................................................. 1

    B. As the Court Has Already Recognized, Ohio Law Defers to Voluntary Organizations' Interpretations of Their Own Bylaws............................................ 2

        1. The Court's Prior Decision on Kappa's Interpretation of Its Bylaws Is Binding Under the Law-of-the-Case Doctrine....................................... 2

        2. Ohio Law Requires Deference to Kappa's Interpretation........................... 3

        3. This Case Raises First Amendment Implications ...................................... 6

    C. Plaintiffs Fail to Demonstrate a Viable Breach-of-Contract Claim....................... 7

    D. Plaintiffs Fail to Demonstrate a Viable Fraudulent-Inducement Claim ................ 8

    E. Defendants Are Not Estopped from Arguing that the Dismissal They Currently Seek Should Be with Prejudice............................................................................. 9

III. CONCLUSION.............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Nat'l Prop. & Cas. Co. v. Sam*, No. 16-CV-301-ABJ, 2019 U.S. Dist. LEXIS 235676, at *23–24 (D. Wyo. Sept. 5, 2019) ...................................................................................... 3

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F. 3d 1081, 1099 (10th Cir. 2017) ................................................................................................................................. 4

*Duke v. Smith*, 784 F. Supp. 865, 870 (S.D. Fla. 1992) .................................................................. 8

*Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016) ............................ 3

*Finley v. Duffy*, 94 N.E.2d 466, 469, 470 (Ohio Ct. App. 1950) .................................................... 5

*New York Times v. Sullivan*, 376 U.S. 254, 265 (1964) ................................................................. 8

*Sayyah v. O'Farrell*, No. CA2000-06-017, 2001 Ohio App. LEXIS 1914, at *13–14 (Ohio Ct. App. 2001) ................................................................................................................ 2

*Shelley v. Kraemer*, 334 U.S. 1, 14–18 (1948) .............................................................................. 8

*Stibora v. Greater Cleveland Bowling Ass'n*, 577 N.E.2d 1175, 1179 (Ohio Ct. App. 1989) ... 4, 5

*United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) ................................................. 4

**Rules**

Ohio R. Civ. P. 23.1 ............................................................................................................... 1, 2

## I. INTRODUCTION

Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss does not offer a basis for the Court to allow any of Plaintiffs' claims to survive. First, Plaintiffs fail to articulate how they have satisfied the Rule 23.1 requirements to bring a derivative suit by presenting their grievances to Kappa's current leadership. Second, the Opposition depends on the Court revisiting holdings of its prior Order granting Defendants' first Motion to Dismiss and reaching the opposite result, which is barred by the law-of-the-case doctrine. Third, even if the Court had not already ruled on the central issues of this case, it could reject Plaintiffs' arguments because Ohio law affords significant deference to Fraternity Council's interpretation of Kappa's Bylaws, and the Opposition fails in its attempt to distinguish this case from that doctrine. Fourth, Plaintiffs do not defend their breach-of-contract claim. Fifth, Plaintiffs misunderstand the legal requirements of a fraudulent-inducement claim. And, sixth, Plaintiffs' argument seeking to judicially estop Defendants from arguing that any future amendments would be futile is nonsensical. As explained further below, the Court should grant Defendants' Motion and dismiss this case with prejudice.

## II. DISCUSSION

### A. Plaintiffs Have Not Satisfied Rule 23.1

Plaintiffs' response to Defendants' argument that they have not satisfied Rule 23.1by presenting their grievances to Kappa's current leadership, the 2024–2026 Fraternity Council, for internal resolution is to refer the Court to its prior decision on Rule 23.1 when Plaintiffs were advancing the First Amended Complaint and Kappa's leadership was the 2022–2024 Fraternity Council. Plaintiffs, in a footnote, indicate that they did make a renewed demand to current Fraternity Council on June 6, 2025—three days before they filed the Second Amended Complaint—and that Kappa responded through counsel. It is not clear how this correspondence

that Plaintiffs only reference in their Opposition (and which Defendants can provide to the Court to the extent Plaintiffs intend to suggest this satisfies the Rule 23.1 requirements) could be a legitimate attempt to resolve disagreements internally when it was sent the Friday before filing the Second Amended Complaint on Monday.

Rule 23.1 is a requirement to asserting a derivative claim, and failure to follow its procedures mandates dismissal. *See Sayyah v. O'Farrell*, No. CA2000-06-017, 2001 Ohio App. LEXIS 1914, at *13–14 (Ohio Ct. App. 2001). Indeed, as Defendants noted previously, the majority of the cases like the one Plaintiffs now bring under Ohio law were dismissed for failure to follow procedural requirements for a derivative claim. (*See* Mem. in Sup. Mot. to Dismiss, ECF No. 67 at 10 fn.3.) Kappa's leadership has changed from when Plaintiffs filed their lawsuit in 2023, and most current individual Defendants are not in a position to change Kappa's policies or practices on behalf of the organization. Failure to meet the Rule 23.1 requirements in asserting these derivative claims in the Second Amended Complaint is a sufficient basis to dismiss the case.

**B. As the Court Has Already Recognized, Ohio Law Defers to Voluntary Organizations' Interpretations of Their Own Bylaws**

Plaintiffs defend their derivative claim by arguing that Kappa's interpretation of its own Bylaws is not entitled to any deference or, alternatively, that deference is not appropriate under these circumstances. Ultimately, Plaintiffs urge the Court to analyze Kappa's Bylaws as it would a statute or constitutional provision. This Court has already rejected that position, and, even if it had not, Plaintiffs misapprehend the applicable law.

        1. <u>The Court's Prior Decision on Kappa's Interpretation of Its Bylaws Is Binding Under the Law-of-the-Case Doctrine</u>

The Court has already ruled on the arguments central to Plaintiffs' defense of their derivative claims, and, under the law-of-the-case doctrine, the Court should not permit re-litigation

of the prior ruling.  The law-of-the-case doctrine "precludes the re-litigation of issues expressly or implicitly resolved earlier in the same case." *Am. Nat'l Prop. & Cas. Co. v. Sam*, No. 16-CV-301-ABJ, 2019 U.S. Dist. LEXIS 235676, at *23–24 (D. Wyo. Sept. 5, 2019) (citing *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016)).  Under that doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F. 3d 1081, 1099 (10th Cir. 2017) (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)).

Plaintiffs' derivative claims depend on a finding that Kappa's Fraternity Council did not have authority to interpret the Bylaws such that the term "women" includes trans women.  The Court has already conclusively rejected that position.  (*See* Order, ECF No. 31.)  Specifically, the Court held that "defining 'woman' is Kappa Kappa Gamma's bedrock right as a private, voluntary organization – and one this Court may not invade." (*Id.* at 26.)  Even more directly, the Court held that Fraternity Council reading the Bylaws to include trans women was "a lawful interpretation." (*Id.* at 31.)  Other than repackaging the same arguments, Plaintiffs do not engage with the Court's prior rulings of law or offer the Court any basis to depart from the law-of-the case doctrine, so the Court could dismiss the derivative claims on that basis alone.

### 2. Ohio Law Requires Deference to Kappa's Interpretation

Even if the Court were considering Plaintiffs' claims for the first time in this Motion, Ohio's deference to voluntary organizations in interpreting their own Bylaws would compel the same result the Court already reached.  As the Court has found, Ohio law provides that "[a] voluntary organization may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is

3

as sacred as the right to make them." *Stibora v. Greater Cleveland Bowling Ass'n*, 577 N.E.2d 1175, 1179 (Ohio Ct. App. 1989) (quotation omitted).

Plaintiffs try to distinguish this doctrine by arguing that it only applies to "quasi-judicial" interpretations. This argument does not come from *any* case that says the judicial non-interference rule is limited to cases of quasi-judicial interpretations, but rather from the simple fact that most cases brought under this doctrine concern discipline of members.[1] But the cases explaining the non-interference rule plainly articulate a broader scope of deference to voluntary organizations. For instance, *Stibora* refers to the "sacred" right to interpret bylaws not only as to questions of discipline but also "internal policy and management." *Id.* Indeed, in a case involving bylaw interpretation related to an amendment voted on at an organization's convention, an Ohio court—in one of the earliest decisions applying this doctrine—held that the organization's officers had a "duty to construe and apply the provisions of the constitution to the best of their understanding and ability" and that "courts will not assume to act in place of those authorized to interpret the constitution and bylaws of a voluntary association unless those upon whom the duty is placed act in an arbitrary and unreasonable manner." *See Finley v. Duffy*, 94 N.E.2d 466, 469, 470 (Ohio Ct. App. 1950).

It would be illogical to draw a line between disciplinary interpretations impacting the addition or non-addition of members and membership interpretations impacting the addition or non-addition of members. The result would be that a court could interfere with an organization's membership decisions in admitting members through its bylaws interpretation of its membership policy but would have to defer to an organization's removal of its members through its bylaws

---

[1] That most litigation by members of voluntary organizations concerns individual discipline and does not challenge bylaw interpretations by the organizations' boards only proves the point that the judicial non-interference doctrine is intended to and in fact does deter these types of lawsuits.

4

interpretation of its removal policy. Plaintiffs' position that no deference is due to interpretations of membership qualifications would open the courthouse doors to anyone who was unhappy about a person their organization chose to admit or not admit. The point of the non-interference doctrine is that matters of internal policy and management like bylaws interpretations are inherent in the operation of voluntary organizations and are not matters for federal or state litigation.[2] Sometimes some members may be dissatisfied and disagree with the policy decisions of their leadership. There are internal procedures to seek redress for that dissatisfaction and disagreement, and sometimes members will have to accept that leadership may not align with their views on all matters. That does not mean there is a legal solution in the courts every time someone wishes to force their views onto the organization.

Plaintiffs' alternative argument that Fraternity Council's interpretation is not entitled to deference because Council "intentionally deceived" them is undercut by the Second Amended Complaint, which alleges the policy was publicly announced in 2018, before any Plaintiff sought to join Kappa. (Second Am. Compl. at ¶¶ 131–37.) The relevant facts about Kappa's policies were made available to Plaintiffs and the entire organization, so it is not clear how any "deception" occurred. Plaintiffs do not respond to Defendants' argument that they have failed to allege any *facts* that would support bad-faith conduct by Fraternity Council in the decision by the Gamma Omicron chapter to admit a trans woman as a member. Plaintiffs fail to plausibly allege bad-faith conduct by Council that would remove the deference otherwise owed to the interpretations.

Plaintiffs' contention that the Bylaws of Kappa, a voluntary organization, should be interpreted through some sort of originalist lens finds no support in applicable precedent. To the

---

[2] Even more so here when the Standing Rules explicitly grant Fraternity Council the right to interpret the Bylaws. Therefore, even under a strict contractual interpretation, Fraternity Council retains the right to interpret without judicial interference.

5

contrary, it is fundamentally incompatible with the Ohio line of cases providing that voluntary organizations have deference in interpreting their governing documents. After all, Plaintiffs' strict interpretation approach would also cover the "quasi-judicial" interpretations Plaintiffs acknowledge receive deference. Ohio law allows voluntary organizations to interpret their own bylaws and does not subject those interpretations to the same searching judicial inquiry that may be appropriate for questions of statutory interpretation.

Plaintiffs repeatedly invoke the argument that Kappa governing documents required some sort of presentation of Fraternity Council's interpretation of the term "woman" to the membership for a vote. Tellingly, Plaintiffs cite *no* provision in the governing documents that would require interpretations to be put up for membership vote based on a subjective assessment of what can be gleaned from tradition and history. To the contrary, the Standing Rules explicitly provide that Fraternity Council's duty is to interpret the governing documents, and they establish no requirement that those interpretations be put to a vote.

The Court should not lose sight of what is at the heart of this case. Plaintiffs object to Fraternity Council's ***interpretation*** of an ***undefined*** term in the Bylaws. Kappa's Standing Rules ***require*** Fraternity Council to make these interpretations. Its doing so aligns with Ohio law's judicial non-interference doctrine. Vague allegations that Fraternity Council in a different era would have read this term differently do not alter the validity of that interpretation.

### 3. This Case Raises First Amendment Implications

Plaintiffs also contend that their position creates no conflict with the First Amendment. First, like the issue of deference, the Court has already ruled on this point. (Order, ECF No. 31 at 28–29.) Plaintiffs do not present a basis for the Court to depart from that ruling, and the Court can maintain its prior holding under the law-of-the-case doctrine.

6

Furthermore, court actions can constitute state action. *See Shelley v. Kraemer*, 334 U.S. 1, 14–18 (1948); *see also Duke v. Smith*, 784 F. Supp. 865, 870 (S.D. Fla. 1992) (recognizing a court interferes with the First Amendment freedom of expression in "substitut[ing] its own judgment for that of the [p]arty"). Plaintiffs explicitly ask the Court to substitute its judgment for Kappa's leadership and hold that the Bylaws as currently drafted *must* be interpreted in accordance with Plaintiffs' preferred definition of the term "woman." But, as discussed above, Kappa has a sacred right to interpret its own Bylaws, and this Court substituting a different interpretation of an undefined term would violate Kappa's First Amendment right to decide for itself with whom it wishes to associate.

State action can occur when a court rules against a private party in a civil action if the court violates a party's constitutional rights in taking that action. In *New York Times v. Sullivan*, the Supreme Court protected First Amendment freedoms in a libel suit between private parties because, "[t]he test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised." *New York Times v. Sullivan*, 376 U.S. 254, 265 (1964) (finding courts applied common law in a civil action between private parties and those court actions imposed invalid restrictions on private parties' First Amendment freedoms).

### C. Plaintiffs Fail to Demonstrate a Viable Breach-of-Contract Claim

Plaintiffs do not clearly explain the theory for their individual breach of contract claims against Kappa. They do not offer any response to Defendants' argument that Plaintiffs failed to plausibly allege a breach of their membership contracts, appearing to have abandoned that claim. Their ***only*** discussion of contractual principles appears in their arguments on the derivative claims, where they argue that the Bylaws are a contract between Kappa and all members. To the extent Plaintiffs assert individual contract claims based only on the Bylaws, those claims would fail.

7

First, allowing a breach-of-contract claim by an individual against the organization based on the interpretation of a term in the governing documents to proceed would, in practice, eliminate all deference owed to voluntary organizations in interpreting those documents by inserting courts as the ultimate interpreters of governing documents. And as explained repeatedly, the Standing Rules explicitly give the authority to Fraternity Council to interpret the Bylaws. Therefore, Kappa cannot breach a contract with Plaintiffs by allowing its Fraternity Council to do explicitly what its governing documents authorize them to do.

Second, the time period for interpretation of any alleged contract would begin when the Plaintiffs entered into their respective contracts with Kappa, not in 1870. When Plaintiffs joined Kappa, the term "women" was already interpreted by Fraternity Council to include trans women. Kappa had already publicized the membership policy and publicized the Guide indicating its allowance of trans women. Plaintiffs' complaint appears to be that either they did not look into Kappa's membership policies before joining or made incorrect assumptions about Kappa's membership policies before joining.[3] Essentially, they just presumed that the only way that "women" could be interpreted was to the exclusion of trans women, even though nothing from Kappa states this. That was their prerogative to join based on limited information and assumptions, but it does not mean that Kappa breached any contract.

### D.  Plaintiffs Fail to Demonstrate a Viable Fraudulent-Inducement Claim

Defendants argued that the Court should dismiss Plaintiffs' fraudulent-inducement claim because (1) they did not allege a material misrepresentation of a *fact*; and (2) did not allege that

---

[3] All 26 NPC sororities accept trans women into their memberships. Therefore, Plaintiffs could not have found a sorority that would have guaranteed no trans woman would be accepted into their chapter. As such, it is unlikely any additional information or correct assumption would have impacted Plaintiffs' decision to join Kappa if they actually wanted to be in a sorority at all.

8

any Defendant failed to disclose any information they were under a legal obligation to disclose. The Response does not offer a plausible argument against either point. Plaintiffs contend that advertising itself as an organization for women while admitting trans women as members amounts to a material misrepresentation of facts. This is not so, as Defendants have already recounted several sources that demonstrate that Plaintiffs' opinion of who is and is not a woman is not the same as a fact. Plaintiffs also do not identify any legal duty to disclose a *fact* that was not disclosed.

Instead, Plaintiffs use their argument to return to their points about the fiduciary duty of Fraternity Council. Those arguments fail in the context of the derivative claims, as discussed above. But they are not even relevant to the fraudulent-inducement claim, which is not a derivative claim at all. The only issues material to this claim are whether a Defendant made a material misrepresentation and whether a Defendant failed to disclose information the Defendant was under a legal obligation to disclose, as argued in Defendants' Motion. As Plaintiffs plausibly allege neither occurrence, the Court should dismiss the fraudulent-inducement claim.

### E. Defendants Are Not Estopped from Arguing that the Dismissal They Currently Seek Should Be with Prejudice

Plaintiffs argue that Defendants are judicially estopped from arguing that the Court should dismiss the case with prejudice because some Defendants argued that Plaintiffs' appeal should be dismissed for lack of appellate jurisdiction when Plaintiffs appealed a dismissal without prejudice. They characterize asking for final dismissal as "deliberately changing positions according to the exigencies of the moment." (Resp., ECF No. 68 at 22.) This argument is nonsensical.

Defendants who were named in the First Amended Complaint argued that the Court *should* dismiss the First Amended Complaint with prejudice. (*See* Mem. in Sup. of Mot. to Dismiss, ECF No. 20.) The Court denied that request and instead dismissed the case without prejudice to amend. Despite clear Tenth Circuit precedent holding that dismissals without prejudice are not final

9

appealable orders, Plaintiffs chose to appeal. Asking the Court of Appeals to dismiss the appeal for a procedural flaw does not estop Defendants from arguing for dismissal with prejudice.

Defendants never contended that successfully amending the First Amended Complaint would be possible. Defendants' argument was that this Court's first dismissal order was without prejudice, so Plaintiffs had no right to appeal. Then once the case was back in this Court, Defendants argued Plaintiffs *could* seek to amend or perfect the appeal. But Defendants never represented that any amendment could fix the errors that led to the first dismissal or that Defendants would not seek to dismiss any amendment with prejudice.

Notably, Plaintiffs do not rebut Defendants' argument that further amendment would be futile and do not dispute Defendants' contention that there is no other way for Plaintiffs to plead their claims that would survive a motion to dismiss. Therefore, for all the reasons stated in Defendants' Motion to Dismiss and in this Reply, dismissal of Plaintiffs' Second Amended Complaint with prejudice is warranted.

### III. CONCLUSION

For the foregoing reasons and the arguments contained in prior pleadings, Defendants respectfully request that the Court dismiss this case with prejudice.

Dated: July 17, 2025

/s/ *Natalie M. McLaughlin*
Natalie M. McLaughlin (Ohio Bar No. 0082203)*
Brian W. Dressel (Ohio Bar No. 0097163)*
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Telephone/Facsimile: (614) 464-5452
Email:       nmmclaughlin@vorys.com
             bwdressel@vorys.com
*Admitted Pro Hac Vice

Respectfully submitted,

Stuart R. Day (#6-3081)
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602-3902
Telephone:   (307) 265-0700
Facsimile:   (307) 266-2306
E-Mail:      sday@wpdn.net

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

    The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission and electronic mail this 17th day of July, 2025.

| | |
|---|---|
| Cassie Craven (#7-5664)<br>LONGHORN LAW LLC<br>109 East 17th Street, Suite 223<br>Cheyenne, WY 82001<br>Telephone: (307) 823-3062<br>E-Mail: ccraven.law@gmail.com | ☒ CM/ECF Electronic Transmission<br>☐ U.S. Mail (Postage Prepaid)<br>☐ Fax<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☐ Email |
| John G. Knepper (#7-4608)<br>LAW OFFICE OF JOHN G. KNEPPER, LLC<br>P.O. Box 1512<br>Cheyenne, WY 82003<br>Telephone: (307) 632-2842<br>E-Mail: john@knepperllc.com | ☒ CM/ECF Electronic Transmission<br>☐ U.S. Mail (Postage Prepaid)<br>☐ Fax<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☐ Email |

        /s/ *Natalie M. McLaughlin*
        Natalie M. McLaughlin